James J. Davis, Jr., AK Bar No. 9412140
Goriune Dudukgian, AK Bar No. 0506051
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: jdavis@njp-law.com
Email: gdudukgian@njp-law.com

Attorneys for Plaintiff

Filed in the trial courts
STATE OF ALASKA, FIRST DISTRICT
AT JUNEAU

NOV -3 2022

By_____Deputy

## IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

### FIRST JUDICIAL DISTRICT AT JUNEAU

|  |  |
|---|---|
| JAMES KERR, | ) |
| Plaintiff, | ) |
| vs. | ) |
| BOROUGH OF PETERSBURG, | ) |
| Defendant. | ) |

Case No. 1JU-22-856 CI

### COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

COMES NOW the plaintiff, James Kerr, through counsel, alleging and requesting relief as follows:

### FACTUAL ALLEGATIONS

1.     The Borough of Petersburg has rules and regulations that prohibit any elected officials from getting involved in the performance or actions of any Borough employees.[1]  This means, for example, that Borough Assembly members

---

[1] Charter Section 2.10; Code Section 3.08.050.

cannot interfere in the employee relationship of any Borough employee. The reason for this bright-line prohibition is simple: Borough employees are either covered by a collective bargaining agreement or an employment contract, and they have supervisors at their work that manage their work; Assembly members have no role in managing or disciplining or promoting Borough employees.

2.     James Kerr has dedicated a large part of his life at working and serving the Borough of Petersburg. He joined the police department back in 2013 and, through exemplary service and dedication, was made Chief of the department in July 2018.

3.     On November 17, 2021, Mr. Kerr addressed the Borough Assembly, explicitly as a private citizen. Mr. Kerr explained to the Borough his feelings about criminalizing community members and businesspeople who were non-compliant with the current Covid mask mandate and his feelings about how such criminalization would affect morale of law enforcement officers.

4.     Certain Assembly members, specifically, David Kensinger and Jeff Meucci, disagreed with Mr. Kerr's viewpoints. These Assembly members thereafter contacted Mr. Kerr's employer, i.e., the Borough, to complain about Mr. Kerr and to suggest discipline and or termination of Mr. Kerr. Meucci wrote to Mr. Kerr's supervisor on November 18, 2021 and demanded that Mr. Kerr appear before the Assembly and "publicly show the community the errors of his public testimony comments." Kensinger wrote to Mr. Kerr's supervisor and demanded that Mr. Kerr get "help" or be replaced.

2

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395 • Fax: (866) 813-8645

EXHIBIT A
Page 2 of 351

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395 • Fax: (866) 813-8645

5.     Kensinger and Meucci continued with their efforts at interfering in Mr. Kerr's employment relationship, through various means and methods after November 17, 2021. On March 9, 2022, Meucci texted Mr. Kerr in Meucci's further efforts to undermine or intimidate Mr. Kerr. Mr. Kerr reported this misconduct to his supervisors at the Borough, including the Mayor, Borough Manager, and the City Clerk.

6. On March 10, 2022, the City Clerk asked Mr. Kerr for a timeline of all of the misconduct by Kensinger and Jeff Meucci. Mr. Kerr provided a timeline to the City Clerk as requested.

7.     Shortly thereafter, the Borough informed Mr. Kerr that it was going to retain an independent investigator to look into the misconduct by Kensinger and Jeff Meucci.

8.     The Borough then retained its long-time law firm, Clayton and Diemer, to evaluate the misconduct by Kensinger and Jeff Meucci. Unbeknownst to Mr. Kerr, Clayton and Diemer were not independent investigators. Instead, Clayton and Diemer was a law firm that regular did work for the Borough and was not "independent" by any stretch of the imagination. Instead, Clayton and Diemer had a vested interest in making sure that any investigation they did not show any sort of misconduct on the part of the Borough or the powers that be, i.e., the Assembly.

9.     Clayton and Diemer conducted their "investigation," during which it met with Mr. Kerr. This was on April 6, 2022. During this meeting, Mr. Kerr

3

shared with Clayton and Diemer his confidences and personal feelings. At this meeting, Clayton and Diemer told Mr. Kerr that it was evaluating and investigating Mr. Kerr's complaint of "harassment." But Mr. Kerr had never filed any complaint and has never claimed any sort of harassment.

10. Because Clayton and Diemer seemed to completely misunderstand the nature of the issue at hand, Mr. Kerr wrote to them immediately after his April 6 meeting explain to them that he was not complaining about any sort of "harassment."

11. In June 2022, Clayton and Diemer completed the report on their "independent investigation." On June 14, 2022, the Borough allowed Mr. Kerr to read this report but refused to provide him with a copy.

12. On and after June 14, Mr. Kerr informed the Borough that the report was wholly erroneous: he had never complained about workplace "harassment" and the timeline that he had conveyed to the Borough was in no way his "complaint."

13. On June 27, 2022, the Borough issued a press release to the media. In this press release, the Borough informed the media that Mr. Kerr had filed a "complaint in the form of a timeline." This was false and the Borough knew this was false. The Borough's press release went on to say that Mr. Kerr had complained about "harassment." This was false and the Borough knew this was false. The Borough's press release went on to say that it had commenced an investigation and the investigation by its "outside law firm" found that there was

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395 • Fax: (866) 813-8645

4

no merit to Mr. Kerr's "harassment" complaints. This logic epitomizes the idea that, if you ask the wrong question you will get the wrong answer: Mr. Kerr never claimed he was the victim of workplace "harassment."

14.  As a direct result of the Borough's false and misleading press release, the media issued various stories and reports stating that Mr. Kerr had claimed he was the victim of workplace "harassment" and the Borough's "independent" investigator had concluded that the harassment claims were baseless. But the truth was quite different; Mr. Kerr had never claimed he was the victim of workplace "harassment" and the Borough's "independent" investigator was not at all independent.

15.  The Borough's action have made Mr. Kerr look like a Chief of Police who makes baseless claims of workplace "harassment." These actions amount to both defamation and portraying Mr. Kerr in a false light.[2]

16.  In September, Mr. Kerr contacted the Borough and asked it to remediate its defamatory and false light actions. The Borough completely ignored Mr. Kerr's request.

## JURISDICTION AND VENUE

17.  This Court has jurisdiction under AS § 22.10.020(c) and (g).

18.  Venue is proper in Juneau under AS § 22.10.030 and Civil Rule 3(c).

---

[2] *State v. Carpenter*, 171 P.3d 41, 53 (Alaska 2007) ("A false light invasion of privacy claim arises when the defendant publicizes a matter that places the plaintiff before the public in a false light.")

5

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395 • Fax: (866) 813-8645

EXHIBIT A
Page 5 of 351

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395 • Fax: (866) 813-8645

## PARTIES

19.    Plaintiff resides in Petersburg.

20.    The Borough manages and is responsible for the Petersburg Police Department.

## FIRST CAUSE OF ACTION — DEFAMATION

21.    The foregoing paragraphs of this Complaint are incorporated herein as though fully set forth.

22.    In acting in the aforesaid fashion, the Borough defamed Mr. Kerr. If he ever seeks future employment outside of Petersburg, the first thing a prospective employer will learn, from checking the internet, is that Mr. Kerr made claims of "workplace harassment" and that an "independent investigator" found those harassment to be baseless. But the truth is that Mr. Kerr never made claims of "workplace harassment" and the "independent investigator" was not independent.

23.    The Borough's actions were intentional and done with no regard to the truth.

24.    Tort damages, including actual, compensatory and consequential, are appropriate.

## SECOND CAUSE OF ACTION — FALSE LIGHT

25.    The foregoing paragraphs of this Complaint are incorporated herein as though fully set forth.

6

EXHIBIT A
Page 6 of 351

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395 • Fax: (866) 813-8645

26.     In acting in the aforesaid fashion, the Borough placed Mr. Kerr in a false light. Specifically, the Borough made it appear as that Mr. Kerr made claims of "workplace harassment," which he did not; that Mr. Kerr did not even understand, as the Chief of Police, what workplace harassment involves, which he does; and that an independent investigator looked into Mr. Kerr's claims and found them to be baseless, which never happened because Clayton and Diemer is the long-time law firm that regularly defends the Borough and they are not independent by any stretch of the imagination.

27.     The Borough's actions were intentional and done with no regard to the truth.

28.     Tort damages, including actual, compensatory and consequential, are appropriate.

### PRAYER FOR RELIEF

**WHEREFORE,** plaintiff respectfully request that the Court grant:

(1) Injunctive relief against defendant requiring it to issue a correct and truthful press release;

(2) Actual, compensatory and consequential damages;

(3) The costs and expenses of litigation, including full attorney fees;

(4) All other relief as the Court deems necessary.

EXHIBIT A
Page 7 of 351

DATED this 2nd day of November, 2022

NORTHERN JUSTICE PROJECT, LLC
Attorneys for Plaintiff

By: _____
James J. Davis, Jr., AK Bar No. 9412140
Goriune Dudukgian, AK Bar No. 0506051

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395 • Fax: (866) 813-8645

THIS MATTER IS FORMALLY
ASSIGNED TO
MARIANNA CARPENETI
SUPERIOR COURT JUDGE

8

Michael Gatti
Kendra E. Bowman
JERMAIN DUNNAGAN & OWENS, P.C.
3000 A Street, Suite 300
Anchorage, AK 99503
Telephone: (907) 563-8844
Fax: (907) 563-7322
Email: mgatti@jdolaw.com
        kbowman@jdolaw.com

*Attorneys for Defendant*

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

FIRST JUDICIAL DISTRICT AT JUNEAU

| | |
|---|---|
| JAMES KERR, | |
| Plaintiff, | |
| v. | |
| BOROUGH OF PETERSBURG, | |
| Defendant. | Case No. 1JU-22-00856 CI |

## **ENTRY OF APPEARANCE**

COMES NOW, Jermain, Dunnagan & Owens, P.C., and enters their appearance on behalf of the Petersburg Borough. Copies of all pleadings and other documents, excluding service of process, are to be served at 3000 A Street, Suite 300, Anchorage, AK 99503.

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

{01336655}

Dated this 5th day of December, 2022 at Anchorage, Alaska.

JERMAIN DUNNAGAN & OWENS, P.C.
Attorneys for Defendants


By: /s/ *Michael Gatti*
Michael Gatti
ABA #8306033
Kendra E. Bowman
ABA #0511109

**CERTIFICATE OF SERVICE**

This is to certify that a true and
correct copy of the foregoing was
served by (x)email ( )mail ( )hand
( ) fax this 5 December 2022, to:

James J. Davis, Jr.
Goriune Dudukgian
North Justice Project, LLC
406 G. Street, Suite 207
Anchorage, AK 99501
jdavis@njp-law.com
gdudukgian@njp-law.com


/s/ *Anita Rustad*
Jermain, Dunnagan & Owens, PC

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

{01336655}
**ENTRY OF APPEARANCE**
*Kerr v. Borough of Petersburg,* Case No. 1JU-22-00856CI

Michael Gatti
Kendra E. Bowman
JERMAIN DUNNAGAN & OWENS, P.C.
3000 A Street, Suite 300
Anchorage, AK 99503
Telephone: (907) 563-8844
Fax: (907) 563-7322
Email: mgatti@jdolaw.com
        kbowman@jdolaw.com

*Attorneys for Defendant*

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

FIRST JUDICIAL DISTRICT AT JUNEAU

JAMES KERR,

                    Plaintiff,

v.

BOROUGH OF PETERSBURG,

                    Defendant.                    Case No. 1JU-22-00856 CI

## ANSWER TO COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

COMES NOW Defendant Petersburg Borough (the "Borough" or "Defendant"), by and through its counsel of record, Jermain, Dunnagan & Owens, P.C., and in answer to Plaintiff James Kerr's ("Chief Kerr" or "Plaintiff") Complaint for Injunctive Relief and Damages hereby admits, denies and alleges as follows:

### ANSWER TO FACTUAL ALLEGATIONS

1.      Paragraph 1 of the Complaint states legal conclusions for which no response is necessary. To the extent a response is required, the allegations are denied.

{01333004}

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

2.     In regards to the allegations in Paragraph 2 of the Complaint, the Borough admits Chief Kerr joined the Petersburg Police Department in 2013, and became Police Chief in July 2018.  The remaining allegations in the paragraph are conclusory statements for which no response is required.  To the extent a response is necessary, the Borough is without sufficient knowledge and information to form a belief as to the truth of the allegations contained therein and therefore denies the same.

3.     In regards to the allegations in Paragraph 3 of the Complaint, the Borough admits Chief Kerr addressed the Borough Assembly on or about November 17, 2021.  The Borough denies the allegation that Chief Kerr addressed the Borough Assembly as a "private citizen."  The Borough is without sufficient knowledge and information to form a belief as to the truth of the remaining allegations contained therein and therefore denies the same.

4.     The allegations in Paragraph 4 of the Complaint sets forth Chief Kerr's characterization of documents, each such document speaks for itself and any characterization thereof is denied.  The remaining allegations in the paragraph are conclusory statements, for which no response is necessary.  To the extent a response is required, the allegations are denied.

5.     In regards to the allegations in Paragraph 5 of the Complaint, the first sentence contains allegations that are too vague and ambiguous to permit a response and are therefore denied.  Upon information and be1ief, the Borough admits that on or about March 9, 2022 Chief Kerr received a text message, which speaks for itself and any

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

{01333004}
**ANSWER TO COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**
*Kerr v. Borough of Petersburg*, 1JU-22-00856 CI                    Page 2 of 8

EXHIBIT A
Page 12 of 351

characterization thereof is denied. The Borough does not have sufficient information to admit or deny the remaining allegations, and therefore denies the same.

6.    The allegations in Paragraph 6 of the Complaint are denied.

7.    In regards to the allegations in Paragraph 7 of the Complaint, the Borough admits it promptly informed Chief Kerr that it would retain an attorney to legally evaluate his allegations of harassment. The remaining allegations in the paragraph are denied.

8.    In regards to the allegations in Paragraph 8 of the Complaint, the Borough admits it retained the law firm of Clayton & Diemer, LLC to review and provide legal advice related to Chief Kerr's allegations of harassment. The remaining allegations in the paragraph are denied.

9.    In regards to the allegations in Paragraph 9 of the Complaint, on information and belief the Borough admits Attorney Diemer interviewed Chief Kerr. The Borough denies the allegation that Chief Kerr did not file a complaint or claim harassment. The Borough does not have sufficient information to admit or deny the remaining allegations, and therefore denies the same.

10.    The allegations in Paragraph 10 of the Complaint are denied.

11.    In regards to the allegations in Paragraph 11 of the Complaint, the Borough admits Clayton & Diemer provided their legal opinion to the Borough in June 2022. The remaining allegations in the paragraph are denied.

12.    The allegation in Paragraph 12 of the Complaint are denied.

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

{01333004}
**ANSWER TO COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**
*Kerr v. Borough of Petersburg*, 1JU-22-00856 CI

13.     In regards to the allegations in Paragraph 13 of the Complaint, the Borough admits on June 27, 2022, it issued a press release in response to a public records request and in keeping with the balance of the public's right to know the actions of its public officials.  The press release is a document that speaks for itself and any characterization thereof is denied.  The remaining allegations in the paragraph are denied.

14.     The allegations in Paragraph 14 of the Complaint are denied.

15.     Paragraph 15 of the Complaint states legal conclusions for which no response is necessary.  To the extent a response is required, the allegations are denied.

16.     In regards to the allegations in Paragraph 16 of the Complaint, the Borough admits it received a demand letter, for which there was no response, but denies the remainder of the allegations.

## ANSWER TO JURISDICTION AND VENUE

17.     With regard to Paragraph 17 of the Complaint, the Borough admits that jurisdiction is proper in the Superior Court for the State of Alaska.

18.     With regard to Paragraph 18 of the Complaint, the Borough admits that venue is proper in the First Judicial District at Juneau, unless a change in venue becomes warranted.

## ANSWER TO PARTIES

19.     In regards to the allegations in Paragraph 19 of the Complaint, upon information and belief the allegation is admitted.

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

{01333004}
**ANSWER TO COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**
*Kerr v. Borough of Petersburg*, 1JU-22-00856 CI                    Page 4 of 8

20.     Paragraph 20 of the Complaint states a legal conclusion for which no response is necessary.  To the extent a response is required, the allegations are denied.

**ANSWER TO FIRST CAUSE OF ACTION-DEFAMATION**

21.     The Borough realleges and incorporates by reference its answers in paragraphs 1-20 as though fully set forth herein.

22.     The allegations in Paragraph 22 of the Complaint are denied.

23.     The allegations in Paragraph 23 of the Complaint are denied.

24.     The allegations in Paragraph 24 of the Complaint are denied.

**ANSWER TO SECOND CAUSE OF ACTION – FALSE LIGHT**

25.     The Borough realleges and incorporates by reference its answers in paragraphs 1-24 as though fully set forth herein.

26.     The allegations in Paragraph 26 of the Complaint are denied.

27.     The allegations in Paragraph 27 of the Complaint are denied.

28.     The allegations in Paragraph 28 of the Complaint are denied.

**PLAINTIFF'S PRAYER FOR RELIEF**

The "Wherefore" clause contains Plaintiff's prayer for relief, to which no response is required.  To the extent a response is deemed required, the Borough denies that Plaintiff is entitled to the relief requested in Paragraphs 1-4 of the "Wherefore" clause, or any other relief for the claims alleged in the Complaint.

**AFFIRMATIVE DEFENSES**

1.     The Complaint fails to state a claim upon which relief may be granted.

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

{01333004}
**ANSWER TO COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**
*Kerr v. Borough of Petersburg*, 1JU-22-00856 CI                    Page 5 of 8

EXHIBIT A
Page 15 of 351

Case 1:23-cv-00008-SLG    Document 1-1    Filed 08/25/23    Page 15 of 176

2.      Plaintiff's claims are protected by the absolute privilege of truth.

3.      Plaintiff's claims are barred by the doctrines of waiver, consent, and estoppel.

4.      Plaintiff's claims are precluded by the doctrines of absolute, qualified, discretionary, statutory, and/or common law immunity.

5.      The Borough is entitled to a presumption of privilege.

6.      The Borough's conduct is protected by the doctrine of absolute privilege.

7.      The Borough's conduct is protected by the doctrine of conditional privilege.

8.      The Borough's conduct is protected by the doctrine of qualified privilege.

9.      The Borough's conduct is protected by the public interest privilege.

10,     The Borough's allegedly defamatory publication was merely a statement of opinion.

11.     Plaintiff consented to the allegedly defamatory publication.

12.     The Borough's publication was prepared in good faith, without actual malice, and for the purpose of informing the public about matters of which the public had the right to be informed.

13.     Plaintiff is a public official, an all-purpose public figure, or a limited purpose public figure for purposes of defamation.

14.     Plaintiff has failed to show malice or reckless disregard for the truth or falsity of the alleged Borough actions.

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

{01333004}
**ANSWER TO COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**
*Kerr v. Borough of Petersburg*, 1JU-22-00856 CI                                    Page 6 of 8

15. Plaintiff waived his privacy rights, if any, in the information presented to the public.

16. Some or all of Plaintiff's claims for relief are the proximate result of Plaintiff's own conduct.

17. Some or all of Plaintiff's claimed damages, if any, were not appropriately mitigated by Plaintiff.

18. Some or all of Plaintiff's claimed damages, if any, are the proximate result of actions on the part of people or entities for which the Borough is not responsible.

19. The Borough's conduct was authorized by law.

20. Plaintiff's claims are barred by the doctrine of unclean hands.

21. Plaintiff's claims are barred by the doctrine of laches.

22. All defenses available to respond to a claim of defamation are specifically reserved and will be asserted as are factually appropriate.

23. The Borough reserves the right to add such other and further defenses as may be determined to be applicable during the course of this litigation.

WHEREFORE, having answered the Plaintiff's Complaint, Defendant prays that Plaintiff's Complaint be dismissed with prejudice; that Plaintiff takes nothing from Defendant; that Defendant be awarded their costs and attorney's fees incurred in defending this action; and for such other and further relief as this court deems just and equitable.

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

{01333004}
**ANSWER TO COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**
*Kerr v. Borough of Petersburg*, 1JU-22-00856 CI

DATED this 5th day of December, 2022, at Anchorage, Alaska.

JERMAIN, DUNNAGAN & OWENS, P.C.
Attorneys for Defendant

By: /s/ *Michael Gatti*
Michael Gatti, ABA # 8306033
Kendra E. Bowman, ABA # 0511109

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct
copy of the foregoing was served by
( ) mail ( ) hand ( ) fax (X) email
on December 5, 2022, to:

James J. Davis, Jr.
Goriune Dudukgian
North Justice Project, LLC
406 G. Street, Suite 207
Anchorage, AK 99501
jdavis@njp-law.com
gdudukgian@njp-law.com

/s/ *Anita Rustad*
Jermain, Dunnagan & Owens, PC

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

{01333004}

**ANSWER TO COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**
*Kerr v. Borough of Petersburg*, 1JU-22-00856 CI

James J. Davis, Jr., AK Bar No. 9412140
Goriune Dudukgian, AK Bar No. 0506051
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: jdavis@njp-law.com
Email: gdudukgian@njp-law.com

Attorneys for Plaintiff

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

FIRST JUDICIAL DISTRICT AT JUNEAU

| | |
|---|---|
| JAMES KERR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| BOROUGH OF PETERSBURG, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | Case No. 1JU-22-00856 CI |

**JURY DEMAND**

COMES NOW the plaintiff, James Kerr, through counsel, and demands a

jury on all claims in this case.

//

//

//

//

//

Page 1 of 2

DATED this __15th__ day of __December__, 2022

NORTHERN JUSTICE PROJECT, LLC
Attorneys for Plaintiff

By:_____*James J. Davis, Jr.*_____
James J. Davis, Jr., AK Bar No. 9412140
Goriune Dudukgian, AK Bar No. 0506051

I certify that on December 16 2022
a true and correct copy of the above
was served via Email on

Mike Gatti
Kendra Bowman
Jermain, Dunnagan & Owens, PC
3000 A Street, Suite 300
Anchorage, AK 99503

_____*j d*_____ Date_12/16/22_

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

Page 2 of 2

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
FIRST JUDICIAL DISTRICT AT JUNEAU

James Kerr,                  )
                                    )
            Plaintiff,        )
                                      )
     v.                        )
                                    )
Borough of Petersburg,    )
                                    )
            Defendant.    )     Case No. 1JU-22-856 CI

## NOTICE REGARDING REPORT OF PARTIES' PLANNING MEETING[1]

In order for the court to set the trial date scheduling conference hearing, the report of parties planning must first be filed with the court. As soon as the report is filed, notice will be sent to the parties with the date and time of the scheduling conference.

Entered at Juneau, Alaska this 15th day of December, 2022.

_MC Carpeneti_

Marianna Carpeneti
Superior Court Judge

Certification of Distribution
Davis        Via Email
Bowman    Via Email
Gatti        Via Email
                  Via
By: L Kaluig   Date Dec. 15 2022

[1] CIV-203
*Alaska Court System*

IN THE DISTRICT/SUPERIOR COURT FOR THE STATE OF ALASKA

AT_____

```
                                    )
                                    )
              Plaintiff(s),         )
vs.                                 )
                                    )
                                    )
                                    )
                                    )   CASE NO._____
              Defendant(s).         )
_____)      REPORT OF PARTIES' PLANNING
                                              MEETING
```

Pretrial Scheduling Conference date: _____ Judge assigned:_____

Type of action:_____

The parties' planning meeting was held _____ and attended by:

_____ for _____
_____ for _____
_____ for _____

1.    **Issues.**  Preliminary joint statement of issues:  (Include separate statements where parties disagree.)

      _____
      _____
      _____

2.    **Initial Disclosures**.  The initial disclosures required by Civil Rule 26(a)(1)
      ☐    have been exchanged    ☐    will be exchanged by _____

      The parties agree that supplementations under Rule 26(e) will be due at the following times or intervals:

      _____.

3.    **Discovery Plan**.  The parties jointly propose to the court the following discovery plan:

      a.    **Subjects**.  Brief description of subjects on which discovery will be needed:

            _____
            _____
            _____

      b.    **Deadline**.  All discovery must be commenced in time to be completed by _____except that discovery on the following issues must be completed by the dates shown.

            <u>Issues for Early Discovery</u>          <u>Deadline for Completion</u>

            _____          _____
            _____          _____

Page 1 of 4
CIV-203 (2/03)(cs)                                          Civil Rules 26(f) and 16(b)
REPORT OF PARTIES' PLANNING MEETING

EXHIBIT A

c. **Limits**.

    (1) <u>Interrogatories</u>.  Civil Rule 33(a) allows each party to serve a maximum of 30 interrogatories upon any other party.  Responses are due 30 days after service.  The parties stipulate to the following changes in these limits:

☐ No change.
☐ Maximum of_____ interrogatories.
☐ Responses due _____days after service.

    (2) <u>Requests for Admission</u>.  Civil Rule 36 does not limit the number of requests for admission that each party may serve.  Responses are due 30 days after service.  The parties stipulate to the following changes:

☐ No change.
☐ Maximum of _____ requests for admission.
☐ Responses due _____ days after service.

    (3) <u>Depositions</u>.  Civil Rule 30(a) allows each side to depose the following persons as a matter of right:  other parties; independent experts expected to be called at trial; treating physicians; document custodians; and any three other persons.  The depositions of a party, expert witness, or treating physician may not exceed six hours.  Other depositions may not exceed three hours.  Civil Rule 30(d)(2).  The parties stipulate to the following changes in these limits:

☐ No change.
☐ _____ may depose the following additional witnesses:
    _____

☐ Deposition of _____ not to exceed _____ hours.

d. **Other Provisions of Discovery Plan.**

_____
_____
_____

4. **Trial.**

a. Complete either (1) or (2).  (You must tell the judge when the case will be ready for trial or for a trial setting conference.  Civil Rule 16(b)(1)(G).)

    (1) The case will be ready for trial by _____

        Estimated trial time ("Trial time" for any party includes the party's opening statement, closing argument, and direct and cross-examination of all witnesses.):

        Plaintiff(s) _____days
        Defendant(s) _____days
        Other parties _____days

    (2) Trial cannot be scheduled now because_____
        _____
        The case will be ready for a trial setting conference by _____

Page 2 of 4
CIV-203 (2/03)(cs)
REPORT OF PARTIES' PLANNING MEETING

Civil Rules 26(f) and 16(b)
EXHIBIT A
Page 23 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 23 of 176

b.    Jury trial ☐ requested  ☐ not requested  ☐ disputed.
Explain: _____

5.   **Proposed Pretrial Deadlines.**

|  | Plaintiff(s) | Defendant(s) |
|---|---|---|
| a. Joinder of parties | _____ | _____ |
| b. Amendment of pleadings | _____ | _____ |
| c. Preliminary witness lists | _____ | _____ |
| d. Expert witness lists under Rule 26(a)(2)(A) | _____ | _____ |
| e. Expert reports under Rule 26(a)(2)(B) | _____ | _____ |
| f. Dispositive motions | _____ | _____ |
| g. Other motions | _____ | _____ |
| h. Final witness lists under Rule 26(a)(3) | _____ | _____ |
| i. Final exhibit lists under Rule 26(a)(3) | _____ | _____ |

j.  Objections under Rule 26(a)(3): _____ days after disclosure of relevant list.

6.   **Settlement**.

a.  The parties have discussed the possibilities for a prompt settlement or resolution of the case, including the following alternative dispute resolution procedures (check all that apply):

☐ settlement conference
☐ mediation
☐ non-binding arbitration
☐ other: _____

Comments: _____
_____
_____

b.  Settlement Conference.

☐ The parties request a settlement conference.
☐ The parties agree that the deadline for requesting a settlement conference will be: _____
☐ Other: _____

c.  Mediation.

☐ The parties request appointment of a mediator under Civil Rule 100.
☐ The parties agree that the deadline for requesting appointment of a mediator will be: _____
☐ Other: _____

7.   **Pretrial Scheduling Conference.**  The parties ☐ waive  ☐ do not waive a conference with the court before entry of the scheduling order. (Note: The judge may hold a pretrial scheduling conference notwithstanding the parties' waiver. Parties should plan to attend the conference unless otherwise notified by the court.)

Page 3 of 4
CIV-203 (2/03)(cs)
REPORT OF PARTIES' PLANNING MEETING

Civil Rules 26(f) and 16(b)
EXHIBIT A
Page 24 of 351

Case 1:23-cv-00008-SLG  Document 1-1  Filed 08/25/23  Page 24 of 176

8.     **Other Orders.**  (List any other orders that should be entered by the court under Rule 26(c) (protective orders) or Rule 16(b) and (c) (pretrial orders).)

_____

_____

_____

_____

_____


_____          _____
                Date                              Signature of Attorney/Unrepresented Party

                                                  _____
                                                              Type or Print Name

                                                  Representing _____


_____          _____
                Date                              Signature of Attorney/Unrepresented Party

                                                  _____
                                                              Type or Print Name

                                                  Representing _____


_____          _____
                Date                              Signature of Attorney/Unrepresented Party

                                                  _____
                                                              Type or Print Name

                                                  Representing _____


**Instructions:  Attorneys of record and unrepresented parties are jointly responsible for attempting in good faith to agree on a proposed discovery plan and for submitting to the court within 10 days after the meeting a written report outlining the plan.  Civil Rule 26(f).**

EXHIBIT A
Page 25 of 351

IN THE DISTRICT/SUPERIOR COURT FOR THE STATE OF ALASKA
FIRST JUDICIAL DISTRICT AT JUNEAU

James Kerr,

                Plaintiff,

vs.

Borough of Petersburg,

                Defendant.

CASE NO: 1JU-22-00856CI

**NOTICE OF HEARING**

| | |
|---|---|
| Event: | Trial Date Setting Conference |
| Judge: | Marianna C Carpeneti |
| Location: | Courtroom A, Juneau Courthouse |
| | 123 4th Street |
| | Juneau, AK 99801 |
| Date: | 05/05/2023 |
| Time: | 9:00 am |

For parties who want to participate in the above hearing remotely.

    Call **1-888-788-0099**.

    Meeting ID: 466 560 5005   Passcode: None    If you are placed on hold, please stay
on the line — your case may be delayed by other cases.

| | |
|---|---|
| _____April 4, 2023_____ | By: KKolvig_____ |
| Date | Deputy Clerk |

I certify that on      4/4/2023____
a copy of this notice was mailed or delivered to:
   Michael R Gatti
   Kendra E Bowman
   James J Davis

Clerk:    KKolvig_____

**Hearing/Event information for this case may also be available online at courts.alaska.gov**

**FILE COPY**

TF-105 (1/23)
Notice of Hearing

EXHIBIT A
Page 26 of 351

Michael Gatti
Kendra E. Bowman
JERMAIN DUNNAGAN & OWENS, P.C.
3000 A Street, Suite 300
Anchorage, AK 99503
Telephone: (907) 563-8844
Fax: (907) 563-7322
Email: mgatti@jdolaw.com
        kbowman@jdolaw.com

*Attorneys for Defendant*

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

FIRST JUDICIAL DISTRICT AT JUNEAU

| | |
|---|---|
| JAMES KERR,<br><br>              Plaintiff,<br><br>v.<br><br>BOROUGH OF PETERSBURG,<br><br>              Defendant. | |
| | Case No. 1JU-22-00856 CI |

### DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
### (Public Official, Public Figure, and Matter of Public Concern)

COMES NOW, Defendant Petersburg Borough (the "Borough") and pursuant to

Alaska R. Civ. P. 56, hereby requests the court find that Borough Police Chief James

Kerr is a public official and/or a public figure, and this matter involves an issue of public

concern as a matter of law. The determination of whether a plaintiff is a public

official/public figure is a question of law for the trial court to decide. As a public

official/public figure, and involving a matter of public concern, the court should find that

Chief Kerr bears the burden of demonstrating by clear and convincing evidence that the

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

[01395974]

Borough's alleged defamatory statement was made with actual malice. This motion is supported by the attached memorandum, exhibits, and proposed order.

Dated this 13th day of June, 2023 at Anchorage, Alaska.

JERMAIN DUNNAGAN & OWENS, P.C.
Attorneys for Defendants


By: /s/ *Michael Gatti*
    Michael Gatti
    ABA #8306033
    Kendra E. Bowman
    ABA #0511109

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing was served by (x)email ( )mail ( )hand ( ) fax this 13 June 2023, to:

James J. Davis, Jr.
Goriune Dudukgian
Northern Justice Project, LLC
406 G. Street, Suite 207
Anchorage, AK 99501
jdavis@njp-law.com
gdudukgian@njp-law.com


/s/ *Sherry Sims*
Sherry Sims

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

[01395974]
**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Public Official/Public Figure)**
*Kerr v. Borough of Petersburg,* Case No. 1JU-22-00856CI      Page 2 of 2

Michael Gatti
Kendra E. Bowman
JERMAIN DUNNAGAN & OWENS, P.C.
3000 A Street, Suite 300
Anchorage, AK 99503
Telephone: (907) 563-8844
Fax: (907) 563-7322
Email: mgatti@jdolaw.com
        kbowman@jdolaw.com

*Attorneys for Defendant*

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

FIRST JUDICIAL DISTRICT AT JUNEAU

| | |
|---|---|
| JAMES KERR, | |
| Plaintiff, | |
| v. | |
| BOROUGH OF PETERSBURG, | |
| Defendant. | Case No. 1JU-22-00856 CI |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
**(Public Official, Public Figure, and Matter of Public Concern)**

COMES NOW, Defendant Petersburg Borough (the "Borough") and pursuant to Alaska R. Civ. P. 56, hereby requests the court find that Borough Police Chief James Kerr is a public official, public figure or both and this matter involves an issue of public concern as a matter of law. The determination of whether a plaintiff is a public official/public figure is a question of law for the trial court to decide. As a public official/public figure, and involving a matter of public concern, the court should find that

{01400578}

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

Chief Kerr bears the burden of demonstrating by clear and convincing evidence that the Borough's alleged defamatory statement was made with actual malice.

## FACTUAL HISTORY

Chief Kerr was hired by the Borough as the chief of police on July 1, 2018.[1]  In response to the COVID-19 pandemic, Petersburg Borough Emergency Operations Center ("EOC") and the Petersburg Borough Assembly began issuing Health Alerts. The Assembly took legislative action for the protection of the public's health safety and welfare by adopting several ordinances regarding masking and testing for travelers.[2]  Mandate # 4 and Mandate # 8 both required that face coverings be worn under certain circumstances.[3] According to Chief Kerr, the EOC and the Petersburg Medical Center requested a police presence at the airport allegedly "for intimidation on making people test for COVID at the airport."[4] Chief Kerr provided an officer as time allowed; however, he indicated that due to test provider confrontations, a police officer was not made available except to respond as needed.[5]  Chief Kerr claimed his department attempted to work with the Petersburg Medical Center on enforcement, but they "refused to share information citing HIPPA [*sic*]."[6]

---

[1] **Ex. A**, Department Head Employment Agreement and job description.  *See also* Petersburg Borough Code 3.34.020 (the chief of police is a Borough employee).
[2] *See* Petersburg Borough Mandate #4 (4/20/20) and Mandate #8 (11/16/20) at https://www.petersburgak.gov (last visited 5/26/23).
[3] *Id.*
[4] **Ex. B**, Kerr Timeline/Overview of events (redacted).
[5] *Id.*
[6] *Id.*

[01400578]
**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Public Official/Figure)**
*Kerr v. Borough of Petersburg,*  Case No. 1JU-22-00856CI

EXHIBIT A
Page 30 of 351

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

A Borough Assembly meeting was held on November 17, 2021. One of the issues on the agenda was Ordinance #2021-20, which was proposed to amend a prior emergency ordinance that had implemented a mask mandate indoors, requiring business owners to deny entry to those who did not wear a face covering, and the issuance of a fine for non-compliance.[7] When the Assembly opened the floor to public comment regarding enforcement of the mask mandate, Chief Kerr was the first person in the community to address the Assembly.[8] Chief Kerr stated his objections to the enforcement of the Borough's mask mandate in public areas, opining on the negative impact it would have on the police department.[9]

After offering his public statement to the Assembly and urging against adoption of the mask mandate, Chief Kerr alleged he received "constant retaliation from [his] speech against masking enforcement" and two assembly members, "Jeff [Meucci] and Dave [Kensinger] wanted me fired over my personal statement to the assembly."[10] He asserted that his statements to the Assembly had been as a private individual and not as the chief of police and was therefore protected by free speech.[11] He also noted Borough Manager Steve

---

[7] **Ex. C**, Petersburg Borough Ordinance #2021-20. The 11/16/21 Assembly meeting is publically available: https://www.petersburgak.gov/bc-borough/page/borough-assembly-regular-meeting-10 (last visited 5/26/23).

[8] **Ex. D**, 11/17/21 Transcript of Chief Kerr Public Comments on Ordinance #2021-20. Notably, Chief Kerr declared the statement he was making was as a private citizen; however a review of his transcript demonstrates he discussed matters directly related to his status as the head of the police department, including his view that enforcing the mandate would be "use of excessive force."

[9] *Id.*

[10] *See* **Ex. B**, Kerr Timeline/Overview of events (redacted). The Borough disputes Chief Kerr's comments were personal comments.

[11] *Id.*

{01400578}

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Public Official/Figure)**
*Kerr v. Borough of Petersburg,* Case No. 1JU-22-00856CI       Page 3 of 19

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

Giesbrecht "cautioned me on future statements," and indicated that a plan would be put in place to work on the issue.[12]

Chief Kerr further asserted, "Dave sent an email to Steve wanting me fired," and "Jeff, Dave and Thomas[13] all questioned the police department hiring process."[14] Chief Kerr also complained Assembly Member Meucci questioned department employees and dispatch about police procedure, discussed the use of the Public Safety Advisory Board to review the police department, and questioned the classification of domestic violence calls.[15]

In March 2022, Chief Kerr made a complaint, and submitted a document titled "Timeline/Overview of events," to Debra Thompson, Borough Clerk/Human Resource Director in accordance with the Borough's Employee Policy Manual's ("Employee Manual") grievance process.[16] The Borough accepted and processed the Timeline as a complaint of harassment (which includes bullying) arising under its Employee Policy

[12] Id.

[13] Thomas Fine-Walsh is also an assembly member. Assembly members began asking questions regarding Chief Kerr's hiring practices after a new hire was found to have included Nazi propaganda and anti-sematic sentiments on his social media. The assembly is legally authorized to question the activities of a department of the Borough. A municipality is legally authorized "to establish and prescribe the functions of a municipal department, office or agency; to require periodic or special reports from a municipal department and make inquiries into the conduct of a municipal department; and to investigate an affair of the municipality and make inquiries into the conduct of a municipal department". *AS 29.35.010 (3),(4),(5). A municipality also has the power " to enforce an ordinance and to prescribe a penalty for a violation"AS 29.35.010(7)*

[14] **Ex. B**, Kerr Timeline/Overview of events (redacted).

[15] Id.

[16] Id.

{01400578}

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Public Official/Figure)**
*Kerr v. Borough of Petersburg,* Case No. 1JU-22-00856CI                    Page 4 of 19

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

Manual.[17]  The law firm Clayton & Diemer, LLC was engaged to provide legal advice on the following: (1) whether Chief Kerr, a high ranking public official, was acting as a private citizen when he addressed the Assembly and objected to police enforcement of the mask mandate and was thus protected by the First Amendment; and (2) whether the conduct complained of against Assembly Members Meucci and Kensinger constituted harassment.[18]  Attorney Peter Diemer provided legal counsel, with the matter conducted pursuant to the confidentiality provisions in the Borough's Employee Manual, Alaska's privacy laws, and the attorney client and other privileges.[19]

On June 2, 2022, Diemer's confidential legal opinion was provided to the Borough Manager, who is Chief Kerr's supervisor[20] and the Borough Clerk/HR Director.[21]  Given the importance of the subject matter and moving the parties forward, Assembly Member Kensinger, Assembly Member Meucci, Chief Kerr and his counsel were permitted to

[17] *Id.*; **Ex. E**, Employee Manual at 2, 5, 14-16.
[18] *Id.*; **Ex. F**, 6/27/22 Response to KFSK-FM Public Records Request.
[19] *Id.* The records relating to the personnel matter are protected from public disclosure due to the confidentiality of the personnel investigation and legal opinion, the attorney-client privilege, the common interest privilege, and other privileges.
[20] Petersburg Borough Charter 4.02.
[21] *See* **Ex. G**, Defendant's Verified Responses to Plaintiff's First Set of Discovery Requests at Response to Interrogatory No. 1, *Koenigs v. Petersburg Borough*, 1PE-22-00046 CI.  The *Koenigs* case is a companion case involving a private citizen seeking to obtain confidential information regarding Chief Kerr's personnel matter under the Alaska Public Records Act.  The Borough has filed a motion for summary judgment that the information is exempt from disclosure and is awaiting the court's determination. **Ex. H**, Memorandum in Support of Defendant's Motion for Summary Judgment, *Koenigs v. Petersburg Borough, et al*.

[01400578]
**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Public Official/Figure)**
*Kerr v. Borough of Petersburg,* Case No. 1JU-22-00856CI            Page 5 of 19

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

review a copy of the legal opinion at the Borough; however, no copies were ever authorized for distribution or dissemination.[22]

On June 20, 2022, KFSK-FM ("KFSK") radio submitted a public records request to the Borough seeking information related to Chief Kerr's employment complaint.[23] Because the public records request involved the chief of police, a high ranking public official, and two assembly members in a matter the community appeared to be aware of, the Borough balanced the public's right to the information against the confidentiality (to the extent possible), privacy, and privileges attached to the personnel matter and released truthful and general opinion information to fulfill its obligations in a reasonable and balanced approach.[24] The Borough's response to KFSK's public records request included a redacted copy of Chief Kerr's Timeline and a summary of the outcome:

> Chief Kerr claimed the primary impetus behind the alleged harassment was a statement he made to the Assembly on November 17, 2021 regarding the Borough's public health and safety measure requiring face covering in public settings, a statement which he believed was protected by the First Amendment of the U.S. Constitution. The Borough commenced an investigation, conducted by an outside attorney working with the Borough Attorney. This attorney found harassment had not occurred. In brief, (1) the Chief's November 17, 2021 statement was not protected by either the First Amendment of the U.S. Constitution or by the State Constitution, and (2) the conduct which Chief Kerr objected to did not meet any legal definition of harassment. Assembly Members have the authority and right, under PMC 3.08.040C, to ask questions and request documents, both during and outside of Assembly meetings, regarding issues impacting the Borough, and the inquiries made here involved important police department matters, including

[22] *Id.*
[23] **Ex. I**, 6/20/22 Public Records Request from KFSK-FM.
[24] **Ex. F**, 6/27/22 Response to KFSK-FM Public Records Request.

{01400578}
**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Public Official/Figure)**
*Kerr v. Borough of Petersburg,* Case No. 1JU-22-00856CI

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

EXHIBIT A
Page 34 of 351

hiring processes and domestic violence calls. In short, there was no unlawful harassment or bullying.[25]

On June 28, 2022, KFSK published a story that quoted the above-referenced language, including reference to Chief Kerr's "harassment" complaint.[26] Prior to publishing the story, KFSK solicited a public comment from Chief Kerr who responded, "I would only like to say when local government doesn't work in harmony it only does a disservice to the community it serves. I hope moving forward we can put differences aside and due [sic] our best to serve the community of Petersburg."[27] The article included the statement, "Chief Jim Kerr alleges harassment over his public statements against enforcing masking or requiring testing for COVID-19."[28] Chief Kerr took exception to the statement, but only as it referenced testing. He emailed KFSK asserting he had "never complained about requiring testing" and asking "Where did you get that?"[29] KFSK replied the information came from the second paragraph of his "timeline complaint" starting with "EOC/Hospital wanted police at airport for intimidation on making people test ...."[30] Objecting to this characterization of his Timeline he wrote:

> *My complaint for harassment* did not include any objection to covid testing. I was tested many times myself. If you have any question regarding this, Steve will verify. Your sentence makes it sound like I was objecting to

---

[25] *Id.*

[26] **Ex. J**, Joe Viechnicki, "Petersburg borough concludes no harassment occurred between assembly members and police chief" KFSK, 6/28/22.

[27] *Id.*

[28] *Id*.; **Ex. K**, Email from J. Kerr to J. Viechnicki (June 28, 2022, 5:54 p.m.).

[29] *Id.*

[30] *Id.* at Email from J. Viechnicki to J. Kerr (June 29, 2022, 9:09 a.m.).

[01400578]
**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Public Official/Figure)**
*Kerr v. Borough of Petersburg,* Case No. 1JU-22-00856CI          Page 7 of 19

EXHIBIT A
Page 35 of 351

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

COVID testing – I wasn't. I hope you will clarify that sentence *to remove that erroneous language*.[31]

KFSK issued a correction to the objection and stating, "*Police chief Jim Kerr says his complaint did not involve enforcement for COVID testing.*"[32]

Chief Kerr is now alleging in this lawsuit that he never filed a "harassment" complaint and therefore, that the Borough's public records response of June 27, 2022, published in a story by KFSK the next day, allegedly defamed him and placed him in a false light.[33] The Borough now moves the court to hold that Chief Kerr is a public official/public figure and the matter commented on is one of public concern as a matter of law. Because there are no genuine issues of material fact the Borough's motion for partial summary judgment must be granted.

### DISCUSSION

### I. Standard for Summary Judgment.

Summary judgment is appropriate under Alaska law when the evidentiary record demonstrates no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[34] To defeat summary judgment, the opposing party may in turn offer admissible evidence reasonably tending to dispute the moving party's evidence, thus

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A Street, Suite 300
Anchorage, Alaska 99503
(907) 563-8844
Fax (907) 563-7322

---

[31] *Id.* at Email from J. Kerr to J. Viechnicki (June 30, 2022, 9:13 a.m.) (emphasis added).
[32] **Ex. I**, Joe Viechnicki, "Petersburg borough concludes no harassment occurred between assembly members and police chief" KFSK, 6/28/22.
[33] *Id.*; Kerr Complaint for Injunctive Relief and Damages.
[34] Alaska R. Civ. P. 56(c); *Fairbanks North Star Borough v. Lakeview Enterprises, Inc.,* 897 P.2d 47, 53 n.7 (Alaska 1995).

{01400578}
**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Public Official/Figure)**
*Kerr v. Borough of Petersburg,* Case No. 1JU-22-00856CI          Page 8 of 19

establishing that a genuine issue of material fact remains to be tried.[35] The moving party has the initial burden of showing that there are no genuine issues of material fact in dispute.[36] However, once the moving party has established the absence of genuine issues of material fact, the burden shifts to the non-moving party to "clearly and specifically demonstrate that it can produce admissible evidence disputing the movant's evidence."[37] Unsupported conclusory allegations are insufficient to prevent summary judgment.[38]

When material facts are disputed, summary judgment is still appropriate where the evidence is such that reasonable minds cannot differ.[39] To create a genuine issue of material fact there must be more than a scintilla of contrary evidence.[40] Summary judgment should be rendered where the pleadings, depositions, answer to interrogatories and admissions on file together with the affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.[41]

## II. Chief Kerr is a Public Official/Public Figure Subject to the Actual Malice Standard for Defamation.

### A. The issue of whether Chief Kerr is a public official/public figure is a question of law.

The question of whether a plaintiff is a public figure or official for purposes of

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

---

[35] *Id.*
[36] *Christensen v. NCH Corp.,* 956 P.2d 468, 474 (Alaska 1998).
[37] *Southeast Alaska Constr. Co. v. State, Dept. of Transportation and Public Facilities,* 791 P.2d 339, 342 (Alaska 1990).
[38] *Fromby v. Whisenhunt,* 680 P.2d 787, 793 (Alaska 1984).
[39] *Sharp v. Fairbanks Northstar Borough,* 569 P.2d 178, 184-85 (Alaska 1977).
[40] *Yurioff v. American Honda Motor Co.,* 803 P.2d 386, 389 (Alaska 1990).
[41] Alaska R. Civ. P. 56(c).

{01400578}
**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Public Official/Figure)**
*Kerr v. Borough of Petersburg,* Case No. 1JU-22-00856CI          Page 9 of 19

defamation is a question of law for the court to determine.[42] "[A]n evidentiary hearing may sometimes be required in order to determine whether an individual is a public figure, but such a determination may be resolved on summary judgment if the facts relating to public figure status are uncontroverted."[43]

**B.    Chief Kerr is a public official as a matter of law.**

The basic elements of defamation in Alaska are: (1) a false and defamatory statement; (2) an unprivileged publication to a third party; 3) fault amounting to at least negligence on the part of the publisher; and 4) the existence of either "per se" action ability or special harm.[44]  However, the first amendment's protection of free and open debate on public issues limits the ability of public officials to recover damages for defamation.[45] To recover damages for defamation, a public official must prove that the statement was published with actual malice.[46]

When a plaintiff is properly characterized as a public official, instead of the four-factor test described above, a public official is required to show that the defendant made a defamatory statement "with actual malice - that is, with knowledge that it was false or with

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

---

[42] *Mount Juneau Enterprises, Inc. v. Juneau Empire*, 891 P.2d 829, 835 (Alaska 1995) ("The nearly universal rule is that determination of public figure status is a question of law for the court to determine.").

[43] *Id.* at 836.

[44] *French v. Jadon, Inc.*, 911 P.2d 20, 32 (Alaska 1996).

[45] *Beard v. Baum*, 796 P.2d 1344, 1353 (Alaska 1990) (citing *New York Times v. Sullivan,* 376 U.S. 254 (1964)). The protection of the actual malice standard also extends to public figures. *Id.* (citing *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 163–65 (1967)).

[46] *Beard*, 796 P.2d at 1353.

{01400578}
**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Public Official/Figure)**
*Kerr v. Borough of Petersburg,* Case No. 1JU-22-00856CI          Page 10 of 19

reckless disregard of whether it was false of not."[47]  The plaintiff must be a public official

and the alleged defamatory statement relates to his or her official conduct.[48]  Both of these

requirements are satisfied here, as Chief Kerr is the head of the police department, and the

alleged defamatory statement concerns a matter directly relating to his official conduct in

his position with the Borough.

The test for "public official" was examined by the Alaska Supreme Court in *Green

v. N. Pub. Co*.[49]   In *Green*, the plaintiff was a physician who contracted with the state to

provide medical services to five jails.  A newspaper editorial partially blamed Dr. Green

for an inmate's death, and he sued for defamation.  It was determined he was a public

official subject to the actual malice standard for defamation.[50]  The Court noted the US

Supreme Court has held that the "public official" designation "applies at the very least to

those among the hierarchy of government employees who have, or appear to the public to

have, substantial responsibility for or control over the conduct of governmental affairs."[51]

The Court considered the boundaries of the "public official" concept as articulated in a

footnote in *New York Times*:

> It is suggested that this might apply to a night watchman accused of stealing
> state secrets. But a conclusion that the *New York Times* malice standards
> apply could not be reached merely because a statement defamatory of some

---

[47] 376 US 254, 279-280 (1964).

[48] *Id.* at 283 n.23 (it was enough that plaintiff's job was as the Police Department Commissioner, and the allegations involved an advertisement concerning his official conduct to meet the definition of public official).

[49] 655 P.2d 736, 740–41 (Alaska 1982).

[50] *Id.*

[51] *Id.* (citations omitted).

{01400578}

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Public Official/Figure)**
*Kerr v. Borough of Petersburg,*  Case No. 1JU-22-00856CI                    Page 11 of 19

EXHIBIT A
Page 39 of 351

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

person in government employ catches the public's interest; that conclusion would virtually disregard society's interest in protecting reputation. The employee's position must be one which would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the particular charges in controversy.[52]

The Court acknowledged Dr. Green's position "was not highly visible in the community and usually attracted little public scrutiny."[53] But it recognized that Dr. Green held a position of sufficient importance that the public had "an independent interest in the qualifications and performance of the person who holds it beyond the general public interest in the qualifications and performance of all government employees."[54] Because Dr. Green was responsible for providing critical healthcare services to inmates detained by the government in a role that warranted particular scrutiny, he was required to satisfy the actual malice standard.[55]

Chief Kerr easily meets the test set out in *Green*. Chief Kerr's position is highly visible to the public, and as the head of the police department he has substantial responsibility and control over governmental affairs. Like Dr. Green, he is a public official holding a position of significant importance to cause the public to have an interest beyond its general interest in all public employees.

---

[52] *Id.* at 741.
[53] *Id.*
[54] *Id.* (citing *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966)).
[55] *Id.*

{01400578}

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Public Official/Figure)**
*Kerr v. Borough of Petersburg,* Case No. 1JU-22-00856CI            Page 12 of 19

EXHIBIT A
Page 40 of 351

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

In addition to the foregoing, the United States Supreme Court has determined that a police chief is a "public official," for purposes of actual malice.[56]  Indeed, police officials, including rank-and-file officers, have uniformly been treated as public officials within the meaning of *New York Times Co.*[57]  Although Alaska has not directly applied *New York Times Co.* to the position of police chief, the Supreme Court has previously identified the position as one that is high ranking and of "legitimate public concern."[58]  Chief Kerr's status as police chief during the period in which he alleges defamation is undisputed.  Likewise, it is undisputed the alleged defamatory remark relates to Chief Kerr's job performance and position with the Borough.  In determining the status of a patrolman, the court in *Coursey v. Greater Niles Township Publishing Corp.*, noted:

> It is our opinion that the plaintiff is within the "public official" classification.  Although as a patrolman he is "the lowest in rank of police officials" and would have slight voice in setting department policies, his duties are peculiarly" governmental" in character and highly charged with the public interest....[59]

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

---

[56] *See Henry v. Collins*, 380 U.S. 356, 357 (1965) (holding city police chief and county attorney are public officials who are constitutionally prohibited from recovering damages for a defamatory falsehood relating to their official conduct unless they prove the statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not.").

[57] *Id.*; *Time, Inc. v. Pape*, 401 U.S. 279, 291-92 (1971) (deputy chief of detectives and lieutenant); *St. Amant v. Thompson*, 390 U.S. 727, 730 (1968) (deputy sheriff); *MediaOne, L.L.C. v. Henderson*, 592 S.W.3d 933 (Tex. App. 2019) (police chief); *Henry v. Media Gen. Operations, Inc.*, 254 A.3d 822, 837 (R.I. 2021) (police captain); *Torix v. Brown*, 295 P.3d 1138, 1141 (Okla. Civ. App. 2013) (police officers). Notably, the plaintiff in *New York Times Co.*, was a city police commissioner. 376 U.S. at 256.

[58] *City of Kenai v. Kenai Peninsula Newspapers, Inc.*, 642 P.2d 1316, 1324 (Alaska 1982).

[59] 40 Ill.2d 257, 239 N.E.2d 837 (1968).

[01400578]
**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Public Official/Figure)**
*Kerr v. Borough of Petersburg,* Case No. 1JU-22-00856CI                    Page 13 of 19

Consequently, Chief Kerr's position as the police chief makes him a public official. The police chief is highly visible and serves as the head of the department. He possesses both considerable authority and the ability to exercise force. Misuse of his authority can result in significant deprivation of constitutional rights and personal freedoms, as well as bodily injury and financial loss. The strong public interest in ensuring open discussions and criticism of his qualifications and job performance warrant the conclusion Chief Kerr is a public official. This is because the public perceives a police officer as an authority figure entrusted in upholding the law and possesses a legitimate interest in information related to his ability to follow the law and perform his duty to protect the public. "Having 'stepp[ed] into the public spotlight ... he must take the good with the bad.'"[60] Chief Kerr, as a public official, bears the burden of demonstrating by clear and convincing evidence that the Borough acted with actual malice.

### C. Chief Kerr is a limited-purpose public figure.

In addition to being a public official, Chief Kerr is a limited-purpose public figure.[61] Public officials and public figures are not necessarily synonymous.[62] In *Beard v. Baum*,

---

[60] *Tavoulareas v. Piro*, 817 P.2d 762, (D.C.Cir. 1987) (alterations in original) (*quoting Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287, 1294-1295 (D.C.Cir. 1980)).

[61] *See State v. Carpenter*, 171 P.3d 41, 56 (Alaska 2007) (a limited purpose public figure voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues as opposed to someone with wide-spread fame or notoriety).

[62] *Hidebrant v. Meredith Corp.*, 63 F.Supp.3d 732, 743, n.4 (E.D. Mich. 2014) (comparing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974) (a limited purpose public figure is someone "who thrust [his or her self] to the forefront of particular public controversies in order to influence the resolution of the issues involved") and *Rosenblatt*, 383 U.S. at 85 (public officials "have or appear

[01400578]

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Public Official/Figure)**
*Kerr v. Borough of Petersburg*, Case No. 1JU-22-00856CI            Page 14 of 19

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

the Alaska Supreme Court explained that a person may be a public figure for all purposes or only for purposes of a particular set of issues:

> [The public figure] designation may rest on either of two alternative bases. In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself into a particular public controversy and thereby becomes a public figure for a limited range of issues. In either case such persons assume special prominence in the resolution of public questions.[63]

There, the Court held that a former state Department of Transportation ("DOT") employee, who had claimed he had been given poor performance ratings and was forced to resign his position due to allegations of corruption, was a public figure with respect to both the issues of corruption and his job performance.[64]  Beard alleged that the DOT's regional director defamed him by his statements published in a newspaper article.[65]  The Court found that Beard was "clearly a public figure with respect to his allegations of corruption at DOT since he brought the issue to public attention" and he voluntarily injected himself into a public controversy by speaking to the newspaper about his job performance.[66]  The Court

---

to the public to have, substantial responsibility for or control over the conduct of governmental affairs" and they "have such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees....")).

[63] 796 P.2d at 1353.

[64] *Id.*

[65] *Id.* at 1353.  Beard alleged defamation that arose out of statements made about Beard's low performance rating accurately reflecting his value to the DOT, that Beard had become obsessed by a corruption allegation, that Beard's allegations were primarily a "bunch of smoke," and that Beard's refusal to let the issue die was disruptive to his department.  *Id.*

[66] *Id.*

[01400578]

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Public Official/Figure)**

*Kerr v. Borough of Petersburg,*  Case No. 1JU-22-00856CI                 Page 15 of 19

EXHIBIT A
Page 43 of 351

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

affirmed the lower court's order granting summary judgment finding Beard was a public figure, and he failed to produce evidence of actual malice.

Here, separate and apart from his status as a public official and like the plaintiff in *Beard*, Chief Kerr is also a limited-purpose public figure. He injected himself into a public controversy, issued a public comment to KFSK, and demanded KFSK correct its story, which it did. As a public figure, Chief Kerr must establish by clear and convincing evidence that the Borough acted with knowledge that the alleged defamatory statement was false or in reckless disregard of the statement's truth or falsity.

**D.    The actual malice standard separately applies to matters of public concern.**

The Alaska Constitution goes one step farther regarding *issues* of public importance, regardless of whether it involves a public official or public figure. "Under the Alaska Constitution, a defamatory statement may be conditionally privileged if it concerns a matter of public interest."[67] Thus, such conditionally privileged statements are not actionable unless they were false and defamatory and uttered with actual malice.[68] This privilege was first set out in Alaska in *Pearson v. Fairbanks Publishing Co.*:

> We are aware of the fact that where matters of public concern are involved that a majority of the courts hold that the privilege of public discussion does not extend to misstatements of fact but is limited to opinion, comment or criticism based upon a true statement of fact. We do not follow the majority

---

[67] *Olivit v. City and Borough of Juneau*, 171 P.3d 1137, 1143 (Alaska 2007); *see also Mount Juneau*, 891 P.2d at 837-838.
[68] *Id.*

{01400578}
**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Public Official/Figure)**
*Kerr v. Borough of Petersburg,* Case No. 1JU-22-00856CI                    Page 16 of 19

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

rule, but hold that the privilege extends to the non-malicious misstatements of fact.[69]

This privilege is reiterated in *Mount Juneau Enterprises*, *Inc. v. Juneau Empire*, where the Court stated:

> Pursuant to this court's defamation decisions the public figure test is not the only route to application of the actual malice standard.

> We further protect the free exchange of ideas by applying the actual malice standard to publications on issues of public interest and concern, *even if the defamation plaintiff is not a public figure*[.][70]

The Alaska Supreme Court "applie[s] this standard to both publishers and government speakers."[71] "Thus, to make out a claim for defamation based on speech about a matter of public interest, a plaintiff must show that the false and defamatory statements were made with actual malice."[72] Here, the matter initially arose because of Chief Kerr's public statement to the Assembly on a matter of public importance involving the mask mandate during the COVID-19 global pandemic. In response to Chief Kerr's harassment complaint against two assembly members, Clayton and Diemer was engaged, and then the Borough issued a limited release of information regarding a matter which was already being discussed within the community, after balancing Chief Kerr's right to privacy and

---

[69] *Pearson v. Fairbanks Pub. Co.*, 413 P.2d 711, 713-714 (Alaska 1966). In addition to the lack of actual malice, there was in fact no 'misstatement of fact' here. However, that is not an issue relevant to this motion.
[70] 891 P.2d at 837-838 (emphasis added).
[71] *Olivit*, 171 P.3d at 1143.
[72] *Id.*

{01400578}

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Public Official/Figure)**
*Kerr v. Borough of Petersburg,* Case No. 1JU-22-00856CI                    Page 17 of 19

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

confidentiality to the extent possible in personnel matters arising under the Borough's Employee Manual, against the public's right to information about a high-ranking public official's job performance and accusations against assembly members. As a result, the matter is one of public concern such that the actual malice standard applies regardless of whether Chief Kerr is determined to be a public official or public figure.

## CONCLUSION

The Borough respectfully requests that the Court grant the Borough's motion for partial summary judgment and find that Chief Kerr must prove his alleged defamation by clear and convincing evidence under the *New York Times Co.* actual malice standard. He is a public official, public figure, and his oppositional position to a legitimate Assembly legislative mandate concerned a matter of public importance.

Dated this 13th day of June, 2023 at Anchorage, Alaska.

JERMAIN DUNNAGAN & OWENS, P.C.
Attorneys for Defendants


By: /s/ *Michael Gatti*
　　 Michael Gatti
　　 ABA #8306033
　　 Kendra E. Bowman
　　 ABA #0511109

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

{01400578}
**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Public Official/Figure)**
*Kerr v. Borough of Petersburg,* Case No. 1JU-22-00856CI　　　　　　　　Page 18 of 19

**CERTIFICATE OF SERVICE**

This is to certify that a true and
correct copy of the foregoing was
served by (x)email ( )mail ( )hand
( ) fax this 13 June 2023, to:

James J. Davis, Jr.
Goriune Dudukgian
Northern Justice Project, LLC
406 G. Street, Suite 207
Anchorage, AK 99501
jdavis@njp-law.com
gdudukgian@njp-law.com

*/s/ Sherry Sims*
Sherry Sims

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

{01400578}
**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Public Official/Figure)**
*Kerr v. Borough of Petersburg,* Case No. 1JU-22-00856CI          Page 19 of 19

## Department Head Employment Agreement
### Between
### The Petersburg Borough, Alaska
### And
### James E. Kerr

**THIS AGREEMENT** made and entered into on the date of the last signature below, to be effective July 1, 2018 by and between the **Petersburg Borough, Alaska**, a municipal corporation (hereinafter referred to as the "Borough" or "Department"), and **James E. Kerr** (hereinafter referred to as "Employee"), as follows:

**WHEREAS,** the Borough wishes to retain the services of Employee as the Police Chief of the Borough and to fix the terms and conditions of employment as set forth hereinafter; and

**WHEREAS,** Employee is willing to enter into employment with the Borough subject to the terms and conditions of employment as set forth hereinafter.

**NOW, THEREFORE,** for valuable consideration, including the mutual promises of the parties, it is agreed as follows:

**Section 1:      Term**

This Agreement commences on the effective date set out above and will remain in full force and effect until terminated by the Borough or Employee as provided in Sections 13 or 14 of this Agreement.

**Section 2:      Duties and Authority**

The Borough retains Employee, within its Police Department as Police Chief (hereinafter referred to as "the position"). Employee reports to the Borough Manager, and shall perform the functions and duties of the position specified in the Charter and Ordinances of the Borough, and in the Job Description (attached hereto) and shall perform such other and additional legally permissible duties and functions as may, from time to time, be assigned by the Borough Manager. Employee affirmatively states that he or she meets all qualifications for the position,

**Section 3:      Performance Goals and Evaluation**

A.      The Borough Manager, in collaboration with Employee, shall annually define such goals and performance objectives which are determined necessary for the proper operation of the Department and the attainment of the Borough's policy objectives. The Manager shall establish a relative priority among those various goals and objectives. Said goals and objectives shall be reduced to writing by the Manager. They shall generally be attainable within the time limitations as specified and the annual operating and capital budgets and appropriations provided by the Assembly.

B.      A written evaluation of Employee's performance shall be conducted by the Manager on an annual basis.

1

**Section 4: Hours of Work**

A.  Employee agrees to perform all of the duties and responsibilities of the position and to devote Employee's full-time and best efforts as is necessary to the performance of those duties and responsibilities. Employee's duties and responsibilities may involve varying work periods, work hours and working conditions, for which no other or additional compensation will be paid. The number of days worked during each week, the specific days of the week, the number of hours worked each day, the starting time and the daily ending time are not specified and shall depend upon the demands of the work performed by Employee. It is the understanding of the parties that Employee is to be present at work at the places, days and times necessary for Employee to completely perform the duties and responsibilities of the position.

B.  Employee agrees not to accept or perform any secondary or other employment without the express prior written approval of the Manager.

**Section 5: Conflict of Interest**

Employee shall not undertake any activity which would be in conflict with Employee's employment with the Petersburg Borough.

**Section 6: Professional Development**

A.  Subject to limits established in the annual budget, the Borough may, at the Borough Manager's discretion, pay for professional dues and subscriptions of Employee necessary for continuation and full participation in national, regional, state and local associations and organizations necessary and desirable for Employee's continued professional participation, growth and advancement and for the good of the Borough.

B.  Subject to limits established in the annual budget, the Borough may, at the Borough Manager's discretion, pay for travel and subsistence expenses of Employee for professional and official travel and meetings to adequately continue professional development and to pursue necessary official functions for the Borough, including such governmental groups and committees in which Employee serves as a member.

**Section 7: Salary**

A.  The Borough agrees to compensate Employee for all work performed in the position with a salary equivalent to $96,000 per year, payable in installments at the same time that other employees of the Borough are paid. Subject to satisfactory results of the performance evaluations conducted under Section 3B above, future merit and/or cost of living increases may be available if budgeted by the Borough Manager and approved by the Assembly.

B.  The Borough has the right and obligation to withhold federal, state and other taxes from each payment in accordance with laws and ordinances generally applicable to management personnel.

2

C. Employee shall be a salaried executive or administrative employee, exempt from applicable hourly wage and hour laws, and not eligible for overtime. The compensation set out above is the total salary due Employee for all time spent performing services hereunder.

**Section 8:     Insurance and Paid Time Off Benefits**

A. Employee shall be entitled to participate in the standard Borough employee benefit package then available to full-time non-exempt employees of the Borough for health and life insurance and paid time off (PTO), as may be amended from time to time.

B. The Borough will provide Employee with public official's liability insurance and workers compensation insurance with coverage and to limits equivalent to other employees of the Borough who have managerial responsibilities.

C. Use of PTO by Employee must be approved by the Borough Manager.

D. Upon termination of employment, Employee is entitled to be paid for all accrued, unused PTO.

**Section 9:     Retirement Benefits**

A. Retirement Benefit.  Employee will be provided a retirement benefit with the Alaska Public Employee Retirement System (PERS).

B. Deferred Compensation.  The Borough will withhold from Employee's compensation an amount Employee may designate from time to time, up to the annual limits authorized by the Internal Revenue Service, payable to a Deferred Compensation Retirement Plan that has been established for employees of the Borough.

**Section 10:   Borough Employee Policy Manual**

The provisions of the Borough Employee Policy Manual, as may be amended from time to time, are applicable to Employee, except where otherwise noted in the Manual or as otherwise set out herein. Employee shall sign for and acknowledge receipt of the Manual and subsequent amendments thereto.

**Section 11:   Communication Equipment**

A. The Borough will provide Employee with a cellular telephone, if requested, to maintain communications required for work purposes.

B. It is understood by both parties that Employee may use said cellular telephone for incidental *de minimis* non-business related activities for which the accounting is unreasonable or administratively impractical. See, IRC §132.

3

C.  Employee agrees to return any Borough provided cellular telephone to the Borough, in good condition and working order, except for normal wear and tear, upon termination of employment.

## Section 12:  Termination of Agreement by Borough

A.  Subject to Borough Manager approval, and subsection B below, the Borough may terminate Employee's employment under this Agreement only for just cause. See, *Conduct Standards & Discipline*, Borough Employee Policy Manual. If the Borough terminates Employee hereunder, all compensation payable to Employee under this Agreement shall immediately cease, except that Employee shall be entitled to be paid Employee's regular salary, prorated to the last day of employment, and, pursuant to Section 8(C) above, the Borough shall pay all amounts due and owing for accrued, unused PTO. The Borough shall make such payments not later than the next regularly scheduled payday for the last pay period Employee worked.

B.  The Borough may terminate Employee's employment under this Agreement without cause in the event of borough or departmental reorganization. If the Borough terminates Employee hereunder, the Borough shall pay Employee a lump sum cash payment as severance equal to three months of the monetary value of Employee's current annual salary so long as Employee is not retained by the Borough in another position. The Borough sponsored health insurance shall be paid by the Borough for one full calendar month following termination hereunder. If the Borough terminates Employee's employment hereunder and Employee is reclassified and reassigned to other Borough employment without any break in service, Employee shall not be entitled to any severance pay.

## Section 13:  Termination of Agreement by Employee or by Mutual Consent

A.  Employee may terminate employment under this Agreement at any time, for any reason or for no reason, by delivering to the Manager a written notice of resignation. The Borough requests that Employee provide such notice not later than two (2) months prior to the effective date of the termination. If Employee terminates employment hereunder, all compensation payable to Employee under this Agreement shall immediately cease, except that Employee shall be entitled to be paid Employee's regular salary, prorated to the last day of employment, and pursuant to Section 8(D) above, the Borough shall pay all amounts due and owing for accrued, unused PTO. The Borough shall make such payments not later than the next regularly scheduled payday for the last pay period Employee worked.

B.  This Agreement may be terminated by mutual consent of the parties, upon such terms and conditions as may be agreed upon by the parties.

## Section 14:  Death during Term of Agreement

If Employee dies during the term of this Agreement, the Borough shall pay to Employee's spouse all compensation and any accrued benefits which would otherwise be payable to

4

Employee. In the event the Employee is not survived by a spouse or other successor, the amount shall be payable to Employee's estate.

### Section 15: Other Contractual Terms and Conditions

The Borough Manager may fix any such other terms and conditions of this Agreement, as may be determined from time to time, relating to the performance of Employee, provided such terms and conditions are not inconsistent with or in conflict with the provisions of this Agreement or law.

### Section 16: General Provisions

A.  Integration. This Agreement sets forth and establishes the understanding between the Borough and Employee relating to the engagement of Employee by the Borough to perform the duties and responsibilities of the position. Any prior discussions or representations by or between the parties are merged into and rendered null and void by this Agreement. The parties by mutual written agreement may amend any provision of this Agreement during the life of the Agreement. Such amendments shall be incorporated and made a part of this Agreement.

B.  Binding Effect. This Agreement shall be binding on the Borough and Employee, as well as the parties heirs, assigns, executors, personal representatives and successors in interest.

C.  Severability. The invalidity or partial invalidity of any portion of this Agreement will not affect the validity of any other provision. In the event that any provision of this Agreement is held to be invalid, the remaining provisions shall be deemed to be in full force and effect as if they have been executed by both parties subsequent to the expungement or judicial modification of the invalid provision, so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any party.

D.  Governing Law. This Agreement shall be governed by the laws of the State of Alaska. Any action hereunder or arising out of this employment relationship shall be filed in Superior Court, First Judicial District, at Petersburg, Alaska.

IN WITNESS WHEREOF, this Agreement was signed:

PETERSBURG BOROUGH, ALASKA:

Stephen Giesbrecht
Borough Manager

Date: 6/14/2018

EMPLOYEE:

JAMES KERR
(Name)

Date: 06/14/18

5

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 52 of 176

ATTEST:

Debra K. Thompson

Debra K. Thompson, Borough Clerk

Date: 6/14/2018

6



PETERSBURG
ALASKA

| Department: | Police Department |
|---|---|
| Supervisor: | Borough Manager |
| Prior Revision Date: | 11-26-2013 |
| Last Revision Date: | 02-20-2018 |
| Revision Made By: | S. Giesbrecht |
| Revision Reviewed & Approved by: | SG |
| Employment Status: | Department Head |
| Date Provided to Bargaining Unit | N/A |

## Job Description

# POLICE CHIEF

**Definition**

Directs plans, organizes, and provides administrative direction and oversight for comprehensive Police services, security and law enforcement programs; fosters cooperative working relationships with other Borough Departments, intergovernmental, regulatory, and other outside agencies, various public and private groups, and the public served.

**Supervision Received**

The Police Chief reports directly to the Borough Manager.

**Supervision Exercised**

The Chief of Police supervises all aspects of the police, jail and dispatch functions for the Petersburg Borough Police Department.

**Duties** *(The duties listed in this section are intended as illustrations of the various types of work that may be performed. The omission of specific statements of duties does not exclude them from the position if the work is similar, related or a logical assignment to the position.)*

Directs and oversees the providing of law enforcement services including assigning staff, monitoring police operations, community-oriented policing, patrol, crime prevention, investigation, traffic enforcement, school services, dispatch, jail facility, and all records.

Provides for the selection, training, professional development and work evaluation of department staff; authorizes discipline with the approval of the Borough Attorney, Human Resources and the Borough Manager as required; provides policy guidance and interpretation to staff; ensures that laws, ordinances and policies are consistently enforced.

Maintains productive relations between department and other government agencies, private organizations, and individuals throughout the borough, region, and state as they relate to the duties of the department.

Develops and directs the implementation of short and long range departmental goals, objectives, policies, procedures and work standards for the department; prepares and administers the department's budget.

Directs the investigation of major crimes in coordination with other agencies; assists the Borough Attorney and District Attorney's Office in the preparation of cases.

Assists officers with mobile and foot patrols for the purpose of deterring crime, arresting offenders, and conducting investigations as needed within the Petersburg Borough.

Prioritizes and allocates available resources; reviews and evaluates program and service delivery, makes recommendations for improvement and ensures maximum effectiveness of the department.

Prepares and directs the preparation of a variety of written correspondence, reports, bid and requests for proposals, contracts, procedures, ordinances and other written materials.

May help with the identification and development of grant opportunities for the Department.

Confers with and represents the department and the Borough in meetings with the members of the Borough Assembly, members of boards and commissions, various government agencies, other law enforcement agencies, and a variety of public and private organizations.

Works closely with the Borough Manager, Borough Attorney, the Assembly, other Departments, a variety of public and private organizations, and citizen groups in developing programs and implementing projects to maximize police services throughout the service area.

Works closely with the media to provide information as needed. This may be in the form of public service announcements, press releases, press conferences, and formal written statements.

Performs other duties as assigned.

## Distinguishing Characteristics
The work assigned to the position of the Chief of Police classification is distinguished from the work of other classifications in the department by the elements of overall department planning, supervision, and scope of responsibility; assignments allow for a high degree of administration discretion in their execution.

## Working Conditions
Incumbent performs approximately 50% of duties in a seated position in an office environment. Exposure to public violence and a variety of weather conditions may result in physical injury. Periodic lifting of items less than 50 lbs.

## Qualifications
Must possess or be able to obtain an Alaska State Driver's license.

Must have background free of criminal felony conviction.

Willingness to pursue and maintain an Alaska Police Standards Council Advanced Police Officer Certification.

4 years of supervisory experience in a law enforcement position.

Must be willing to engage with the public and be seen and acknowledged as easily approachable by the community.

Any combination of experience and education which provides the applicant with the following attributes:

A working knowledge of criminal law and investigative method.

Excellent verbal and written communication skills.

Ability to operate firearms, motor vehicles, computer terminals, and related police equipment with proficiency.

Ability to manage and maintain effective working relationships with subordinates.

Ability to analyze situations quickly and objectively, to recognize actual and potential danger, and to determine the proper course of action.

Ability to cope with stressful situations firmly and tactfully and with respect to individual rights.

Physical strength to perform the work of this position.

Ability to establish and maintain effective working relationships with fellow employees and the general public; work cooperatively with supervisors and display willingness to assist co-workers and subordinates.

**Signatures affixed on this job description confirm that it has been reviewed by the employee and his/her direct supervisor and that a clear understanding of the expectations of this position exists.**

_____  _____
Employee                                              Supervisor

_____  _____
Date                                                  Date

Timeline/Overview of events

Started during the EOC for Covid over mandates and enforcement of the mandates.

EOC/Hospital PMC wanted police at the airport for intimidation on making people test for COVID at the airport. I provided an officer as time allowed. But as time went on testers at the airport were having conformations with the pubic and testers were beginning to push their authority onto people. This caused issues so the PD was no longer involved with the test. The use of officers was offered if they were willing to pay otherwise officers would respond as needed.

PD attempted to work with the Petersburg Medical Center on enforcement, but they refused to share information citing HIPPA.

Hospital used influence at the assembly level to bring on enforcement of covid to the community.

Jeff received his mask warning 01/15/2021

(Email) Jeff directed someone to tell the chief to release the information on the call to him.

01/21/21 @ 10:39 am (email) Jeff sent email stating "since my names is in the newspaper for being warned for not wearing a mask, would someone please direct the chief to provide me with a copy of the official complaint? That would be helpful. I expect this request to be dealt with before noon today. Thanks so much. Jeff

01/21/21 @ 10:47 am (email) Jeff was advised he was using his position of authority as an assembly member to receive the information outside the standard process the public uses. I also provided the police department records request in the email and told him to fill it out.

01/21/21 Debbie called Jeff and advised him he was not allowed to do what he did.

01/21/21 (email) Jeff said it was a miss understanding after Debbie called Jeff and stated he was not allowed to do what he did. Jeff tried to cover up his violation of office by saying he was unsure of the process.

01/21/21 Jeff arrived at Debbie's office to receive the information that was told to provide to Jeff. I still redacted the complainant contact information.

(See emails and written notes for full details on Jeff's request)

01/28/21 email to EOC which was the police masking views.

Enforcement of masking and the police department were talked about several times by the hospital employees/EOC, and assembly members.

Police & Borough along with Jeff had meeting at the fire hall with hospital over enforcement and the hospital spreading miss information. Borough was willing to address Covid spreading citizens if the hospital reported the people who are in violation.

See provided statement read at assembly meeting. I told Debbie I would like to speak at the upcoming assembly meeting 11/17/21 as a member of the public not as the chief under community members comments related to items on the agenda. Debbie agreed and signed me up for public comments.

Constant retaliation from my speech against masking enforcement

Jeff and Dave wanted me fired over my personal statement to the assembly. This was a matter of public concern relating to enforcement of masking and fining businesses and citizens of the community. (Assembly Meeting 11/17/21 @ 1800) (Get emails from Steve and asked him about in person/phone conversations between Steve, Jeff and Dave.)

Assembly Meeting – Jeff went after PD Training after Steve gave his report. Jeff's tone and body language showed he was mad at me over the personal statement relating to a matter of public concern.

Spoke with Steve who said my speech to the assembly was over the top and inappropriate.

Steve said he needed to speak with the Borough attorney before he talks to me. I feel that Steve and Borough Attorney were going to take action against me until I received guidance from my attorney and spoke with the borough attorney.

Meeting about my speech resulted in Steve saying he understood I was allowed to say what I did but cautioned me on future statements. Came up with a plan to consult Steve in the future.

Dan Sullivan submitted a letter to the assembly of disapproval of my actions during the personal statement. (See Email/Lettter)

The following week Dan submitted a letter to join the PSAB and was approved by the borough assembly. (Letter/Email to assembly to join)

Jeff and Dave requesting/making constant busy work for the police chief. (Email to Steve from Jeff and Dave and phone/in person conversations.)

████ was fired ████████

Dave sent email to Steve wanting me fired. He also threatened Steve's job if he didn't do something. (Steve's Email)

Steve also told Dave what he is doing is harassment. (Steve Email)

Thomas Fine-Walsh posted to Facebook and shared Juneau empire story and insinuated police chief did not do his job (see photos of posts 01/09/22 personal Facebook and on 01/13/22 KFSK article)

Meeting with Thomas, Steve, Debbie and myself in Steve's office where Thomas was anti police and made statements of defunding the police.

Dave had also made statements of defunding the police.

Steve documented my personal statement in my performance evaluation saying he had to do something so he could tell Dave he did something about it to get him to stop. (See performance evaluation)

Jeff, Dave and Thomas all questioned the police department hiring process. (Assembly Meeting and Emails, phone call and in person conversations to Steve)

I had to provide a detailed outline of the hiring process to the assembly. Which was questioned by Thomas and Jeff (At Assembly Meeting)

Jeff, Dave and Thomas wanted a review of the police department hiring and retention to be conducted by the PSAB (emails and in person/phone calls Steve)

Using the PSAB would be a way for Jeff and Dave possibly to manipulate the investigation into the PD. (Now appears Jeff and Mark Testoni have been talking)

I stated from the first words of an investigation into the PD that I had nothing to hide but want the investigation done by a company that knows PD's, Jails and Alaska rural policing.

Jeff started riding with all police employees and dispatch asking questions about the department.

Borough staff started the recruitment and retention with Jeff involved and he agreed borough staff should conduct the investigation.

At meeting I spoke out against using the PSAB as I believed it could lead to a bias investigation.

PSAB is made up of 2 hospital employees Mark and Mark. PD and hospital have had issues over Covid and enforcement. Dan also had an issue with the police department over the Covid speech I can and was now part of the PSAB. ███████████████████████████
████

Jeff, Dave, and Thomas all voted to have the PSAB do the investigation.

Jeff then wanted the annual report from the police department for the last 3 years. He never states what he needs it for when asked.

Mark Testoni always says he is busy and will meet with me to discuss the police department. I have made myself available anytime and even invited Jeff and Mark to the Axon Fleet 3 discussion on options available which they attended. Mark has never talked to me about any possible issues he has with the PD.

After assembly meeting 03/07/22 Jeff sent Steve an email about the PD.

03/09/22 (email) I sent an email with data I pulled from the RMS and sent information out to Assembly, ████████ Petersburg Pilot and KFSK. This information was 2017 through 2021. I also said if anyone has questions or wants further details to let me know.

03/09/22 @ 1632 I personally called ███████ on ███ cell phone to let ███ know of the information I sent out on calls for service and arrests ████████ █ ████████████████

03/09/22 (emails) I sent emails to Mark Testoni in reference to his comments at the Assembly Meeting where he stated he's reached out to Fairbanks AST dispatch supervisor about them helping out Petersburg dispatch.

03/09/22 (email) from Mark Testoni to Steve Glesbrecht. Email shows Mark is violating Roberts rules of order by conducting business outside of meetings. This gives the appearance of undermining the police department. In the email Mark states, "there are things that the board has discussed that may not be to the Chiefs liking or that we feel should be addressed".

03/09/22 (Jeff Meccui text message to me which was meant for Mark Testoni) SEE TEXT MESSAGE FOR DETAILS. When putting the emails from me to Mark together along with the text message this shows Jeff Meccui and Mark Testoni are working together. Jeff Intentionally and knowingly instructed Mark on how to conduct business by instructing him to not put things in writing and to verbally conduct his business. Jeff says putting things in writing leaves a messy paper trail so any written word or response could come back to bite you. He also notified Mark about records request that have been made looking for incriminating emails between assembly members.

03/15/22 Steve advised me Mark Testoni was asking about who the PSAB receives direction from and kept trying to say PSAB doesn't receive directions from the Chief. Steve referred him to the borough charter and said PSAB receives direction from the assembly, borough manager or chief of police and EMS director when asked for by the department heads. The public can also request issues be sent to them. Then Mark met with Debble for a few and went back to Steve's office and made the statement that the police don't arrest on domestic violence crimes. I advised Steve it is state law to arrest on DV crimes if there is PC for the arrest. The only exception is if the officer calls the DA who can authorize not arresting the person.

His intent is to undermine the Chief of Police.

Several Petersburg community members have been approached by Mark Testoni and asked for their input on the police department. ███████████ was asked what ██ thought about the police department's interactions and relationships with the native community. Borough employees outside the PD have been approached by Mark Testoni and asked for input on the police department. ██████████ was asked what ██ thought about the police department. ██████ advised Mark that ██ has had dealings with the police on both sides of the law and said they are doing a great job and have always been professional.

03/17/22 @ 12:00 pm - Dave K. and ███████████████ met with Steve. Received call from Steve who wanted to meet with me to speak about their meeting. Meeting with Steve this afternoon.

03/17/22 @ 1300 I met with Steve who advised me Dave K. brought ████████████████████ in and ██████ and Dave talked to Steve about how the police department classified DV's as citizens assist calls. ████████████████████████████████████. The training I have received ███████████ is SART training and I have 2 officers who have attend the weeklong training with SART team members. The PD has always attended training when ██████ brings a trainer to town like

The last training ███ did for Petersburg PD was in October of 2019 just before Covid hit the country.

I researched the calls for service and only observed 6 calls that were reported as possible DV that we're labeled citizen assist. These calls were child custody, no evidence of a crime, civil issue and 1 that the caller thought the Protective order was still in effect but had been dropped.

When I sent out just the numbers and not the true annual report I stated at the end of the email if you have any questions or want further details to let me know. I didn't receive any inquiries.

███████████████ Devren Bennett ███ is a member of the PSAB. This is someone Mark Testoni is talking to.

03/18/22 Meeting with ███████ Debbie and myself where we talked about the meeting ███ had with Steve and Dave. This meeting did not appear to be what it sounded like it was with Dave and Steve. I was able to answer all ███ question and on the training topic I advised we would like training if it was here in Petersburg. We also talked about the lack of the PD involvement in ███ emailed-out training, I advised ███████ I still had the original employees who attended the SART training and like the instructor said in the past they would like to build on the original training, but the trainer kept having to repeat the original class due to turnover at the hospital.

03/21/22 ███████ gave statement from a records request. Listen to assembly recording under items not related to the agenda for details.

**PETERSBURG BOROUGH**
**ORDINANCE #2021-20**

**AN EMERGENCY ORDINANCE AMENDING EMERGENCY ORDINANCE #2021-19, WHICH IMPLEMENTED A PUBLIC HEALTH AND SAFETY MEASURE REQUIRING FACE COVERINGS IN INDOOR PUBLIC SETTINGS, TO INCLUDE COMMUNALLY USED AREAS WITHIN ITS SCOPE**

**WHEREAS,** in response to a significant community spread COVID-19 outbreak, the Borough Assembly, on November 5, 2021, enacted Emergency Ordinance #2021-19; and

**WHEREAS,** that Emergency Ordinance required all persons to wear masks or face coverings over their nose and mouth when they were indoors in any building within the Borough that is open to the public; and

**WHEREAS,** since that date the number of new cases has continued to quickly grow, with the Petersburg Medical Center (PMC) reporting 22 new active COVID-19 cases on November 10, 2021, bringing the active case count to 92, with 86 pending send-out COVID tests that should be resulted in the next 3-5 business days; and

**WHEREAS,** there have been 74 new positive cases in the last seven days alone, with Petersburg having a daily new case rate (per 100,000) nearly 6 times that of the State of Alaska as a whole, which is itself over 3 times higher than the national average; and

**WHEREAS**, in order to provide an additional safety measure, the Assembly wishes to include within the scope of the Emergency Ordinance communal areas in buildings not specifically open to the public where individuals gather who are not members of the same household; and

**WHEREAS**, the Assembly finds that a health crisis continues to exist in the community due to the expanding COVID-19 outbreak and the limited medical resources existing within the community to address the outbreak; and

**WHEREAS**, Charter Section 3.03 provides for emergency ordinances which in the judgement of the Assembly are necessary for the immediate preservation of the public peace, health or safety, and such ordinances may be adopted at the meeting at which it is introduced; and

**WHEREAS,** under the described circumstances, the Assembly finds that the provisions of this ordinance are required for the immediate preservation of public health and safety.

**THEREFORE, THE PETERSBURG BOROUGH ORDAINS** as follows:

**Section 1.     Classification**:  This Emergency Ordinance is of a non-permanent nature and shall not be codified in the Petersburg Borough Code.

**Section 2.     Purpose**:  The purpose of this Emergency Ordinance is to amend Emergency Ordinance #2021-19 to add communally used spaces within the scope of the ordinance.

**Section 3.     Substantive Provisions**:

**A.** The first paragraph of Section 3 of the Emergency Ordinance is amended as follows (the new language is underlined and in red):

Except as provided herein, all persons must wear masks or face coverings over their nose and mouth when they are indoors in any building within the Borough (1) that is open to the public or (2) within a communal space shared with other individuals not from one's household.

**B.** New language is added at the end of Section 3 of the Emergency Ordinance, to read as follows:

"Communal space" means any area in a building where members of more than one household can commingle, including without limitation areas used for (1) exercise or fitness, (2) community events, whether ticketed or otherwise, (3) meetings, events or other usage by private social clubs, societies, lodges, associations or nonprofit groups, and (4) including entrance lobbies, hallways, and stairwells for such areas. This shall not be deemed to include areas within private residences.

**C.** All other provisions of Emergency Ordinance #2021-19 remain in full force and effect.

**Section 4.    Severability**:  If any provision of this ordinance or any application to any person or circumstance is held invalid, the remainder of this ordinance and the application of other persons or circumstances shall not be affected.

**Section 5.    Effective Date and Term**:  This Ordinance shall be effective immediately upon adoption and remain in effect through the effective term of Emergency Ordinance #2021-19.

**Section 6.    Repeal/Health Officer Recommendations**:  This ordinance may be earlier repealed at a regular or special meeting of the Assembly upon a determination by the Assembly that the provisions of the ordinance are no longer necessary to address the health and safety of the public.  The Assembly may receive the advice and recommendations of the Borough Health Officer in making this determination.

**Passed and approved by the Petersburg Borough Assembly**, Petersburg, Alaska this 17th day of November, 2021.

ATTEST:

_Debra K. Thompson_
**Debra K. Thompson, Borough Clerk**

_Mark Jensen_
**Mark Jensen, Mayor**

Adopted:  11/17/2021
Published:  11/24/2021
Effective:  11/17/2021

Ordinance #2021-20 - Page 2

Exhibit C
Page 2 of 2

EXHIBIT A
Page 63 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 63 of 176

```
 1                    P R O C E E D I N G S

 2   00:00:00

 3        (This portion not requested)

 4   00:02:40

 5        THE CLERK:  Yes, first up, we have Jim Kerr.

 6        THE CHAIR:  Okay, Mr. Kerr, the floor is yours.

 7        MR. KERR:  Okay.  Thank you very much.  I just want to

 8   start this off with, this is my personal statement and not the

 9   stance or opinion of the Petersburg Borough.

10             In 2013, I moved my family to Petersburg for what

11   Petersburg was and had to offer.  Petersburg was a loving and

12   caring community where kids walked safely down the street

13   anytime of day.  People in the community waved and said, hi, to

14   one another.  It wasn't uncommon for your quick grocery store

15   trip to turn into an hour-long social event.

16             Fast forward to COVID, Petersburg has turned

17   neighbors against each other over masking, vaccines, and

18   mandates.  Assembly members vote for masking with no

19   enforcement, then, once passed, want enforcement.  Local

20   medical professionals are always asking for more masking,

21   vaccines, testing, and mandates.

22             From my personal experience, fully vaccinated people

23   brought COVID into the police department, who then gave it to

24   unvaccinated people.  Two of these officers wore masks 100

25   percent of the time as they were working together in the same
```

Marci Lynch & Associates, Inc., 330 Wendell Street
Fairbanks, AK 99701; (907) 452-3678, mlynchreporters@gmail.com

Exhibit D                                              EXHIBIT A
Page 1 of 3                                         Page 64 of 351
Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 64 of 176

 1  vehicle.  Officers have contracted COVID at work, while other

 2  borough departments have closed to the public.  Officers have

 3  been placed on quarantine and, now, their families have

 4  contracted COVID.

 5          Now, you're asking officers to enforce a mask

 6  ordinance on both people and businesses.  What makes them want

 7  to put themselves out -- what makes them want to put themselves

 8  out there when enforcing masking is going to result in verbal

 9  altercations to include physical conflicts?

10          I've heard medical professionals say there's little

11  chance officers will get COVID while enforcing the ordinance,

12  but these are also the same medical professionals who push

13  vaccines and masking.  Members of the police department

14  followed both and still contracted COVID.

15          If you want the mask mandate enforced, it will be

16  enforced, but only until officers get hired by another police

17  department.  We have highly trained officers in Petersburg who

18  would be an asset to any police department.  Currently, police

19  departments are actively recruiting in Alaska, offering 10,000

20  to 20,000 dollar recruitment bonuses, along with higher wages

21  and lower cost of living.

22          I used to say the quality of life in what Petersburg

23  has to offer is what keeps officers here.  But if we start

24  enforcing mandates and ordinances that divide this community

25  further, officers will move from Petersburg because of the

                                                              3

Marci Lynch & Associates, Inc., 330 Wendell Street
Fairbanks, AK 99701; (907) 452-3678, mlynchreporters@gmail.com

Exhibit D                                    EXHIBIT A
Page 2 of 3                                 Page 65 of 351
Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 65 of 176

1  quality of life and conflicts.

2        Let me be clear.  I do not support enforcing

3  masking -- mask mandates or ordinances.  The Petersburg police

4  department has worked hard to build a positive relationship

5  with the community it serves.  Voting yes on enforcing masking

6  allows the assembly to hide behind their vote while they

7  destroy the community's relationship among neighbors, the

8  police department, and local government.  Sending officers with

9  guns and arrest powers to a masking complaint is absurd.  Using

10  the police department to enforce a masking violation should be

11  viewed as excessive force.

12        Please, I ask you, consider reacting to COVID numbers

13  differently.  Let's start looking at the number of people

14  requiring medical attention or in the hospital during an

15  outbreak, instead of the overall positive numbers.

16        We've talked about flattening the curve, but now that

17  curve seems to be an oval track with no checkered flag in

18  sight.  Can we get an update on how many it -- how many people

19  in the community are vaccinated and how many others have

20  contracted COVID?  Put these numbers together and, I bet as a

21  community, that curve was flattened a long time ago.

22        Thank you for your time, and I hope you do what's

23  best for the Petersburg community.  James Kerr.

24  00:06:36

25        (This portion not requested)

4

Marci Lynch & Associates, Inc., 330 Wendell Street
Fairbanks, AK 99701; (907) 452-3678, mlynchreporters@gmail.com

Exhibit D                                        EXHIBIT A
Page 3 of 3                                    Page 66 of 351
Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 66 of 176



# Petersburg Borough

## Employee Policy Manual



Effective
May 1, 2019

Exhibit E
Page 1 of 8

# Anti-Discrimination & Harassment

## Americans w/ Disabilities Act

It is Borough policy that we will not discriminate against qualified individuals with disabilities with regard to any aspect of their employment. The Borough is committed to complying with the Americans with Disabilities Act of 1990, its related Section 504 of the Rehabilitation Act of 1973, and with the ADA Amendments Act of 2008, as applicable. The Borough recognizes that some individuals with disabilities may require accommodations at work. If you are currently disabled or become disabled during your employment, you should contact your department manager to discuss reasonable accommodations that may enable you to perform the essential functions of your job. We are not required to provide an accommodation that could cause the Borough an undue hardship as defined by law.

The Americans with Disabilities Act defines "disability" as: (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. "Major life activities" include caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

In accordance with the Americans with Disabilities Act, employees with AIDS will be treated like any other ill employee. If the individual is fit to work, he or she will be provided with work in accordance with normal procedures. Usually, no special precautions in the workplace are indicated. However, employees with AIDS may request reasonable accommodation by contacting the human resources/clerk's office. We are committed to safeguarding the health of all employees and maintaining productivity.

## Equal Employment Opportunity Policy

Petersburg Borough provides equal opportunity in all of our employment practices to all qualified employees and applicants without regard to race, color, religion, gender, national origin, age, disability, marital status, military status, genetic information or any other category protected by federal, state and local laws. This policy applies to all aspects of the employment relationship, including recruitment, hiring, compensation, promotion, transfer, disciplinary action, layoff, return from layoff, training and social, and recreational programs. All such employment decisions will be made without unlawfully discriminating on any prohibited basis.

# Languages Spoken at Work

Every employee is expected to treat others with respect in all aspects of their working relationships. Employees are prohibited from making offensive remarks or gestures toward fellow employees or visitors to the Borough who are not fluent in English. In turn, we urge employees not to use their fluency in another language in any way to humiliate or offend your fellow employees or visitors to our community.

# Policy Prohibiting Harassment and Discrimination

Petersburg Borough strives to maintain an environment free from discrimination and harassment, where employees treat each other with respect, dignity and courtesy.

This policy applies to all phases of employment, including but not limited to recruiting, testing, hiring, promoting, demoting, transferring, laying off, terminating, paying, granting benefits, training and volunteering.

## Prohibited Behavior

Petersburg Borough does not and will not tolerate any type of discrimination or harassment of our employees, applicants for employment, or our residents and business owners of our community. Discriminatory conduct or conduct characterized as harassment as defined below is prohibited.

The term harassment includes, but is not limited to, slurs, jokes, and other verbal or physical conduct relating to a person's gender, race, color, religion, national origin, age, disability, military status, genetic information, marital status, changes in marital status, parenthood (including pregnancy), or any other protected category under federal, state or local law, that unreasonably interferes with a person's work performance or creates an intimidating, hostile work environment.

**"Genetic information" includes:**

- Information about an individual's genetic tests;

- Information about the genetic tests of a family member;

- Family medical history;

- Requests for, and receipt of, genetic services by an individual or a family member; and

- Genetic information about a fetus carried by an individual or family member, or about an embryo legally held by the individual or family member using assisted reproductive technology.

Sexually harassing behavior in particular includes unwelcome conduct such as: sexual advances, requests for sexual favors, offensive touching, or other verbal or physical conduct of a sexual nature. Such conduct may constitute sexual harassment when it:

- is made an explicit or implicit condition of employment;

- is used as the basis for employment decisions;

- unreasonably interferes with an individual's work performance; or

- creates an intimidating, hostile or offensive working environment.

The types of conduct covered by this policy include: demands or subtle pressure for sexual favors accompanied by a promise of favorable job treatment or a threat concerning employment.

Specifically, it includes sexual behavior such as:

- repeated sexual flirtations, advances or propositions;

- continued and repeated verbal abuse of a sexual nature, sexually related

- comments and joking, graphic or degrading comments about an employee's appearance or displaying sexually suggestive objects or pictures including cartoons and vulgar e-mail messages; and

- any uninvited physical contact or touching, such as patting, pinching or repeated brushing against another's body.

Such conduct may constitute sexual harassment, regardless of gender and regardless of whether the conduct is between members of the assembly or management, between management and staff employees, between staff employees, or between employees and non-employees are in the scope of their employment.

## Harassment by Nonemployees

The Borough will also endeavor to protect employees, to the extent possible, from reported harassment by nonemployees in the workplace, including customers and suppliers.

## Complaint Procedure and Investigation

Any employee who wishes to report a possible incident of sexual harassment or other unlawful harassment or discrimination should promptly report the matter to their immediate supervisor. If that person is not available, or you believe it would be inappropriate to contact that person, contact the Human Resources/Clerk's office.

The Borough will conduct a prompt investigation as confidentially as possible under the circumstances.

Employees who raise concerns and make reports in good faith can do so without fear of reprisal; at the same time, employees have an obligation to cooperate with the Borough in enforcing this policy and investigating and remedying complaints.

Anyone found to have engaged in such wrongful behavior will be subject to appropriate discipline, which may include termination.

## Retaliation

Any employee who files a complaint of harassment or other discrimination in good faith will not be adversely affected in terms and conditions of employment and will not be retaliated against or discharged because of the complaint.

In addition, the Borough will not tolerate retaliation against any employee who, in good faith, cooperates in the investigation of a complaint. Anyone who engages in such retaliatory behavior will be subject to appropriate discipline, up to and including termination.

# Communicable Diseases

Borough decisions involving persons who have communicable diseases will be based on current and well-informed medical judgments concerning the disease, the risks of transmitting the illness to others, the symptoms and special circumstances of each individual who has a communicable disease, and a careful weighing of the identified risks and the available alternatives for responding to an employee with a communicable disease.

Communicable diseases include, but are not limited to, measles, influenza, viral hepatitis-A (infectious hepatitis), viral hepatitis-B (serum hepatitis), human immunodeficiency virus (HIV infection), AIDS, AIDS-Related Complex (ARC), leprosy, Severe Acute Respiratory Syndrome (SARS) and tuberculosis. The Borough may choose to broaden what it considers to be a communicable disease

circumstances may also be taken against supervisors or others who fail to report a violation or withhold relevant information concerning a violation of this policy.

## Political/Campaign Activities

Employees are encouraged to participate in the electoral process and support the political candidates of their choice.

Employees are free to engage in political activity associated with the borough, state and federal campaigns, but must do so on their own time, with their own resources and without giving the impression that their activity is being endorsed by the Borough. This is because it's important that Borough operations and deliberations are impartial and that the Borough makes efforts to eliminate improper influence.

Except as authorized by law, while on work time an employee may not publicly support any candidate for office, circulate any petitions for such office, distribute campaign literature or display campaign buttons, placards and so on. In addition, employees are expected to refrain from efforts to convert others to a political cause during working hours.

Employees who choose to run for political office must do so on their own time and the Borough's premises cannot be used for political campaigning unless said purposes are determined to be a public forum. If an employee wishes to be a candidate for Petersburg Borough Assembly, they must submit a request for a leave of absence commencing on the date of the candidate filing and ending on the day following the election. If elected to the Borough Assembly, the employee will be deemed to have resigned from their employment position with the Borough.

## Non-Business or Social Visits to the Worksite

While personal visits are not prohibited, their frequency and duration should be limited and should not interfere with on-going work nor distract fellow employees. The employee shall be responsible for the acts of their visitors in the workplace.

## Workplace Bullying

The Borough is committed to providing our employees with a healthy and safe work environment that is free from bullying.

Bullying is repeated unreasonable behavior directed toward an employee, or group

of employees, that creates a risk to health and safety. Examples of bullying include:

- Verbal abuse and yelling
- Humiliating someone through sarcasm, criticism or insults
- Constant criticism
- Exclusion of a person from workplace activities
- Giving someone the majority of unpleasant tasks

The Borough expects all employees to behave in a professional manner and to treat each other with dignity and respect.

We encourage all employees who experience bullying to report it.

Any reports of bullying will be treated seriously and investigated promptly, confidentially and impartially.

## Open Door

Communication is a two-way street. The Borough has an open-door policy whereby any employee can speak to any elected official, manager, or supervisor on any matter. Our leaders are dedicated to being available and attentively listening to employees. The bottom line is, we can't implement change(s) if we are unaware of the need for change(s). This provision for an open-door policy does not nullify the Borough Charter prohibitions as expressed in Section 2.10 (B). That portion of the Charter prohibits assembly members from recommending or directing the appointment or removal of any officer or employee. The Charter section also prohibits employees from reporting to, or receiving direction from, assembly members.

## Grievances

The Borough recognizes that a peaceful working environment facilitates productivity, and will continue to take the necessary steps to create a harmonious working environment. In the event that a misunderstanding or conflict arises, every effort should be made to resolve the situation in a timely manner. Should the situation persist, you are encouraged to bring the complaint to the attention of management by following the procedures outlined below:

1.    Discuss the situation with your immediate supervisor. If this is not sufficient or appropriate, then proceed to step 2.

2.     Meet with a senior department manager or the Borough Clerk or Deputy Clerk who may proceed to conduct an investigation into the situation and find possible remedies. You should receive a response within a reasonable period of time. The Borough will attempt to respond and/or resolve the situation within 14 days, or sooner as the circumstances warrant. If this does not suffice then you are encouraged to meet with the Borough Manager.

3.     Should the Manager be the subject of the grievance then the Borough Attorney may be notified by the Borough Clerk or Deputy Clerk.

*Note #1: Complaints alleging violations of the Borough's discrimination/harassment policy should be handled in accordance with the policy entitled "Policy Prohibiting Harassment and Discrimination."*

*Note #2: Employees that are represented by a Union should use the grievance procedure outlined in the written collective bargaining agreement.*

## Progressive Discipline

Petersburg Borough retains the discretion to discipline its employees. Oral and written warnings and progressive discipline up to and including discharge may be administered as appropriate under the circumstances.

Please note that the Borough reserves the right to terminate any employee whose conduct merits immediate dismissal without resorting to any aspect of the progressive discipline process, subject to any employee rights to a pre-termination hearing, as addressed in the General Employment section of this manual.

## Use of Borough Cell Phones While Driving

This policy applies to: (1) the operation of borough-provided vehicles at any time; and (2) the operation of private vehicles while an employee is on work time or conducting business for the Borough.

The use of a cell phone while driving may present a hazard to the driver, other employees and the general public. Employees should not use hand held cell phones for business purposes while driving. Should an employee need to make a business call while driving, he/she should locate a lawfully designated area to park and make the call.

Violation of this policy may subject an employee to disciplinary action up to and including immediate termination.

**Becky Regula**

| | |
|---|---|
| **From:** | Stephen Giesbrecht |
| **Sent:** | Monday, June 27, 2022 10:07 AM |
| **To:** | joe viehnicki |
| **Cc:** | Becky Regula |
| **Subject:** | Public Information Request |
| **Attachments:** | SH1-5_Redacted.pdf |

Joe, in response to your information request, the following statement and attachment are provided.

The Borough's HR Department received a complaint, in the form of a timeline, from Chief Jim Kerr, alleging that he was the subject of harassment from Assembly Members Jeff Meucci and Dave Kensinger. Pursuant to your Public Records Act request, the timeline is attached. While this timeline mentions another Assembly Member, and a few members of another elected Borough Board, Chief Kerr stated his complaint was only being lodged against Assembly Members Meucci and Kensinger. As you will note, some language has been redacted from this document, specifically references to those who are not borough employees involved in this matter or elected borough officials.

Chief Kerr claimed the primary impetus behind the alleged harassment was a statement he made to the Assembly on November 17, 2021 regarding the Borough's public health and safety measure requiring face covering in public settings, a statement which he believed was protected by the First Amendment of the U.S. Constitution. The Borough commenced an investigation, conducted by an outside attorney working with the Borough Attorney. This attorney found harassment had not occurred. In brief, (1) the Chief's November 17, 2021 statement was not protected by either the First Amendment of the U.S. Constitution or by the State Constitution, and (2) the conduct which Chief Kerr objected to did not meet any legal definition of harassment. Assembly Members have the authority and right, under PMC 3.08.040C, to ask questions and request documents, both during and outside of Assembly meetings, regarding issues impacting the Borough, and the inquiries made here involved important police department matters, including hiring processes and domestic violence calls. In short, there was no unlawful harassment or bullying.

The Borough took the allegations seriously, as it is required to do, conducted a thorough investigation, and considers the investigation concluded. The parties involved are working together to restore trust and confidence, to better serve the community of Petersburg.

1

Michael Gatti
Kendra E. Bowman
JERMAIN DUNNAGAN & OWENS, P.C.
3000 A Street, Suite 300
Anchorage, AK 99503
Telephone: (907) 563-8844
Email: mgatti@jdolaw.com
        kbowman@jdolaw.com

*Attorneys for Defendants*

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

FIRST JUDICIAL DISTRICT AT PETERSBURG

| | |
|---|---|
| DON KOENIGS,<br><br>               Plaintiff,<br><br>v.<br><br>PETERSBURG BOROUGH and DEBRA THOMPSON, BOROUGH CLERK, in her official capacity,<br><br>               Defendants. | Case No. 1PE-22-00046 CI |

## **DEFENDANT PETERSBURG BOROUGH'S RESPONSES TO PLAINTIFF'S FIRST SET OF DISCOVERY REQUESTS**

Petersburg Borough ("Petersburg"), by and through its attorney, respond to Plaintiff's First Set of Discovery Requests as follows:

## **PRELIMINARY STATEMENT**

1.    The responses and objections supplied herein are for use in this action and for no other purpose and are applied subject to that limitation.

2.    Petersburg's responses and objections shall not be deemed to constitute an admission: (1) that any particular document or thing exists, is relevant, non-privileged, or

admissible in evidence, or (2) that any statement or characterization in the Interrogatories and Requests is accurate or complete.

3.       Petersburg objects to each instruction, definition, document request, and interrogatory to the extent that it seeks documents protected from disclosure by the Alaska Public Records Act exclusions, attorney-client privilege, deliberative process privilege, common interest privilege, executive privilege, attorney work product doctrine, seeks information protected by a right to privacy under municipal, state, or federal law, or any other applicable privilege.  Should any such disclosure by Petersburg occur, it is inadvertent and shall not constitute a waiver of any privilege.

4.       Petersburg objects to the interrogatories and discovery requests to the extent they are not relevant to any party's claim or defense nor proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the interrogatories and requests in resolving the issues.

5.       Petersburg's responses are based upon reasonable review and diligent investigation to date.  Petersburg reserves the right at any time to revise, supplement, correct, or clarify any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

6.       Petersburg's responses and objections are submitted without prejudice to Petersburg's right to produce evidence of any subsequently discovered fact. Petersburg

accordingly reserves its right to provide further responses and objections as additional facts are ascertained.

 7. Publicly available documents or documents equally accessible to Plaintiff including, but not limited to, newspaper clippings, court papers, and documents available on the Internet, will not be produced.

 8. Petersburg is not responding to Plaintiff's prematurely served Requests in accordance with Alaska R. Civ. P. 26(d)(1).

## <u>INTERROGATORIES</u>

<u>INTERROGATORY NO. 1:</u> Please state with specificity each individual who was provided a copy of the investigative report.

<u>RESPONSE:</u> Petersburg objects to the characterization of the legal opinion of Clayton & Diemer as an "investigative report." Petersburg further objects that the request is overbroad as it goes beyond the scope of Plaintiff's Alaska Public Records Act ("APRA") request, is not relevant nor likely to lead to the discovery of admissible evidence, the request is vague and ambiguous as to "provided a copy," seeks information subject to the attorney client privilege, common interest privilege, and protected by state and federal privacy laws. Without waiving the foregoing, Steve Giesbrecht, Borough Manager and Debra Thompson, Human Resource Director and Borough Clerk.

<u>INTERROGATORY NO. 2:</u> Please identify any person who was permitted to view the report, even if they were not provided a copy.

RESPONSE:  Petersburg objects to the characterization of the legal opinion of Clayton & Diemer as a "report."   Petersburg further objects that the request is overbroad as it goes beyond the scope of Plaintiff's APRA request, is not relevant nor likely to lead to the discovery of admissible evidence, is vague and ambiguous as to "permitted to view," subject to the attorney client privilege and common interest privilege, and protected by state and federal privacy laws.  Without waiving the foregoing, Steve Giesbrecht, Borough Manager; Debra Thompson, Human Resource Director and Borough Clerk; David Kensinger, Assembly Member and complainee of harassment complaint by Jim Kerr; Jeff Meucci, Assembly Member and complainee of harassment complaint by Jim Kerr; Jim Kerr, Borough Police Chief and complainant of harassment by Assembly Members Kensinger and Muecci; Caitlin Shortell, Attorney at Law.

INTERROGATORY NO. 3:  For each person identified in response to Interrogatory No. 1 or 2, please provide their title and/or capacity in which they were acting when they were provided with a copy of the report or viewed the report.

RESPONSE: Petersburg objects to the characterization of the legal opinion of Clayton & Diemer as a "report."   Petersburg further objects that the request is overbroad as it goes beyond the scope of Plaintiff's APRA request, is not relevant nor likely to lead to the discovery of admissible evidence, is vague and ambiguous as to "permitted to view" and "and/or capacity," seeks information subject to the attorney client privilege and common interest privilege, and protected by state and federal privacy laws.   Without waiving the foregoing, see Response to Interrogatory No. 2.

INTERROGATORY NO. 4:   Please identify each individual who attended a meeting with the Borough Attorney, or outside counsel, to discuss the findings and recommendations of the investigative report, whether in person or telephonically.

RESPONSE:   Petersburg objects to the characterization of the legal opinion of Clayton & Diemer as an "investigative report."   Petersburg further objects that the request is overbroad as it goes beyond the scope of Plaintiff's APRA request, is not relevant nor likely to lead to the discovery of admissible evidence, the term "to discuss the findings and recommendations of the investigative report" is vague and ambiguous, and it is overbroad because there is no date or time limit.  The request also seeks information that is covered by the attorney client privilege and common interest privilege and is therefore not subject to disclosure.

INTERROGATORY NO. 5:   For each person identified in response to Interrogatory No. 4, please provide their title and/or the capacity in which they were acting when they discussed the findings of the report.

RESPONSE: *See* Response to Interrogatory No. 4.

INTERROGATORY NO. 6:   If the investigative report was transmitted by e-mail, please state the name of the recipient.

RESPONSE: *See* Response to Interrogatory No. 1.

INTERROGATORY NO. 7:   Please identify the specific privilege or rationale for each redaction in the document title "Timeline/Overview of Events" provided to Mr. Koenigs in response to his July 22, 2022 public records request.

RESPONSE: Petersburg objects that this request is overbroad as it goes beyond the scope of Plaintiff's APRA request, seeks information that is not relevant nor likely to lead to the discovery of admissible evidence, and seeks information covered by the right to privacy under state and federal law, the attorney client privilege, and the common interest privilege. Without waiving the foregoing, a privilege log will be provided with Petersburg's initial disclosures.

INTERROGATORY NO. 8: Please state the total amount of attorney's fees spent on evaluation and investigation of the Complaint made by Chief Kerr, whether paid to the Borough Attorney or outside counsel. Please provide the total for each law office.

RESPONSE: Petersburg objects that this request is overbroad as it goes beyond the scope of Plaintiff's APRA request, seeks information that is not relevant nor likely to lead to the discovery of admissible evidence, and is overbroad because the information sought is not limited by date or timeframe.

INTERROGATORY NO. 9: Please identify each document that is responsive to Mr. Koenig's July 22, 2022 public records request. If any document contains attachments or exhibits, please describe each attachment or exhibit individually.

RESPONSE: Petersburg objects that the July 22, 2022 public records request failed to identify the specific records sought with reasonable clarity, making this request vague, ambiguous, overbroad, and unduly burdensome. Petersburg further objects that this request is premature as initial disclosures have not been exchanged. Without waiving the

foregoing, Petersburg will produce its initial disclosures and privilege log in accordance with the Pretrial Scheduling Order.

INTERROGATORY NO. 10:  Please describe specifically what role, if any, the Borough Human Resources Director played in the investigation of Chief Kerr's Complaint.

RESPONSE:  Petersburg objects that the request is overbroad as it goes beyond the scope of Plaintiff's APRA request, seeks information that is not relevant nor likely to lead to the discovery of admissible evidence, and is vague and ambiguous as to what is meant by the term "role."  Without waiving the foregoing, as the Human Resource Director Ms. Thompson received the harassment complaint lodged by Police Chief Jim Kerr, processed the harassment complaint as a workplace investigation, and properly followed standard human resource duties.

Dated this 9th day of January, 2023 at Anchorage, Alaska.

JERMAIN DUNNAGAN & OWENS, P.C.
Attorneys for Defendants


By:  s/*Michael Gatti*
Michael Gatti
ABA #8306033
Kendra E. Bowman
ABA #0511109

**CERTIFICATE OF SERVICE**

This is to certify that a true and
correct copy of the foregoing was
served by (x)email ( )mail ( )hand
( ) fax this 9 January 2023, to:

Samuel C. Severin
Chandler, Falconer, Munson & Cacciola, LLP
911 W. 8th Ave., Suite 302
Anchorage, AK 99501
sseverin@bcfaklaw.com


s/*Sherry Sims*
Sherry Sims

# VERIFICATION

STATE OF ALASKA            )
                           ) ss.
FIRST JUDICIAL DISTRICT    )

I, Debra K. Thompson, being first duly sworn, upon oath, deposes and states I am the Borough Clerk/Human Resources Director for the Petersburg Borough. I have read the foregoing interrogatories and responses thereto and know the contents thereof. I hereby verify the responses contained therein are complete, true, and correct.

DATED this 9th day of January, 2023.

By: _Debra K Thompson_

Its: _Borough Clerk / HR Director_

SUBSCRIBED AND SWORN TO before me this ___ day of January, 2023.

STATE OF ALASKA
OFFICIAL SEAL
Shannon McCullough
NOTARY PUBLIC
My Commission Expires 01/18/2026

_____
Notary Public in and for Alaska
My Commission Expires: 1/18/26

LAW OFFICES OF
JERMAIN DUNNAGAN & OWENS
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

{01337621}
**DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF DISCOVERY REQUESTS**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI                Page 9 of 9

Michael Gatti
Kendra E. Bowman
JERMAIN DUNNAGAN & OWENS, P.C.
3000 A Street, Suite 300
Anchorage, AK 99503
Telephone: (907) 563-8844
Email: mgatti@jdolaw.com
kbowman@jdolaw.com

*Attorneys for Defendants*

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
FIRST JUDICIAL DISTRICT AT PETERSBURG

DON KOENIGS,

Plaintiff,

v.

PETERSBURG BOROUGH and DEBRA THOMPSON, BOROUGH CLERK, in her official capacity,

Defendants.

Case No. 1PE-22-00046 CI

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

COMES NOW, Defendants Petersburg Borough and Debra Thompson, Borough Clerk, in her official capacity (collectively the "Borough" or "Defendants"), and pursuant to Alaska R. Civ. P. 56, hereby move for summary judgment on Plaintiff's claim the Borough failed to comply with the Alaska Public Records Act ("APRA") in its response to his public records request. The public's interest in keeping confidential the records of internal investigations concerning employee harassment complaints outweigh any public

{01363537}

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

interest in disclosure. The records sought by Plaintiff are also protected from public disclosure pursuant to the attorney-client privilege, the common interest privilege, the executive privilege, and the deliberative process privilege. Because there are no genuine issues of material fact in dispute, the Borough is entitled to judgment as a matter of law.

## FACTUAL HISTORY

### A.    Chief Kerr Harassment Complaint.

The gravamen of this case arises out of a personnel matter involving a complaint lodged by Borough Police Chief Jim Kerr against two Borough Assembly Members, David Kensinger and Jeffrey Meucci. On or about March 10, 2022, Chief Kerr submitted a document titled, "Timeline/Overview of events," ("Complaint") to the Borough Clerk, which accepted it as Chief Kerr's written harassment Complaint, setting forth a number of allegations that he was the subject of workplace harassment by Assembly Members Jeff Meucci and David Kensinger.[1] The Borough's Employee Policy Manual ("Employee Manual") contains anti-harassment and anti-bullying provisions (including by nonemployees) and a grievance procedure and investigation protocol when complaints are made. It provides in relevant part:

---

[1] **Ex. A**, Kerr Complaint (redacted). Chief Kerr's unredacted Complaint has been submitted for *in camera* review. *See* Petersburg Bates Stamp Doc. 000139-143. As noted in this summary judgment motion there is a competing claim brought by Chief Kerr against the Borough alleging defamation and false light because the Borough, in its discretion and appropriately so based on the requirements of law, processed Chief Kerr's Complaint as a harassment (which includes bullying) complaint. **Ex. B**, Complaint, *James Kerr v. Petersburg Borough*. The Borough disputes Chief Kerr's defamation and false light complaint. **Ex. C**, Answer to Complaint, *James Kerr v. Petersburg Borough*.

[01363537]
**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI                Page 2 of 35

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

**Policy Prohibiting Harassment and Discrimination**

Petersburg Borough strives to maintain an environment free from discrimination and harassment, where employees treat each other with respect, dignity and courtesy.

This policy applies to all phases of employment, including but not limited to recruiting, testing, hiring, promoting, demoting, transferring, laying off, terminating, paying, granting benefits, training and volunteering.

<u>**Prohibited Behavior**</u>

Petersburg Borough does not and will not tolerate any type of discrimination or harassment of our employees, applicants for employment, or our residents and business owners of our community. Discriminatory conduct or conduct characterized as harassment as defined below is prohibited.

The term harassment includes, but is not limited to, slurs, jokes, and other verbal or physical conduct relating to a person's gender, race, color, religion, national origin, age, disability, military status, genetic information, marital status, changes in marital status, parenthood (including pregnancy), or any other protected category under federal, state or local law, that unreasonably interferes with a person's work performance or creates an intimidating, hostile work environment.[2]

. . .

<u>**Harassment by Nonemployees**</u>

The Borough will also endeavor to protect employees, to the extent possible, from reported harassment by nonemployees in the workplace, including customers and suppliers.[3]

The Employee Manual also provides,

**Workplace Bullying**

The Borough is committed to providing our employees with a healthy and safe work environment that is free from bullying.

---

[2] The language of the harassment policy uses the word "or" which is a conjunction used for showing possibilities or choices. The use of the word 'or' in the foregoing paragraph must be read as listing possibilities or choices. *See* https://dictionary.cambridge.org/us/grammar/british-grammar/or. In this case that is exactly how the Borough processed Chief Kerr's Complaint. It reviewed the allegations of the Chief's complaint in conjunction with the requirements of law and with the listed definitions of "harassment" and "bullying" in the Borough Employee Manual.

[3] **Ex. D**, Employee Manual at 2-4.

{01363537}

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI          Page 3 of 35

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

Bullying is repeated unreasonable behavior directed toward an employee, or group of employees, that creates a risk to health and safety. Examples of bullying include:

• Verbal abuse and yelling
• Humiliating someone through sarcasm, criticism or insults
• Constant criticism
• Exclusion of a person from workplace activities
• Giving someone the majority of unpleasant tasks

The Borough expects all employees to behave in a professional manner and to treat each other with dignity and respect.

We encourage all employees who experience bullying to report it.

*Any reports of bullying will be treated seriously and investigated promptly, confidentially and impartially.*[4]
. . .

**Grievances**
The Borough recognizes that a peaceful working environment facilitates productivity, and will continue to take the necessary steps to create a harmonious working environment. In the event that a misunderstanding or conflict arises, every effort should be made to resolve the situation in a timely manner. Should the situation persist, you are encouraged to bring the complaint to the attention of management by following the procedures outlined below:

1. Discuss the situation with your immediate supervisor. If this is not sufficient or appropriate, then proceed to step 2.

2. Meet with a senior department manager or the Borough Clerk or Deputy Clerk who may proceed to conduct an investigation into the situation and find possible remedies. You should receive a response within a reasonable period of time. The Borough will attempt to respond and/or resolve the situation within 14 days, or sooner as the circumstances warrant. If this does not suffice then you are encouraged to meet with the Borough Manager.

---

[4] *Id.* at 16 (emphasis added).

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

3. Should the Manager be the subject of the grievance then the Borough Attorney may be notified by the Borough Clerk or Deputy Clerk.

*Note #1: Complaints alleging violations of the Borough's discrimination/harassment policy should be handled in accordance with the policy entitled "Policy Prohibiting Harassment and Discrimination."*[5]

The Employee Manual also provides a grievance procedure for complaints of harassment and discrimination, which reads:

**<u>Complaint Procedure and Investigation</u>**
Any employee who wishes to report a possible incident of sexual harassment or other unlawful harassment or discrimination should promptly report the matter to their immediate supervisor. If that person is not available, or you believe it would be inappropriate to contact that person, contact the Human Resources/Clerk's office.

The Borough will conduct a prompt investigation *as confidentially as possible under the circumstances*.[6]
. . .
**Employee Privacy and Other Confidential Information**
Petersburg Borough collects only personal information about employees that relates to their employment. Only Borough employees with a Borough business related need to know are provided or given access to this information. The Borough Clerk or Deputy Clerk must authorize any release of the information to others. *Personal information, other than that required to verify employment or to satisfy legitimate investigatory or legal requirements, will be released outside borough employment only with the employee's approval*. If you have access to any confidential information, including private employee information, you are responsible for acting with integrity. Unauthorized disclosure or inappropriate use of confidential information will not be tolerated and is grounds for disciplinary action, including immediate termination.[7]

---

[5] *Id.* at 15-17 (emphasis in original).
[6] *Id.* at 5 (emphasis added).
[7] *Id.*

[01363537]
**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI                    Page 5 of 35

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

Chief Kerr's Complaint alleged that on November 21, 2021, he addressed the Assembly about his objections to the enforcement of the Borough's mask mandate in public areas, a statement which he maintained was made not as the chief of police, but as a private individual, and was therefore protected by free speech.[8] Chief Kerr's Complaint stated he received "constant retaliation from [his] speech against masking enforcement" and "Jeff [Meucci] and Dave [Kensinger] wanted me fired over my personal statement to the assembly."[9] His Complaint noted Borough Manager Steve Giesbrecht informed him that his speech was "over the top and inappropriate" and that Giesbrecht "cautioned me on future statements," and indicated that a plan would be put in place by Giesbrecht for him to work on the issue.[10]

Chief Kerr's Complaint alleged incidents harassment or potential bullying as set forth in the Borough's Employee Manual and asserting, "Dave sent an email to Steve wanting me fired," and "Jeff, Dave and Thomas all questioned the police department hiring process."[11] The Complaint alleges Meucci accompanied department employees and dispatch, asking questions about police procedure, discussing the use of the Public Safety

---

[8] *See* **Ex. A**, Kerr Complaint (redacted). The Borough disputes Chief Kerr's characterization of his mask mandate objections as statements made by a private citizen and not as the chief of police. *See* **Ex. C**, Answer to Complaint, *James Kerr v. Petersburg Borough*.
[9] *Id.*
[10] *Id.*
[11] *Id.*

[01363537]

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI          Page 6 of 35

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

Advisory Board to review the police department, and questions about the classification of domestic violence calls.[12]

The Borough immediately complied with its legal obligation to take prompt corrective action when it received Chief Kerr's harassment Complaint.[13] The law firm Clayton & Diemer, LLC was engaged to provide legal advice on the following: (1) whether Chief Kerr's statements to the Assembly were protected by free speech; and (2) whether the conduct complained of met the legal definition of harassment. Attorney Peter Diemer provided legal counsel, with the matter conducted pursuant to the Borough's Employee Manual, to confidentially inquire into allegations that raised issues of harassment and bullying, and opine on the constitutionality of the Chief's statements to the Assembly.[14] The records relating to this personnel matter are protected from public disclosure due to the confidentiality of the harassment investigation and legal opinion, the attorney-client privilege, the common interest privilege, and other privileges.

On June 2, 2022, Diemer's confidential legal opinion was provided to the Borough Manager (the department head responsible for supervising the police chief)[15] and the

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

---

[12] *Id.* Diemer's Legal Opinion has been submitted for *in camera* review. *See* Petersburg Bates Stamp Doc. 000742-877. Assembly members have the authority and right under the Borough Code of Ordinances to ask questions and request documents in and out of assembly meetings regarding issues impacting the borough and, "the inquiries made here involved important police department matters, including hiring processes and domestic violence calls." *See* **Ex. E**, 6/27/22 Response to KFSK-FM Public Records Request; Petersburg Borough Charter 2.11; Petersburg Borough Code 3.08.040(c).
[13] *See* AS 29.35.010; Petersburg Borough Charter 1.04; Employee Manual at 5.
[14] *Id.*
[15] Petersburg Borough Charter 4.02 (The Borough Manager is the supervisor for the chief of police).

[01363537]
**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI          Page 7 of 35

Borough Clerk.[16]  Chief Kerr, Jeff Meucci, and David Kensinger were each permitted to review a copy of the legal opinion individually.[17]  Chief Kerr requested that his attorney (who coordinated and consulted with the Borough Attorney) also be permitted to review the legal opinion, which was allowed to ensure he understood the legal analysis.[18]  However, no copies of the confidential legal opinion were ever disseminated or distributed to anyone and the review was limited to only those directly involved in the alleged harassment/bullying issue.[19]

On June 20, 2022, KFSK-FM radio submitted a public records request seeking a copy of Chief Kerr's Complaint.[20]  In keeping with the requirements of the public records act and acknowledging it involved the chief of police and two assembly members in a matter the community appeared to be aware of, the Borough balanced the public's right to the information against the confidentiality, privacy, and privileges attached to the personnel matter and released targeted information to fulfill its obligations in a reasonable and balanced approach.[21]  This included a redacted copy of Chief Kerr's harassment Complaint with the names of third parties and employees with no direct involvement removed, and a summary of Diemer's legal opinion that (1) no unlawful harassment had taken place; and (2) Chief Kerr's statement at an assembly meeting on November 17, 2021, regarding the

---

[16] **Ex. F**, Defendant's Verified Responses to Plaintiff's First Set of Discovery Requests at Response to Interrogatory No. 1.
[17] *Id.* at Response to Interrogatory No. 2.
[18] *Id.*; *see also* Paragraphs III(A) and (B) herein; Petersburg Bates Stamp Doc. 000139-143.
[19] *Id.* at Response to Interrogatory No. 2 and 3.  Please note references to harassment include bullying.
[20] **Ex. G**, 6/20/22 Public Records Request from KFSK-FM.
[21] **Ex. E**, 6/27/22 Response to KFSK-FM Public Records Request; **Ex. A**, Kerr Complaint (redacted).

[01363537]
**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI          Page 8 of 35

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

enforcement of an ordinance requiring face coverings in public setting was not protected by the First Amendment or the Alaska State Constitution.[22]

## B. Plaintiff's Public Records Request.

On July 22, 2022, Plaintiff submitted a poorly crafted and overbroad public records request (which on its face would be virtually impossible to fulfill) to the Borough Clerk requesting disclosure or the opportunity to inspect the following:

> (1) A copy of the complaint made this year by Chief James Kerr against the Borough of Petersburg or any members of its governing leadership and any statements issued by the Borough regarding the complaint filed,
>
> (2) Any public records to include any texts, emails, or written or recorded records or correspondence that mention the recent complaint filed by Chief James Kerr, including any texts, emails, or written or recorded records or correspondence from the borough attorney which include any employee or person not protected under Borough Code of Ordinances, Section 2.U - Borough Attorney,
>
> (3) Any documents or public records which were either discussed, presented, reviewed, or used as evidence during any recent investigation, review, determination, or judgment of the complaint, and
>
> (4) Correspondence to include all communications whether on borough databases, in borough files, borough devices or media platforms, including all personal devices used by members of the Assembly or Administration to conduct borough business.[23]

On August 11, 2022, the Borough responded by producing a redacted copy of the Complaint filed by Chief Kerr, and a copy of the statement released by the Borough to

---

[22] *Id.*

[23] **Ex. H**, 7/21/22 Public Records Request from Koenigs. Notably, the public records requests do not seek any confidential or privileged attorney-client materials.

[01363537]

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI            Page 9 of 35

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

KFSK radio regarding this matter.[24]  The Borough advised that it did not intend to release

further documents because it involved a confidential personnel matter and the release of

documents could breach one or more party's reasonable expectation of privacy and that the

matter is protected by the attorney-client privilege and other privileges.[25]  It further noted

that the complaint, allegations, and summary of the result have all been disclosed and

additional disclosure would further damage important working relationships within the

Borough.[26]

On September 8, 2022, Plaintiff, through counsel, sent a letter to the Borough's

attorney regarding "the investigation report made in response to Chief Kerr's complaint."[27]

The letter asserted that the Borough's claim of privacy was overbroad that assembly

members are not Borough employees, and withholding the Diemer legal analysis was

improper under the attorney-client privilege.[28]  Plaintiff sought release of the Diemer legal

opinion "in full, or redacted as lawfully permitted."[29]

Borough Attorney Sara Heideman responded to Plaintiff's letter on October 5, 2022,

reiterating that the requested records, including Diemer's legal opinion, are not subject to

disclosure under the attorney-client privilege, the deliberative process privilege,

constitutional privacy rights, and other privileges.[30]  The Borough Attorney also advised

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

---

[24] **Ex. I**, 8/11/22 Letter to Koenigs with attachments.
[25] *Id*.
[26] *Id*.
[27] **Ex. J**, 9/8/22 Letter to S. Heideman from C. Cacciola.
[28] *Id.*
[29] *Id.*
[30] *See* **Ex. K**, 10/5/22 Letter to C. Cacciola from S. Heideman.

[01363537]
**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI          Page 10 of 35

that Chief Kerr had asserted constitutional privacy rights in the personnel records Plaintiff requested.[31]  Plaintiff then initiated this litigation, alleging the Borough failed to comply with its disclosure obligations under the APRA, which the Borough denies.[32]

### C.     Chief Kerr's Concurrent Litigation.

On September 21, 2022, the Borough received a letter from Chief Kerr's attorney alleging the Borough's limited release of information to KFSK-FM amounted to defamation, false light, and a violation of his privacy rights.[33]  Chief Kerr alleged that he has an expectation of privacy in making a complaint in the workplace, noting that if employees thought that their job-related complaints would be turned over to the public, employees would be deterred from complaining.[34]

Chief Kerr has since initiated litigation against the Borough for the limited legal disclosure it made. As a result, the Borough is faced with two competing lawsuits, one alleging it released too much information and this one, alleging it did not release enough. Nevertheless, the Borough maintains its limited release struck an appropriate balance between the public's right to information about high ranking public officials and preserving the confidentiality and privileges in the workplace investigation and legal opinion.  The documents sought by Plaintiff are protected under the Alaska constitution, Alaska statute,

---

[31] *Id.*
[32] *See* Complaint and Answer.
[33] **Ex. L**, 9/21/22 Letter from J. Davis to S. Heideman.
[34] *Id.*

{01363537}
**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI                    Page 11 of 35

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

and Alaska common law, and it is obligated to maintain the confidentiality of these records to the extent possible under the circumstances.[35]

# DISCUSSION

## I.    STANDARD FOR SUMMARY JUDGMENT.

The "vast majority" of public records cases are decided on motions for summary judgment.[36]  Summary judgment is appropriate under Alaska law when the evidentiary record demonstrates no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[37]  To defeat summary judgment, the opposing party may in turn offer admissible evidence reasonably tending to dispute the moving party's evidence, thus establishing that a genuine issue of material fact remains to be tried.[38]  The moving party has the initial burden of showing that there are no genuine issues of material fact in dispute.[39]  However, once the moving party has established the absence of genuine issues of material fact, the burden shifts to the non-moving party to "clearly and specifically demonstrate that it can produce admissible evidence disputing the movant's evidence."[40]  Unsupported conclusory allegations are insufficient to prevent summary judgment.[41]

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

---

[35] **Ex. D**, Employee Manual at 5; 15-16.
[36] *See e.g., Media Research Ctr. v. U.S. Dep't of Justice*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment.").
[37] Alaska R. Civ. P. 56(c); *Fairbanks North Star Borough v. Lakeview Enterprises, Inc.*, 897 P.2d 47, 53 n.7 (Alaska 1995).
[38] *Id*.
[39] *Christensen v. NCH Corp.*, 956 P.2d 468, 474 (Alaska 1998).
[40] *Southeast Alaska Constr. Co. v. State, Dept. of Transportation and Public Facilities*, 791 P.2d 339, 342 (Alaska 1990).
[41] *Fromby v. Whisenhunt*, 680 P.2d 787, 793 (Alaska 1984).

[01363537]

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI                    Page 12 of 35

When material facts are disputed, summary judgment is still appropriate where the evidence is such that reasonable minds cannot differ.[42] To create a genuine issue of material fact there must be more than a scintilla of contrary evidence.[43] Summary judgment should be rendered where the pleadings, depositions, answer to interrogatories and admissions on file together with the affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.[44]

## II. APRA FAVORS PUBLIC DISCLOSURE EXCEPT WHERE PRIVACY RIGHTS OUTWEIGH THE PUBLIC'S INTEREST IN DISCLOSURE.

The disclosure of public records is governed by Alaska's Public Records Act, which provides, "Every person has a right to inspect a public record in the state, including public records in recorders' offices, except ... records required to be kept confidential by a federal law or regulation or by state law."[45] Although the APRA provides a bias in favor of public disclosure, the right of the public to obtain public records is not absolute. At issue in this case is the exception for "records required to be kept confidential ... by state law."[46] "This provision applies both to express exceptions contained in state law and to common law exceptions, which we consider to be within "state law."[47]

The Alaska Supreme Court has also held that the APRA may yield to constitutional

---

[42] *Sharp v. Fairbanks Northstar Borough,* 569 P.2d 178, 184-85 (Alaska 1977).

[43] *Yurioff v. American Honda Motor Co.,* 803 P.2d 386, 389 (Alaska 1990).

[44] Alaska R. Civ. P. 56(c).

[45] AS 40.25.120(a)(4).

[46] *Id.*

[47] *Griswold v. Homer City Council*, 428 P.3d at 180 (citing *Fuller v. City of Homer*, 75 P.3d 1059, 1063 (Alaska 2003) ("Alaska's statutory definition of 'state law' encompasses common law as well as positive law....") (citing *Gwich'in Steering Comm. v. State, Office of the Governor*, 10 P.3d 572, 578 (Alaska 2000)).

[01365357]

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI          Page 13 of 35

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

privacy rights under Article 1, Section 22 of the Alaska Constitution.[48]   Under the

constitution, evaluating the public disclosure of records requires striking a balance

"between the public interest in disclosure on the one hand and the privacy and reputation

interests of the affected individuals and the government's interest in confidentiality, on the

other."[49]   In evaluating the privacy interest as part of this calculus, the Court engages in a

three-part analysis:

> (1) does the party seeking to come within the protection of the right to privacy
> have a legitimate expectation that the materials or information will not be
> disclosed?

> (2) is disclosure nonetheless required to serve a compelling state interest?

> (3) if so, will the necessary disclosure occur in that manner which is least
> intrusive with respect to the right to privacy?[50]

Under this framework, to show that disclosure of an investigation of workplace

harassment or bullying would infringe on the Borough employees' constitutional right to

privacy, first it must be established that the employees have a "legitimate expectation that

the materials or information will not be disclosed."[51] And that expectation "is one that

society is prepared to recognize as reasonable."[52] This first prong of the constitutional

inquiry is readily met: the Employee Manual states that complaints of unlawful harassment

---

[48] *Alaska Wildlife Alliance v. Rue*, 948 P.2d 976 (Alaska 1997).
[49] *City of Kenai v. Kenai Peninsula Newspapers, Inc.,* 642 P.2d 1316, 1323 (Alaska 1982); Alaska Const. art. I, § 22.
[50] *Ass'n of Fire Fighters, Local 1264 v. Municipality of Anchorage,* 973 P.2d 1132, 1134 (Alaska 1999) (quoting *Jones v. Jennings*, 788 P.2d 732, 738 (Alaska 1990)) (internal punctuation omitted).
[51] *Int'l Ass'n of Fire Fighters, Local 1264 v. Mun. of Anchorage,* 973 P.2d 1132, 1134 (Alaska 1999).
[52] *Id.* (internal quotation marks omitted) (citing *Nathanson v. State*, 554 P.2d 456, 458-59 (Alaska 1976)).

[01363537]

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI                    Page 14 of 35

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

or discrimination will be conducted "as confidentially as possible under the circumstances."[53] It also states, "[a]ny reports of bullying will be treated seriously and investigated promptly, confidentially and impartially" and that personal information is subject to privacy and confidentiality.[54] These provisions also comply with the Equal Employment Opportunity Commission's ("EEOC") guidelines that employers should ensure the confidentiality of such complaints "to the extent possible."[55] Thus, Borough employees who submit complaints regarding potential harassment or bullying have a reasonable and legitimate expectation that the investigation will not be publically shared or disclosed.[56]

A workplace harassment or bullying complaint, investigation, and determination may contain any number of details that do not amount to misconduct affecting the public interest. Disclosure in this case is not necessary to serve a compelling state interest because government transparency does not outweigh the privacy interests of the individuals and the Borough's interest in confidentiality as an employer.

---

[53] **Ex. D**, Employee Manual at 5. According to the EEOC and the Borough's Employee Manual, absolute confidentiality is not reasonable. The investigation process itself requires revealing some of what is going on to others beyond legal or HR. As employers have a legal obligation to stop harassment and bullying, corrective measures such as employee termination will result in disclosure.

[54] *Id.* at 5 and 15-15.

[55] *See e.g.,* EEOC Notice 915.002, Enforcement Guidance: Vicarious Employer Liability for Unlawful Harassment by Supervisors (6/18/1999).

[56] *See Mont. Human Rights Div. v. Billings*, 649 P.2d 1283, 1287-88 (Mont. 1982) (holding that it is reasonable for an employee to expect that matters communicated in private by the employee to his or her employer normally would be kept confidential).

[01363537]

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI          Page 15 of 35

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

The Court has considered the constitutional privacy interests of government employees or job applicants in the context of deciding whether their records are disclosed in response to public records requests in several cases and a discovery request in one case.[57] Although these cases inform the Court's consideration of the privacy/disclosure balancing here, none of them definitively resolve how the balancing should come out in a case involving a confidential personnel matter.

The success of personnel investigations depend on witnesses whose candor is assured by the expectation of privacy.[58] In order to effectively investigate allegations of alleged workplace harassment or bullying, or claims of hostile work environment and retaliation, an employer must be able to request that employees be forthcoming regarding these important matters. That includes not only the employee lodging the complaint and the employee or non-employee against whom the complaint is lodged, but also other employees who may be witnesses to the relevant events, or who may otherwise have pertinent information or who may be identified in the matter. Employees may be less likely to willingly and openly file such complaints and participate in workplace investigations if their identification and statements are to be publically disclosed. Records could reveal

---

[57] *City of Kenai v. Kenai Peninsula Newspapers, Inc.,* 642 P.2d 1316, 1323-24 (Alaska 1982); *Municipality of Anchorage v. Anchorage Daily News*, 794 P.2d 584, 590-91 (Alaska 1990); *Jones v. Jennings*, 788 P.2d 732, 733 (Alaska 1990); *Alaska Wildlife Alliance v. Rue*, 948 P.2d 976, 980 (Alaska 1997).

[58] *See e.g., Rackauckas v. Superior Ct.*, 104 Cal. App. 4th 169, 170, 128 Cal. Rptr. 2d 234 (2002) (in this analogous case, an investigative file generated after the informal conclusion of an investigation into potential police misconduct was exempt from public disclosure, with the court noting the importance that investigators feel free to candidly comment and communicate upon what they have learned through investigations, without fear of the chilling effect of disclosure upon them or their sources).

[01363537]
**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI                Page 16 of 35

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

unsubstantiated opinions of employee witnesses as to another employee's involvement, the identities of employees who participated in events but had no part in any misconduct, accusations totally unsupported by evidence, conduct which represents either entirely acceptable practices or matters which appear to be minor violations having no cost or unfavorable consequences.  Disclosure of the records at issue containing such information may expose the Borough to increased liability for invasion of privacy and defamation.[59] Accordingly, the personnel records should not be publically disclosed.

The Wisconsin Supreme Court addressed these concerns about internal harassment complaints in *Hempel v. City of Baraboo*.[60]  The plaintiff was a police officer who alleged the City violated the Open Records Law after he submitted two public records requests for the release of the police department's investigatory records from an internal harassment complaint filed against him.   In response to the plaintiff's requests (the requests included all documents related to the investigation), the City released a redacted copy of the complaint, a memo notifying him a complaint had been filed, a memo regarding the City's resolution of the complaint, and two letters that had been sent by plaintiff's counsel to the City.[61]  However, the City denied the open records request related to the City's "internal investigation" of the complaint.[62]

---

[59] It is also worth noting that in small communities like Petersburg, even if witness/employee identities were redacted it would be difficult to conceal due to the small population numbers, thereby decreasing the incentive for employees to feel confident reporting workplace concerns.
[60] 284 Wis.2d 162, 167-168 (2005).
[61] *Id.* at 169-173.
[62] *Id.*

[01363537]

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI                    Page 17 of 35

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

The City's lawful response to the public records request provided the following reasoning: (1) The City's harassment policy provides for a confidential investigation; (2) disclosure would interfere with the ability of a law enforcement agency to conduct thorough, confidential, internal investigations and its ability to gather statements from members of the department or other departments would be seriously hampered by public disclosure of such investigations, and disclosure would discourage victims and witnesses from providing information regarding personnel investigations; (3) "[D]isclosure ... would interfere with and hamper the City of Baraboo's ability to ensure employees an opportunity for satisfying careers and fair treatment ... and would impinge upon the City's right and opportunity to ... retain competent law enforcement personnel."; (4) nondisclosure protects the privacy rights of individuals who cooperated in the investigation, and disclosure might subject witnesses, employees, and their families to increased risk of harassment or other jeopardy; (5) to avoid a loss of morale, and it could inhibit the City's ability to hire and retain competent personnel; and (6) the documents requested may contain information that is mistaken, unsubstantiated, untrue, or irrelevant, and there is a strong public policy in preventing this information from becoming public thereby causing (undue) personal and/or economic harm to the individuals involved, and disclosure would constitute an unwarranted invasion of personal privacy.[63] The trial court granted summary judgment in

---

[63] *Id.* at 173-174.

[01363537]

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI                    Page 18 of 35

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

favor of the City, after performing an *in camera* review of the records that were withheld.[64] The Wisconsin Court of Appeals affirmed, concluding "the public's interest in nondisclosure outweighs the public's interest in access to records containing information from internal police department complaints of sexual and other forms of harassment proscribed by law."[65]

The court of appeals opinion was affirmed, with the court holding that the public's right to access internal harassment investigations "must give way to the important public policy of encouraging victims and witnesses of employment discrimination to cooperate in internal investigations of such conduct."[66] The court agreed that in the future, complainants and witnesses will become less likely to make candid statements if they know that the accused may access their statements through an open records request. It also reasoned that some officers, "fearful of being labeled as 'whistle blowers,' may blanch at the thought of offering damaging evidence about a colleague if they know that their names and comments will become public record."[67] The court stated confidentiality in this setting carries special weight as disclosure would make victims and witnesses of harassment less likely to come forward, disclosure could cause a loss of morale, discourage qualified candidates, cause factually inaccurate information to be released to the detriment of the subject's reputation,

---

[64] *See Hempel v. City of Baraboo*, 268 Wis.2d 534, 546 (2003) (affirmed by *Hempel v. City of Baraboo*, 284 Wis.2d 162 (2005)).
[65] *Id.* at 552.
[66] *Hempel v. City of Baraboo*, 284 Wis.2d at 176.
[67] *Id.* at 198.

[01363537]

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI                    Page 19 of 35

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

and compelling privacy interests support non-disclosure.[68]

The same reasoning for non-disclosure is equally applicable here. Plaintiff is not entitled to confidential evaluative summaries or conclusions in the files. Disclosure would likely damage relationships within the department (critical to the efficient functioning of that department). For instance, the records may include allegations or opinions, though untrue or unsubstantiated, that could still harm reputational interests (a bell once rung cannot be undone), even if the speaker's identity is redacted. Likewise, it will discourage employees in the future from either lodging such complaints, or from fully and candidly participating in such matters for fear of retaliation or retribution. Chief Kerr even has alleged privacy and confidentiality concerns in just the limited release of information by the Borough in a lawsuit against the Borough.[69]

Plaintiff wrongly asserts that assembly members are not employees and therefore Chief Kerr's Complaint and the ensuing personnel investigation and legal advice provided to the Borough are open to the public. Plaintiff disregards that the matter involved a Borough employee's harassment complaint governed by the Employee Manual. In short, the right to file a confidential harassment complaint is not waived because of the position of the person or persons accused.[70] The Borough can think of no greater deterrent to an employee coming forward with a harassment complaint than the knowledge that the

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

---

[68] *Id.* at 198-201.
[69] The Borough has disputed Chief Kerr's lawsuit allegations as meritless. *See also* **Ex. B** and **Ex. C**.
[70] **Ex. D**, Employee Manual at 2-4, 16.

[01363537]
**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI          Page 20 of 35

position of the alleged harasser dictates whether or not the employee's complaint will be subject to public scrutiny. This is why the Employee Manual provides for such complaints to be dealt with "as confidentiality as possible" even when the harassment is by a "nonemployee."[71] The Borough's Employee Manual does not treat complaints of alleged harassment filed by an employee against an assembly member differently. Nor should Borough employees be forced to do so, simply because of the position the alleged harasser holds. It is important that employees feel free to bring allegations of harassment forward. Nor do assembly members waive their privacy and reputational interests simply because they have been named in a harassment complaint.[72]

    The Borough in its reasonable discretion balanced the public's right to information about Chief Kerr's Complaint (as a high ranking public official) against the confidential nature of the personnel matter to accomplish the least restrictive disclosure method. By providing a copy of the redacted Complaint and a brief description of the legal opinion's findings, the Borough fulfilled its obligation to the public while simultaneously maintaining the confidentiality and integrity of the investigation and legal opinion itself. As this involved a personnel matter subject to a confidential harassment and bullying process, there is a legitimate expectation of privacy in the records, no compelling state interest, and the Borough's limited disclosure was the least intrusive method. The Court

LAW OFFICES OF
JERMAIN DUNNAGAN & OWENS
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

---

[71] *Id.*

[72] *Bast v. U.S. Dep't of Justice,* 665 F.2d 1251, 1254-55 (D.C. Cir. 1981) (citing *Lesar v. Department of Justice,* 636 F.2d 472, 487 (1980)) (while there is an interest in public access, it is "well established... that government officials do not surrender all rights to personal privacy when they accept a public appointment.").

{01363537}
**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI        Page 21 of 35

should find that on balance the public's interest in keeping these records confidential outweighs the public interest in disclosure. The Court should further find that the limited public disclosure of this issue serves the dual purpose of releasing information to the public while conducting an investigation as "confidentiality as possible under the circumstances."[73]

## III. THE REQUESTED RECORDS ARE PRIVILEGED AND PROTECTED FROM DISCLOSURE AS A MATTER OF LAW.

"[W]hether a privilege applies is a question of law."[74] A court considering whether the privilege applies to public records should conduct an *in camera* review and invite arguments from the holder of the privilege as to why portions of the material should be considered privileged.[75] Accordingly, the Borough concurrently filed a *motion for in camera review* of the documents it maintains were properly withheld under the privileges set forth below.

### A. The Requested Records are Protected by the Attorney-Client Privilege.

The records sought by Plaintiff are protected under AS 40.25.120(a)(4), which exempts records protected under the attorney-client privilege.[76] In pertinent part, Rule 503 *Lawyer-Client Privilege* of the Alaska Rules of Evidence provides:

Rule 503. Lawyer - Client Privilege

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

---

[73] **Ex. D**, Employee Manual at 5; 16.
[74] *Griswold v. Homer City Council*, 428 P.3d 180, 185 (Alaska 2018) (citing *Capital Info. Grp. v. State, Office of the Governor*, 923 P.2d 29, 33 n.2 (Alaska 1996)).
[75] *Windel v. Matanuska-Susitna Borough*, 496 P.3d 392, 401 (Alaska 2021).
[76] *Griswold*, 428 P.3d at 186-188 (determining that the attorney-client and work-product privileges constitute state law exceptions to the Alaska Public Records Act).

[01363537]
**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI                Page 22 of 35

(b) General Rule of Privilege. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) between the client or the client's representative and the client lawyer or the lawyer's representative, or (2) between the client's lawyer and the lawyer's representative, or (3) by the client or the client's lawyer to a lawyer representing another in a matter of common interest, or (4) between representatives of the client or between the client and a representative of the client, or (5) between lawyers representing the client.

It is well established that the attorney-client privilege attaches to corporations as well as to individuals.[77] Both for corporations and individuals, the attorney-client privilege serves the function of promoting full and frank communications between attorneys and their clients. It thereby encourages observance of the law and aids in the administration of justice.[78] The privilege applies when legal advice is sought "from a professional legal advisor in his capacity as such."[79]

In *U.S. v. Chen,* the Ninth Circuit held:

... It is not true, and has not been true since the early nineteenth century, that the confidences of a client are "respected only when given for the purpose of securing aid in litigation." 8 Wigmore, supra, § 2291, at 559. "The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice,... as well as an attorney's advice in response to such disclosures." *In re Grand Jury Investigation (Corporation)*, 974 F.2d 1068, 1070 (9th Cir.1992) (quotations and citation omitted). The attorney-client privilege applies to communications between lawyers and their clients when the lawyers act in a counseling and planning role, as well as when lawyers represent their clients in litigation. Indeed, the axiom that "every man knows the law" presupposes that everyone can find it out by

---

[77] *Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).
[78] *See, e.g., Upjohn Co. v. United States, supra,* at 389, 101 S.Ct., at 682; *Trammel v. United States,* 445 U.S. 40, 51, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980); *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976).
[79] *In re Grand Jury Investigation (Corporation),* 974 F.2d 1068, 1070 (9th Cir.1992) (quotations and citation omitted).

[01365537]

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI                Page 23 of 35

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

consulting a lawyer, before being hauled into court for violating the law. 8 Wigmore, supra, § 2291 at 547-48 (citations omitted).[80]

With attorney-client privilege, the client holds the privilege. In this case, the client, the Borough, has not waived the attorney-client privilege. Legal counsel was retained to provide legal advice related to Chief Kerr's Complaint and whether its allegations raised a legally meritorious claim of First Amendment protection regarding the Chief's November 2021 Assembly address, and if the assembly members' conduct amounted to harassment or bullying.[81] Diemer's role was not as a factfinder: "[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice. The first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant..."[82] While Diemer necessarily had to review the facts, his role was to provide a legal analysis to the Borough. Thus, communications related thereto necessary fall within the attorney-client privilege as set out in the Borough's Privilege Log.[83]

The Alaska Supreme Court has held that if "the communication is either 'in the course of' the attorney's professional employment or 'facilitates' the rendition of legal

---

[80] 99 F.3d 1495, 1501 (9th Cir. Ct. App. 1996).
[81] *See e.g., Krishnan v. Cambia Health Sols., Inc.*, 2021 WL 3129940, at *3 (W.D. Wash. July 23, 2021) (investigations of employee-reported matters conducted by a party's in-house counsel satisfy the elements for attorney-client privilege).
[82] *Harding v. Dana Transp., Inc.*, 914 F. Supp. 1084, 1091 (D.N.J. 1996).
[83] *See* Defendants' Motion and Memorandum in Support of Motion for *In Camera* Review of Privileged Documents, at Defendants' Privilege Log and incorporated herein by reference. Plaintiff was provided a copy of the Defendants' Privilege Log with its Rule 26 Initial Disclosures.

[01363537]
**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI          Page 24 of 35

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

services, it is protected."[84]  The fact that the legal opinion was reviewed (but not released) to those confidentially involved does not waive the attorney-client privilege.  In *California Oak Foundation v. County of Tehama,* the court held, in an administrative appeal challenging the scope of a public records disclosure, that where documents are disclosed to third persons reasonably necessary to further the purpose of the original legal consultation there is no waiver of the attorney client privilege in the context of a public records request.[85]  The Borough permitted only those directly impacted by the outcome of the legal opinion to a confidential review to ensure the parties understood Diemer's legal analysis.

Despite Plaintiff's claims to the contrary, there has been no disclosure or communication beyond the client to a third-party waiving the attorney-client privilege. Consequently, there are no genuine issues of material fact and the Borough is entitled to summary judgment as a matter of law.

---

[84] *American Nat. Watermattress Corp. v. Manville,* 642 P.2d 1330, at 1333 (Alaska 1982) (quoting *United Service Automobile Association v. Werley,* 526 P.2d 28, 31 (Alaska 1974)) .

[85] 174 Cal. App. 4th 1217, 94 Cal. Rptr. 3d 902 (Cal. Ct. App. 2009); *see also Amco Ins. Co. v. Madera Quality Nut LLC,* 2006 WL 931437, at *8-9 (E.D. Cal. Apr. 11, 2006) (communications exchanged between company employees and in-house counsel and counsel's agents as part of an internal investigation were privileged communications; the dominant purpose was to obtain information in order to give legal advice); *In re Cnty. of Erie,* 473 F.3d 413, 421-22 (2d Cir. 2007) (communication between government attorney and public officials (sheriffs) were privileged even though communications analyzed already existing policies and proposed alternatives as advice about compliance with legal obligations is legal in nature and not for a business purpose); *In re General Motors LLC Ignition Switch Litig.,* 80 F. Supp. 3d 521, 531 (S.D.N.Y. 2015) (internal investigation materials are protected by the attorney-client privilege if a primary purpose of the investigation is legal in nature; the primary purpose test does not require a showing that obtaining or providing legal advice was the sole purpose or that the communications at issue "would not have been made 'but for' the fact that legal advice was sought.").

[01363537]
**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI                    Page 25 of 35

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

**B.** **The Requested Records are Protected by the Common Interest Privilege.**

The common interest attorney-client privilege is set forth in Evidence Rule 503(b)(3), which allows a client to bar disclosure of confidential communications between the client's lawyer and a lawyer representing another in a matter of common interest. This privilege allows attorneys representing different clients with similar interests to share information without having to disclose it to others.[86] It applies in civil and criminal litigation, and even in purely transactional contexts.[87] According to the RESTATEMENT:

> If two or more clients with a common interest in a litigated or non-litigated matter are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client that otherwise qualifies as privileged ... that relates to the matter is privileged as against third persons.[88]

"[T]he common interest ... may be either legal, factual, or strategic in character. The interests of the separately represented clients need not be entirely congruent."[89] Those asserting the privilege need not be parties to litigation.[90] The common interest privilege does not require a complete unity of interests among the participants. The privilege applies where the interests of the parties are not identical, and it applies even where the parties'

---

[86] *See In re Teleglobe Communications Corp.,* 493 F.3d 345, 364 (3d Cir. 2007).
[87] *Id.*; RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 76.
[88] § 76(1).
[89] § 76 cmt. e. "Unlike the joint defense privilege, the common interest does not require or imply that an actual suit is or ever will be pending. It does require, however, that a definable common interest exist." E.S. Epstein, "The Attorney-Client Privilege and the Work-Product Doctrine," p. 203 (4th Ed. 2001).
[90] *See* M.D. DeBrie, "The Common Interest Privilege" (Sept. 30, 2014) at p. 2, http://apps.americanbar.org/litigation/committees/trialevidence/articles/fall2014-0914-commoninterest-privilege.html.

[01363537]

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI            Page 26 of 35

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

interests are adverse in substantial respects.[91]   The common interest privilege doctrine also applies when there is a reasonable expectation of confidentiality between the disclosing party and the recipient.[92]

Here, the common interest privilege applies to the confidential personnel matter at hand.  Diemer was an attorney retained to provide legal advice regarding Chief Kerr's harassment Complaint.   Chief Kerr's Complaint lawfully required a workplace investigation regarding harassment, and is subject to the confidentiality provisions of the Borough's Employee Manual, and other confidentiality requirements and privileges.[93] The Borough safeguarded the confidentiality of Diemer's legal opinion by only allowing Chief Kerr, his attorney (Caitlin Shortell), and Kensinger and Meucci, i.e., those involved in the Complaint to review it.[94]  However, no copies were otherwise shared or distributed. The common interest privilege operates to protect communications by those affected by its legal conclusion.  All were part of the Borough's provision of ongoing legal efforts to obtain comprehensive legal advice related to Chief Kerr's Complaint.  Any information shared amongst or between the parties, their counsel, and the Borough was subject to the common interest privilege and therefore, properly withheld.

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

---

[91] *In re Mortg. & Realty Tr.*, 212 B.R. 649, 653 (Bankr. C.D. Cal. 1997).
[92] *See D'Alessandro Contracting Group, LLC v. Wright*, 308 Mich.App. 71, 82–83, 862 N.W.2d 466 (2014) (applying the common-interest doctrine in the context of the work-product privilege and holding the disclosure of work product to a third party does not result in a waiver if there is a reasonable expectation of confidentiality "between the transferor ... and the recipient ...."). In this case the Borough had a reasonable expectation of confidentiality in Diemer's legal opinion.
[93] **Ex. D**, Employee Manual at 5.
[94] Kensinger and Meucci were represented by attorney Sarah Fine-Walsh.  As their legal representative, she is part of the common interest privilege.

[01363537]
**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI                    Page 27 of 35

### C. The Borough has not Waived its Attorney-Client Privilege in the Personnel Matter.

"Alaska Evidence Rule 510 states that a person who holds a privilege against disclosure of information waives the privilege if the person voluntarily discloses or voluntarily consents to disclosure of any significant part of the matter or communication covered by the privilege."[95] When determining the scope of a waiver of attorney-client privilege, courts generally identify whether the waiver was express or implied.[96] Express waiver occurs when a "party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public."[97] "Disclosures that affect an express waiver are typically within the full control of the party holding the privilege; courts have no role in encouraging or forcing the disclosure - they merely recognize the waiver after it has occurred."[98]

An implied waiver of the privilege occurs either when a client calls his or her lawyer's performance into issue during the course of representation (commonly referred to as "waiver under the fairness principle"), or when a client asserts a claim or defense that places the nature of the privileged materials at issue (commonly referred to as "waiver by implication").[99] Accordingly, implied waiver is not at issue in this case.

---

[95] *Galaktianoff v. State,* 2019 WL 3814553, at *2 (Alaska Ct. App. Aug. 14, 2019); Alaska R. Evid. 510.
[96] *Bittaker v. Woodford,* 331 F.3d 715, 718-21 (9th Cir. 2003).
[97] *Id.*
[98] *Id.*
[99] *Id.*

[01363537]

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Koenigs v. Petersburg Borough, et al.,* Case No. 1PE-22-00046CI          Page 28 of 35

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

Nor has there been an express waiver, as Plaintiff has asserted.[100]  The Borough has not expressly waived its attorney-client privilege because there was no intentional public disclosure of Diemer's legal opinion which is subject to the Borough's reasonable expectation of confidentiality and privileges.  Diemer was retained to provide a legal advice regarding Chief Kerr's Complaint.  The communications were considered confidential when made as the investigation was performed pursuant to the Employee Manual's harassment and bullying policy.  While the ultimate determination regarding Chief Kerr's harassment Complaint was released, it contained no confidential communications or Diemer's legal thought process or analysis.[101]  To the contrary, the Borough took affirmative steps to ensure the legal opinion would remain confidential by only allowing those directly involved to review it.[102]  The review was permitted to ensure the outcome of this highly contentious personnel matter was understood.  To underscore the intended confidentiality, the Borough did not release any copies of the document.  Because there is no material issue of fact in dispute, summary judgment must be granted.

---

[100] Notably, as Chief Kerr, Kensinger, and Meucci are not the privilege holder, they cannot independently waive the privilege on the Borough's behalf.

[101] Even if the Court were to find that allowing the parties involved in the personnel matter review Diemer's legal opinion, it should find that any waiver was limited to Chief Kerr and his attorney, Kensinger, and Meucci.  *See e.g., Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 611 (8th Cir. 1977) (en banc) (internal investigation report compiled by outside counsel but disclosed to the SEC constituted only a "limited waiver" that did not preclude the corporation from withholding the report from private litigants on the grounds of attorney-client privilege).

[102] **Ex. F**, Defendant's Verified Responses to Plaintiff's First Set of Discovery Requests at Response to Interrogatory No. 1 and 2.

[01363537]

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI          Page 29 of 35

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

**D.** **The Requested Records are Protected by the Executive Privilege and Deliberative Process Privilege.**

    **1.** **Executive Privilege.**

The documents related to the investigation and determination of Chief Kerr's personnel complaint are protected by the executive privilege.[103] The doctrine of executive privilege recognizes that certain executives have a qualified power to keep confidential certain internal governmental communications "so as to protect the deliberative and mental processes of decision makers."[104] The executive privilege doctrine is designed to ensure the availability to executive decision-makers of candid advice. The U.S. Supreme Court of the United States has emphasized that the primary impetus for the qualified privilege is the need to protect:

> The public interest in candid, objective, and even blunt or harsh opinions in presidential decision making. A president and those who assist him must be free to explore alternatives ... and to do so in a way many would be unwilling to express except privately.[105]

The personnel investigation and legal opinion can only be considered a candid opinion for use in the Borough's executive decision making. Indeed, because Diemer was retained to provide legal advice regarding Chief Kerr's Complaint, the personnel

---

[103] *See State ex rel. Atty. Gen. v. First Judicial District Court*, 629 P.2d 330 (N.M. 1981) (investigatory material of attorney general and other executive department personnel is protected by the executive privilege) (overturned on other grounds, *Republican Party of New Mexico v. New Mexico Tax'n & Revenue Dep't*, 283 P.3d 853, 868 (NM 2012)).

; *Nero v. Hyland*, 386 A.2d 846 (N.J. 1978) (police investigatory report privileged).

[104] *Doe v. Alaska Superior Court, Third Judicial Dist.,* 721 P.2d 617, 623 (Alaska 1986).

[105] *United States v. Nixon,* 418 U.S. 683, 708, 94 S.Ct. 3090, 3107-08, 41 L.Ed.2d 1039, 1064 (1974).

[01363537]

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI          Page 30 of 35

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

investigation cannot be considered anything but a record intended to help with the deliberative and mental processes of the actual decision makers.

The same balancing test applied in Paragraph II, "between the public interest in disclosure on the one hand and the privacy and reputation interests of the affected individuals and the government's interest in confidentiality, on the other" is applicable here.[106] On balance, internal personnel matters remaining confidential outweighs the public's right to access the records for those same reasons. Notably, the investigatory materials and legal opinion have not been made public, nor should they. The records were made for the express purpose of assisting the Borough in their attempt to resolve an internal personnel matter that was subject to confidentiality, which outweighs the public's right to access the information. Accordingly, the documents were properly withheld under the Executive Privilege and summary judgment must be granted.

## 2. The Deliberative Process Privilege.

The deliberative process privilege is a judicially recognized "state law" exception under AS 09.25.120(a)(4).[107] The roots of this privilege lie in the common law; it protects the mental processes of government decision makers from interference. Government employees may assert the deliberative process privilege and withhold documents when public disclosure would deter the open exchange of opinions and recommendations

---

[106] *City of Kenai v. Kenai Peninsula Newspapers, Inc.,* 642 P.2d 1316, 1323 (Alaska 1982); Alaska Const. art. I, § 22.
[107] *Gwich'in Steering Comm. v. State, Office of the Governor*, 10 P.3d 572, 578 (Alaska 2000).

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

between employees.[108]  To determine whether disclosure would interfere with that process, the government must show that the communication is both "predecisional" and "deliberative."[109]  In limited circumstances, such as in this case, post-decisional communications may remain confidential.  Predecisional communications occur before completion of the deliberative process.[110]  Deliberative communications "reflect a 'give-and-take' of the decision making process and contain opinions, recommendations, or advice about agency policies."[111]  If the government demonstrates that a document meets those requirements, "a presumptive privilege attaches in favor of nondisclosure."[112]  The burden then shifts to the opposing party to "show that the public's interest in disclosure outweighs the government's interest in shielding the information.[113]  Generally, it is difficult for a requestor to override a presumptive privilege.[114]

The balancing of interests under the deliberative process privilege is closely related to the balancing test that the court applies in cases where there is no assertion of a specific privilege.  In those cases, "we balance the interest of the citizen in knowing what the servants of government are doing and the citizen's proprietary interest in public property, against the interest of the public in having the business of government carried on

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

---

[108] *Capital Info. Group v. State, Office of the Governor*, 923 P.3d 29, 33 (Alaska 1996).

[109] *Id.* at 35.

[110] *Gwich'in Steering Comm.*, 10 P.3d at 579.

[111] *Id.*

[112] *Id.*

[113] *Id.* (citing *Capital Info. Group*, 923 P.3d at 37).

[114] *Id.* at 584 (citing Russell L. Weaver & James T.R. Jones, *The Deliberative Process Privilege*, 54 Mo. L. Rev. 279 at 319 (1989) (hereafter Weaver & Jones).

[01365357]

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI          Page 32 of 35

efficiently and without undue interference."[115] "The deliberative process privilege affects th[is] balance ... primarily by identifying more specifically what interest the government may have in maintaining confidentiality, in the form of the threshold showing that the communication is predecisional and deliberative."[116]

In at least two Alaska cases the Court has found that on balance, the basic factors associated with the deliberative process should be modified when sensitive information about the operations of government could cause disruption and unnecessary confusion.[117] The Court's exceptions to the release of deliberative process information applies equally in the case of an internal harassment/bullying complaint and legal opinion. In applying the same balancing test in Paragraph II (and as applied in executive privilege), balancing the interest of the public's right to access internal harassment investigations against the important public policy of encouraging victims and witnesses to come forward to report harassment, and be able to maintain the confidentiality of those personnel matters, nondisclosure outweighs disclosure.

Nor does the privilege evaporate because the investigation is completed. As the Court has explained, "The question is not whether the decision has been implemented, or whether sufficient time has passed, but whether disclosure of these preliminary proposals could harm the agency's future decision making by chilling either the submission of such

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

---

[115] *Griswold v. Homer City Council*, 428 P.3d 180, 187 (Alaska 2018).
[116] *Id.*
[117] *See Gwich'in Steering Comm.*, 10 P.3d at 583; *Capital Info. Group*, 923 P.3d at 33.

[01363537]
**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI          Page 33 of 35

proposals or their forthright consideration."[118]   Here, the privilege does not end because

the investigation into the personnel matter is completed.   The same considerations

regarding confidentiality and encouraging employees to participate in personnel

investigation, if such matters were subject to a public records release, support a finding that

the privilege continues to attach.   Accordingly, the deliberative process privilege exempts

the personnel investigation and legal opinion from public disclosure.   Summary judgment

should be granted as a matter of law.

## CONCLUSION

For the reasons set out above, the Borough properly withheld and redacted

confidential documents exempted from disclosure under the Alaska Public Records Act

and is entitled to summary judgment as a matter of law.

Dated this 1st day of March, 2023, at Anchorage, Alaska.

JERMAIN DUNNAGAN & OWENS, P.C.
Attorneys for Defendants


By:  s/*Michael Gatti*/
Michael Gatti
ABA #8306033
Kendra E. Bowman
ABA #0511109

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A Street, Suite 300
Anchorage, Alaska 99503
(907) 563-8844
Fax (907) 563-7322

---

[118] *Gwich'in Steering Comm.*, 10 P.3d at 583.

[01363537]

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI                    Page 34 of 35

**CERTIFICATE OF SERVICE**

This is to certify that a true and
correct copy of the foregoing was
served by (x)email ( )mail ( )hand
( ) fax this 1 March 2023, to:

Samuel C. Severin
Chandler, Falconer, Munson & Cacciola, LLP
911 W. 8th Ave., Suite 302
Anchorage, AK 99501
sseverin@bcfaklaw.com

 s/Sherry Sims/
Sherry Sims

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

{01363537}

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI                    Page 35 of 35

**Timeline/Overview of events**

Started during the EOC for Covid over mandates and enforcement of the mandates.

EOC/Hospital PMC wanted police at the airport for intimidation on making people test for COVID at the airport. I provided an officer as time allowed. But as time went on testers at the airport were having conformations with the pubic and testers were beginning to push their authority onto people. This caused issues so the PD was no longer involved with the test. The use of officers was offered if they were willing to pay otherwise officers would respond as needed.

PD attempted to work with the Petersburg Medical Center on enforcement, but they refused to share information citing HIPPA.

Hospital used influence at the assembly level to bring on enforcement of covid to the community.

Jeff received his mask warning 01/15/2021

(Email) Jeff directed someone to tell the chief to release the information on the call to him.

01/21/21 @ 10:39 am (email) Jeff sent email stating "since my names is in the newspaper for being warned for not wearing a mask, would someone please direct the chief to provide me with a copy of the official complaint? That would be helpful. I expect this request to be dealt with before noon today. Thanks so much. Jeff

01/21/21 @ 10:47 am (email) Jeff was advised he was using his position of authority as an assembly member to receive the information outside the standard process the public uses. I also provided the police department records request in the email and told him to fill it out.

01/21/21 Debbie called Jeff and advised him he was not allowed to do what he did.

01/21/21 (email) Jeff said it was a miss understanding after Debbie called Jeff and stated he was not allowed to do what he did. Jeff tried to cover up his violation of office by saying he was unsure of the process.

01/21/21 Jeff arrived at Debbie's office to receive the information that was told to provide to Jeff. I still redacted the complainant contact information.

(See emails and written notes for full details on Jeff's request)

01/28/21 email to EOC which was the police masking views.

Enforcement of masking and the police department were talked about several times by the hospital employees/EOC, and assembly members.

Police & Borough along with Jeff had meeting at the fire hall with hospital over enforcement and the hospital spreading miss information. Borough was willing to address Covid spreading citizens if the hospital reported the people who are in violation.

Exhibit A
Page 1 of 5

Exhibit H
Page 36 of 89

EXHIBIT A
Page 120 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 120 of 176

See provided statement read at assembly meeting. I told Debbie I would like to speak at the upcoming assembly meeting 11/17/21 as a member of the public not as the chief under community members comments related to items on the agenda. Debbie agreed and signed me up for public comments.

Constant retaliation from my speech against masking enforcement

Jeff and Dave wanted me fired over my personal statement to the assembly. This was a matter of public concern relating to enforcement of masking and fining businesses and citizens of the community. (Assembly Meeting 11/17/21 @ 1800) (Get emails from Steve and asked him about in person/phone conversations between Steve, Jeff and Dave.)

Assembly Meeting - Jeff went after PD Training after Steve gave his report. Jeff's tone and body language showed he was mad at me over the personal statement relating to a matter of public concern.

Spoke with Steve who said my speech to the assembly was over the top and inappropriate.

Steve said he needed to speak with the Borough attorney before he talks to me. I feel that Steve and Borough Attorney were going to take action against me until I received guidance from my attorney and spoke with the borough attorney.

Meeting about my speech resulted in Steve saying he understood I was allowed to say what I did but cautioned me on future statements. Came up with a plan to consult Steve in the future.

Dan Sullivan submitted a letter to the assembly of disapproval of my actions during the personal statement. (See Email/Lettter)

The following week Dan submitted a letter to join the PSAB and was approved by the borough assembly. (Letter/Email to assembly to join)

Jeff and Dave requesting/making constant busy work for the police chief. (Email to Steve from Jeff and Dave and phone/in person conversations.)

 was fired ███████████

Dave sent email to Steve wanting me fired. He also threatened Steve's job if he didn't do something. (Steve's Email)

Steve also told Dave what he is doing is harassment. (Steve Email)

Thomas Fine-Walsh posted to Facebook and shared Juneau empire story and insinuated police chief did not do his job (see photos of posts 01/09/22 personal Facebook and on 01/13/22 KFSK article)

Meeting with Thomas, Steve, Debbie and myself in Steve's office where Thomas was anti police and made statements of defunding the police.

Dave had also made statements of defunding the police.

Exhibit A
Page 2 of 5

Exhibit H
Page 37 of 89

EXHIBIT A
Page 121 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 121 of 176

Steve documented my personal statement in my performance evaluation saying he had to do something so he could tell Dave he did something about it to get him to stop. (See performance evaluation)

Jeff, Dave and Thomas all questioned the police department hiring process. (Assembly Meeting and Emails, phone call and in person conversations to Steve)

I had to provide a detailed outline of the hiring process to the assembly. Which was questioned by Thomas and Jeff (At Assembly Meeting)

Jeff, Dave and Thomas wanted a review of the police department hiring and retention to be conducted by the PSAB (emails and in person/phone calls Steve)

Using the PSAB would be a way for Jeff and Dave possibly to manipulate the investigation into the PD. (Now appears Jeff and Mark Testoni have been talking)

I stated from the first words of an investigation into the PD that I had nothing to hide but want the investigation done by a company that knows PD's, Jails and Alaska rural policing.

Jeff started riding with all police employees and dispatch asking questions about the department.

Borough staff started the recruitment and retention with Jeff involved and he agreed borough staff should conduct the investigation.

At meeting I spoke out against using the PSAB as I believed it could lead to a bias investigation.

PSAB is made up of 2 hospital employees Mark and Mark. PD and hospital have had issues over Covid and enforcement. Dan also had an issue with the police department over the Covid speech I can and was now part of the PSAB. ████████████████████████████████████████
████████

Jeff, Dave, and Thomas all voted to have the PSAB do the investigation.

Jeff then wanted the annual report from the police department for the last 3 years. He never states what he needs it for when asked.

Mark Testoni always says he is busy and will meet with me to discuss the police department. I have made myself available anytime and even invited Jeff and Mark to the Axon Fleet 3 discussion on options available which they attended. Mark has never talked to me about any possible issues he has with the PD.

After assembly meeting 03/07/22 Jeff sent Steve an email about the PD.

03/09/22 (email) I sent an email with data I pulled from the RMS and sent information out to Assembly, ████████ Petersburg Pilot and KFSF. This information was 2017 through 2021. I also said if anyone has questions or wants further details to let me know.

Exhibit A
Page 3 of 5

Exhibit H
Page 38 of 89

EXHIBIT A
Page 122 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 122 of 176

03/09/22 @ 1632 I personally called ███████ on ███ cell phone to let ███ know of the information I sent out on calls for service and arrests ████ ████████████.

03/09/22 (emails) I sent emails to Mark Testoni in reference to his comments at the Assembly Meeting where he stated he's reached out to Fairbanks AST dispatch supervisor about them helping out Petersburg dispatch.

03/09/22 (email) from Mark Testoni to Steve Giesbrecht. Email shows Mark is violating Roberts rules of order by conducting business outside of meetings. This gives the appearance of undermining the police department. In the email Mark states, "there are things that the board has discussed that may not be to the Chiefs liking or that we feel should be addressed".

03/09/22 (Jeff Meccui text message to me which was meant for Mark Testoni) **SEE TEXT MESSAGE FOR DETAILS**. When putting the emails from me to Mark together along with the test message this shows Jeff Meccui and Mark Testoni are working together. Jeff intentionally and knowingly instructed Mark on how to conduct business by instructing him to not put things in writing and to verbally conduct his business. Jeff says putting things in writing leaves a messy paper trail so any written word or response could come back to bite you. He also notified Mark about records request that have been made looking for incriminating emails between assembly members.

03/15/22 Steve advised me Mark Testoni was asking about who the PSAB receives direction from and kept trying to say PSAB doesn't receive directions from the Chief. Steve referred him to the borough charter and said PSAB receives direction from the assembly, borough manager or chief of police and EMS director when asked for by the department heads. The public can also request issues be sent to them. Then Mark met with Debbie for a few and went back to Steve's office and made the statement that the police don't arrest on domestic violence crimes. I advised Steve it is state law to arrest on DV crimes if there is PC for the arrest. The only exception is if the officer calls the DA who can authorize not arresting the person.

His intent is to undermine the Chief of Police.

Several Petersburg community members have been approached by Mark Testoni and asked for their input on the police department. ███████████ was asked what ███ thought about the police department's interactions and relationships with the native community. Borough employees outside the PD have been approached by Mark Testoni and asked for input on the police department. ███████████ was asked what ███ thought about the police department. ███ advised Mark that ███ has had dealings with the police on both sides of the law and said they are doing a great job and have always been professional.

03/17/22 @ 12:00 pm - Dave K. and ███████████ met with Steve. Received call from Steve who wanted to meet with me to speak about their meeting. Meeting with Steve this afternoon.

03/17/22 @ 1300 I met with Steve who advised me Dave K. brought ███████████ in and ███ and Dave talked to Steve about how the police department classified DV's as citizens assist calls. ██████████████████████████████ The training I have received ███████████ is SART training and I have 2 officers who have attend the weeklong training with SART team members. The PD has always attended training when ████ brings a trainer to town like

Exhibit A
Page 4 of 5

Exhibit H
Page 39 of 89

EXHIBIT A
Page 123 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 123 of 176

█████████ The last training ████ did for Petersburg PD was in October of 2019 just before Covid hit the country.

I researched the calls for service and only observed 6 calls that were reported as possible DV that we're labeled citizen assist. These calls were child custody, no evidence of a crime, civil issue and 1 that the caller thought the Protective order was still in effect but had been dropped.

When I sent out just the numbers and not the true annual report I stated at the end of the email if you have any questions or want further details to let me know. I didn't receive any inquiries.

█████████ Devren Bennett ████ is a member of the PSAB. This is someone Mark Testoni is talking to.

03/18/22 Meeting with █████ Debbie and myself where we talked about the meeting ████ had with Steve and Dave. This meeting did not appear to be what it sounded like it was with Dave and Steve. I was able to answer all ███ question and on the training topic I advised we would like training if it was here in Petersburg. We also talked about the lack of PD involvement in ███ emailed-out training. I advised █████ I still had the original employees who attended the SART training and like the instructor said in the past they would like to build on the original training, but the trainer kept having to repeat the original class due to turnover at the hospital.

03/21/22 █████ gave statement from a records request. Listen to assembly recording under items not related to the agenda for details.

Exhibit A
Page 5 of 5

Exhibit H
Page 40 of 89

EXHIBIT A
Page 124 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 124 of 176

James J. Davis, Jr., AK Bar No. 9412140
Goriune Dudukgian, AK Bar No. 0506051
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: jdavis@njp-law.com
Email: gdudukgian@njp-law.com

Filed in the ...... Courts
STATE OF ALASKA, FIRST DISTRICT
AT JUNEAU

NOV -3 2022

By_____ Deputy

Attorneys for Plaintiff

### IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

### FIRST JUDICIAL DISTRICT AT JUNEAU

JAMES KERR,                                )
                                           )
                  Plaintiff,               )
                                           )
vs.                                        )
                                           )
BOROUGH OF PETERSBURG,                     )
                                           )
                  Defendant.               )
_____)   Case No. 1JU-22-856 CI

### COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

COMES NOW the plaintiff, James Kerr, through counsel, alleging and

requesting relief as follows:

### FACTUAL ALLEGATIONS

1.     The Borough of Petersburg has rules and regulations that prohibit

any elected officials from getting involved in the performance or actions of any

Borough employees.[1]  This means, for example, that Borough Assembly members

---

[1] Charter Section 2.10; Code Section 3.08.050.

Exhibit B
Page 1 of 8

Exhibit H
Page 41 of 89

EXHIBIT A
Page 125 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 125 of 176

cannot interfere in the employee relationship of any Borough employee. The reason for this bright-line prohibition is simple: Borough employees are either covered by a collective bargaining agreement or an employment contract, and they have supervisors at their work that manage their work; Assembly members have no role in managing or disciplining or promoting Borough employees.

2.    James Kerr has dedicated a large part of his life at working and serving the Borough of Petersburg. He joined the police department back in 2013 and, through exemplary service and dedication, was made Chief of the department in July 2018.

3.    On November 17, 2021, Mr. Kerr addressed the Borough Assembly, explicitly as a private citizen. Mr. Kerr explained to the Borough his feelings about criminalizing community members and businesspeople who were non-compliant with the current Covid mask mandate and his feelings about how such criminalization would affect morale of law enforcement officers.

4.    Certain Assembly members, specifically, David Kensinger and Jeff Meucci, disagreed with Mr. Kerr's viewpoints. These Assembly members thereafter contacted Mr. Kerr's employer, i.e., the Borough, to complain about Mr. Kerr and to suggest discipline and or termination of Mr. Kerr. Meucci wrote to Mr. Kerr's supervisor on November 18, 2021 and demanded that Mr. Kerr appear before the Assembly and "publicly show the community the errors of his public testimony comments." Kensinger wrote to Mr. Kerr's supervisor and demanded that Mr. Kerr get "help" or be replaced.

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395 • Fax: (866) 813-8645

2

Exhibit B
Page 2 of 8

Exhibit H
Page 42 of 89

EXHIBIT A
Page 126 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 126 of 176

5.     Kensinger and Meucci continued with their efforts at interfering in Mr. Kerr's employment relationship, through various means and methods after November 17, 2021. On March 9, 2022, Meucci texted Mr. Kerr in Meucci's further efforts to undermine or intimidate Mr. Kerr. Mr. Kerr reported this misconduct to his supervisors at the Borough, including the Mayor, Borough Manager, and the City Clerk.

6.  On March 10, 2022, the City Clerk asked Mr. Kerr for a timeline of all of the misconduct by Kensinger and Jeff Meucci. Mr. Kerr provided a timeline to the City Clerk as requested.

7.     Shortly thereafter, the Borough informed Mr. Kerr that it was going to retain an independent investigator to look into the misconduct by Kensinger and Jeff Meucci.

8.     The Borough then retained its long-time law firm, Clayton and Diemer, to evaluate the misconduct by Kensinger and Jeff Meucci. Unbeknownst to Mr. Kerr, Clayton and Diemer were not independent investigators. Instead, Clayton and Diemer was a law firm that regular did work for the Borough and was not "independent" by any stretch of the imagination. Instead, Clayton and Diemer had a vested interest in making sure that any investigation they did not show any sort of misconduct on the part of the Borough or the powers that be, i.e., the Assembly.

9.     Clayton and Diemer conducted their "investigation," during which it met with Mr. Kerr. This was on April 6, 2022. During this meeting, Mr. Kerr

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Sreet, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395 • Fax: (866) 813-8645

3

Exhibit B
Page 3 of 8

Exhibit H
Page 43 of 89

EXHIBIT A
Page 127 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 127 of 176

shared with Clayton and Diemer his confidences and personal feelings. At this meeting, Clayton and Diemer told Mr. Kerr that it was evaluating and investigating Mr. Kerr's complaint of "harassment." But Mr. Kerr had never filed any complaint and has never claimed any sort of harassment.

10.    Because Clayton and Diemer seemed to completely misunderstand the nature of the issue at hand, Mr. Kerr wrote to them immediately after his April 6 meeting explain to them that he was not complaining about any sort of "harassment."

11.    In June 2022, Clayton and Diemer completed the report on their "independent investigation." On June 14, 2022, the Borough allowed Mr. Kerr to read this report but refused to provide him with a copy.

12.    On and after June 14, Mr. Kerr informed the Borough that the report was wholly erroneous: he had never complained about workplace "harassment" and the timeline that he had conveyed to the Borough was in no way his "complaint."

13.    On June 27, 2022, the Borough issued a press release to the media. In this press release, the Borough informed the media that Mr. Kerr had filed a "complaint in the form of a timeline." This was false and the Borough knew this was false. The Borough's press release went on to say that Mr. Kerr had complained about "harassment." This was false and the Borough knew this was false. The Borough's press release went on to say that it had commenced an investigation and the investigation by its "outside law firm" found that there was

4

Exhibit B
Page 4 of 8

Exhibit H
Page 44 of 89

EXHIBIT A
Page 128 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 128 of 176

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395 • Fax: (866) 813-8645

no merit to Mr. Kerr's "harassment" complaints. This logic epitomizes the idea that, if you ask the wrong question you will get the wrong answer: Mr. Kerr never claimed he was the victim of workplace "harassment."

14. As a direct result of the Borough's false and misleading press release, the media issued various stories and reports stating that Mr. Kerr had claimed he was the victim of workplace "harassment" and the Borough's "independent" investigator had concluded that the harassment claims were baseless. But the truth was quite different; Mr. Kerr had never claimed he was the victim of workplace "harassment" and the Borough's "independent" investigator was not at all independent.

15. The Borough's action have made Mr. Kerr look like a Chief of Police who makes baseless claims of workplace "harassment." These actions amount to both defamation and portraying Mr. Kerr in a false light.[2]

16. In September, Mr. Kerr contacted the Borough and asked it to remediate its defamatory and false light actions. The Borough completely ignored Mr. Kerr's request.

## JURISDICTION AND VENUE

17. This Court has jurisdiction under AS § 22.10.020(c) and (g).

18. Venue is proper in Juneau under AS § 22.10.030 and Civil Rule 3(c).

---

[2] *State v. Carpenter*, 171 P.3d 41, 53 (Alaska 2007) ("A false light invasion of privacy claim arises when the defendant publicizes a matter that places the plaintiff before the public in a false light.")

5

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395 • Fax: (866) 813-8645

Exhibit B
Page 5 of 8

Exhibit H
Page 45 of 89

EXHIBIT A
Page 129 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 129 of 176

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395 • Fax: (866) 813-8645

## PARTIES

19.    Plaintiff resides in Petersburg.

20.    The Borough manages and is responsible for the Petersburg Police Department.

## FIRST CAUSE OF ACTION — DEFAMATION

21.    The foregoing paragraphs of this Complaint are incorporated herein as though fully set forth.

22.    In acting in the aforesaid fashion, the Borough defamed Mr. Kerr. If he ever seeks future employment outside of Petersburg, the first thing a prospective employer will learn, from checking the internet, is that Mr. Kerr made claims of "workplace harassment" and that an "independent investigator" found those harassment to be baseless. But the truth is that Mr. Kerr never made claims of "workplace harassment" and the "independent investigator" was not independent.

23.    The Borough's actions were intentional and done with no regard to the truth.

24.    Tort damages, including actual, compensatory and consequential, are appropriate.

## SECOND CAUSE OF ACTION — FALSE LIGHT

25.    The foregoing paragraphs of this Complaint are incorporated herein as though fully set forth.

6

Exhibit B
Page 6 of 8

Exhibit H
Page 46 of 89

EXHIBIT A
Page 130 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 130 of 176

26. In acting in the aforesaid fashion, the Borough placed Mr. Kerr in a false light. Specifically, the Borough made it appear as that Mr. Kerr made claims of "workplace harassment," which he did not; that Mr. Kerr did not even understand, as the Chief of Police, what workplace harassment involves, which he does; and that an independent investigator looked into Mr. Kerr's claims and found them to be baseless, which never happened because Clayton and Diemer is the long-time law firm that regularly defends the Borough and they are not independent by any stretch of the imagination.

27. The Borough's actions were intentional and done with no regard to the truth.

28. Tort damages, including actual, compensatory and consequential, are appropriate.

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiff respectfully request that the Court grant:

(1) Injunctive relief against defendant requiring it to issue a correct and truthful press release;

(2) Actual, compensatory and consequential damages;

(3) The costs and expenses of litigation, including full attorney fees;

(4) All other relief as the Court deems necessary.

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395 • Fax: (866) 813-8645

7

Exhibit B
Page 7 of 8

Exhibit H
Page 47 of 89

EXHIBIT A
Page 131 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 131 of 176

DATED this _2nd_ day of _November_, 2022

NORTHERN JUSTICE PROJECT, LLC
Attorneys for Plaintiff

By: _____
    James J. Davis, Jr., AK Bar No. 9412140
    Goriune Dudukgian, AK Bar No. 0506051

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395 • Fax: (866) 813-8645

THIS MATTER IS FORMALLY
ASSIGNED TO
MARIANNA CARPENETI
SUPERIOR COURT JUDGE

8

Exhibit B
Page 8 of 8

Exhibit H
Page 48 of 89

EXHIBIT A
Page 132 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 132 of 176

Michael Gatti
Kendra E. Bowman
JERMAIN DUNNAGAN & OWENS, P.C.
3000 A Street, Suite 300
Anchorage, AK 99503
Telephone: (907) 563-8844
Fax: (907) 563-7322
Email: mgatti@jdolaw.com
        kbowman@jdolaw.com

*Attorneys for Defendant*

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

FIRST JUDICIAL DISTRICT AT JUNEAU

| | |
|---|---|
| JAMES KERR,<br><br>        Plaintiff,<br><br>v.<br><br>BOROUGH OF PETERSBURG,<br><br>        Defendant. | <br><br><br><br><br><br><br><br>Case No. 1JU-22-00856 CI |

**ANSWER TO COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

COMES NOW Defendant Petersburg Borough (the "Borough" or "Defendant"), by and through its counsel of record, Jermain, Dunnagan & Owens, P.C., and in answer to Plaintiff James Kerr's ("Chief Kerr" or "Plaintiff") Complaint for Injunctive Relief and Damages hereby admits, denies and alleges as follows:

**ANSWER TO FACTUAL ALLEGATIONS**

1.      Paragraph 1 of the Complaint states legal conclusions for which no response is necessary. To the extent a response is required, the allegations are denied.

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

{01333004}

Exhibit C
Page 1 of 8

Exhibit H
Page 49 of 89

EXHIBIT A
Page 133 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 133 of 176

2.      In regards to the allegations in Paragraph 2 of the Complaint, the Borough admits Chief Kerr joined the Petersburg Police Department in 2013, and became Police Chief in July 2018.  The remaining allegations in the paragraph are conclusory statements for which no response is required.  To the extent a response is necessary, the Borough is without sufficient knowledge and information to form a belief as to the truth of the allegations contained therein and therefore denies the same.

3.      In regards to the allegations in Paragraph 3 of the Complaint, the Borough admits Chief Kerr addressed the Borough Assembly on or about November 17, 2021.  The Borough denies the allegation that Chief Kerr addressed the Borough Assembly as a "private citizen."  The Borough is without sufficient knowledge and information to form a belief as to the truth of the remaining allegations contained therein and therefore denies the same.

4.      The allegations in Paragraph 4 of the Complaint sets forth Chief Kerr's characterization of documents, each such document speaks for itself and any characterization thereof is denied.  The remaining allegations in the paragraph are conclusory statements, for which no response is necessary.  To the extent a response is required, the allegations are denied.

5.      In regards to the allegations in Paragraph 5 of the Complaint, the first sentence contains allegations that are too vague and ambiguous to permit a response and are therefore denied.  Upon information and be1ief, the Borough admits that on or about March 9, 2022 Chief Kerr received a text message, which speaks for itself and any

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

[01333004]
**ANSWER TO COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**
*Kerr v. Borough of Petersburg*, 1JU-22-00856 CI                    Page 2 of 8

Exhibit C
Page 2 of 8

Exhibit H
Page 50 of 89

EXHIBIT A
Page 134 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 134 of 176

characterization thereof is denied. The Borough does not have sufficient information to admit or deny the remaining allegations, and therefore denies the same.

6. The allegations in Paragraph 6 of the Complaint are denied.

7. In regards to the allegations in Paragraph 7 of the Complaint, the Borough admits it promptly informed Chief Kerr that it would retain an attorney to legally evaluate his allegations of harassment. The remaining allegations in the paragraph are denied.

8. In regards to the allegations in Paragraph 8 of the Complaint, the Borough admits it retained the law firm of Clayton & Diemer, LLC to review and provide legal advice related to Chief Kerr's allegations of harassment. The remaining allegations in the paragraph are denied.

9. In regards to the allegations in Paragraph 9 of the Complaint, on information and belief the Borough admits Attorney Diemer interviewed Chief Kerr. The Borough denies the allegation that Chief Kerr did not file a complaint or claim harassment. The Borough does not have sufficient information to admit or deny the remaining allegations, and therefore denies the same.

10. The allegations in Paragraph 10 of the Complaint are denied.

11. In regards to the allegations in Paragraph 11 of the Complaint, the Borough admits Clayton & Diemer provided their legal opinion to the Borough in June 2022. The remaining allegations in the paragraph are denied.

12. The allegation in Paragraph 12 of the Complaint are denied.

[01333004]
**ANSWER TO COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**
*Kerr v. Borough of Petersburg*, 1JU-22-00856 CI                Page 3 of 8

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

13.     In regards to the allegations in Paragraph 13 of the Complaint, the Borough admits on June 27, 2022, it issued a press release in response to a public records request and in keeping with the balance of the public's right to know the actions of its public officials.  The press release is a document that speaks for itself and any characterization thereof is denied.  The remaining allegations in the paragraph are denied.

14.     The allegations in Paragraph 14 of the Complaint are denied.

15.     Paragraph 15 of the Complaint states legal conclusions for which no response is necessary.  To the extent a response is required, the allegations are denied.

16.     In regards to the allegations in Paragraph 16 of the Complaint, the Borough admits it received a demand letter, for which there was no response, but denies the remainder of the allegations.

### ANSWER TO JURISDICTION AND VENUE

17.     With regard to Paragraph 17 of the Complaint, the Borough admits that jurisdiction is proper in the Superior Court for the State of Alaska.

18.     With regard to Paragraph 18 of the Complaint, the Borough admits that venue is proper in the First Judicial District at Juneau, unless a change in venue becomes warranted.

### ANSWER TO PARTIES

19.     In regards to the allegations in Paragraph 19 of the Complaint, upon information and belief the allegation is admitted.

[013330004]
**ANSWER TO COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**
*Kerr v. Borough of Petersburg*, 1JU-22-00856 CI                    Page 4 of 8

Exhibit C
Page 4 of 8

Exhibit H
Page 52 of 89

EXHIBIT A
Page 136 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 136 of 176

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

20.    Paragraph 20 of the Complaint states a legal conclusion for which no response is necessary.  To the extent a response is required, the allegations are denied.

## ANSWER TO FIRST CAUSE OF ACTION-DEFAMATION

21.    The Borough realleges and incorporates by reference its answers in paragraphs 1-20 as though fully set forth herein.

22.    The allegations in Paragraph 22 of the Complaint are denied.

23.    The allegations in Paragraph 23 of the Complaint are denied.

24.    The allegations in Paragraph 24 of the Complaint are denied.

## ANSWER TO SECOND CAUSE OF ACTION – FALSE LIGHT

25.    The Borough realleges and incorporates by reference its answers in paragraphs 1-24 as though fully set forth herein.

26.    The allegations in Paragraph 26 of the Complaint are denied.

27.    The allegations in Paragraph 27 of the Complaint are denied.

28.    The allegations in Paragraph 28 of the Complaint are denied.

## PLAINTIFF'S PRAYER FOR RELIEF

The "Wherefore" clause contains Plaintiff's prayer for relief, to which no response is required.  To the extent a response is deemed required, the Borough denies that Plaintiff is entitled to the relief requested in Paragraphs 1-4 of the "Wherefore" clause, or any other relief for the claims alleged in the Complaint.

## AFFIRMATIVE DEFENSES

1.    The Complaint fails to state a claim upon which relief may be granted.

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

[01333004]
**ANSWER TO COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**
*Kerr v. Borough of Petersburg*, 1JU-22-00856 CI                      Page 5 of 8

Exhibit C
Page 5 of 8

Exhibit H                                        EXHIBIT A
Page 53 of 89                                    Page 137 of 351
Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 137 of 176

2.    Plaintiff's claims are protected by the absolute privilege of truth.

3.    Plaintiff's claims are barred by the doctrines of waiver, consent, and estoppel.

4.    Plaintiff's claims are precluded by the doctrines of absolute, qualified, discretionary, statutory, and/or common law immunity.

5.    The Borough is entitled to a presumption of privilege.

6.    The Borough's conduct is protected by the doctrine of absolute privilege.

7.    The Borough's conduct is protected by the doctrine of conditional privilege.

8.    The Borough's conduct is protected by the doctrine of qualified privilege.

9.    The Borough's conduct is protected by the public interest privilege.

10,    The Borough's allegedly defamatory publication was merely a statement of opinion.

11.    Plaintiff consented to the allegedly defamatory publication.

12.    The Borough's publication was prepared in good faith, without actual malice, and for the purpose of informing the public about matters of which the public had the right to be informed.

13.    Plaintiff is a public official, an all-purpose public figure, or a limited purpose public figure for purposes of defamation.

14.    Plaintiff has failed to show malice or reckless disregard for the truth or falsity of the alleged Borough actions.

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

[013330004]
**ANSWER TO COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**
*Kerr v. Borough of Petersburg*, 1JU-22-00856 CI                    Page 6 of 8

Exhibit C
Page 6 of 8

Exhibit H
Page 54 of 89

EXHIBIT A
Page 138 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 138 of 176

15.     Plaintiff waived his privacy rights, if any, in the information presented to the public.

16.     Some or all of Plaintiff's claims for relief are the proximate result of Plaintiff's own conduct.

17.     Some or all of Plaintiff's claimed damages, if any, were not appropriately mitigated by Plaintiff.

18.     Some or all of Plaintiff's claimed damages, if any, are the proximate result of actions on the part of people or entities for which the Borough is not responsible.

19.     The Borough's conduct was authorized by law.

20.     Plaintiff's claims are barred by the doctrine of unclean hands.

21.     Plaintiff's claims are barred by the doctrine of laches.

22.     All defenses available to respond to a claim of defamation are specifically reserved and will be asserted as are factually appropriate.

23.     The Borough reserves the right to add such other and further defenses as may be determined to be applicable during the course of this litigation.

WHEREFORE, having answered the Plaintiff's Complaint, Defendant prays that Plaintiff's Complaint be dismissed with prejudice; that Plaintiff takes nothing from Defendant; that Defendant be awarded their costs and attorney's fees incurred in defending this action; and for such other and further relief as this court deems just and equitable.

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

[013330004]
**ANSWER TO COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**
*Kerr v. Borough of Petersburg*, 1JU-22-00856 CI                    Page 7 of 8

Exhibit C
Page 7 of 8

Exhibit H
Page 55 of 89

EXHIBIT A
Page 139 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 139 of 176

DATED this 5th day of December, 2022, at Anchorage, Alaska.

JERMAIN, DUNNAGAN & OWENS, P.C.
Attorneys for Defendant

By: /s/ *Michael Gatti*
    Michael Gatti, ABA # 8306033
    Kendra E. Bowman, ABA # 0511109

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that a true and correct
copy of the foregoing was served by
( ) mail ( ) hand ( ) fax (X) email
on December 5, 2022, to:

James J. Davis, Jr.
Goriune Dudukgian
North Justice Project, LLC
406 G. Street, Suite 207
Anchorage, AK 99501
jdavis@njp-law.com
gdudukgian@njp-law.com

/s/ *Anita Rustad*
Jermain, Dunnagan & Owens, PC

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

[01333004]
**ANSWER TO COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**
*Kerr v. Borough of Petersburg*, 1JU-22-00856 CI           Page 8 of 8

Exhibit C
Page 8 of 8

Exhibit H
Page 56 of 89

EXHIBIT A
Page 140 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 140 of 176



# Petersburg Borough

## Employee Policy Manual



Effective
May 1, 2019

Exhibit D
Page 1 of 8

# Anti-Discrimination & Harassment

## Americans w/ Disabilities Act

It is Borough policy that we will not discriminate against qualified individuals with disabilities with regard to any aspect of their employment. The Borough is committed to complying with the Americans with Disabilities Act of 1990, its related Section 504 of the Rehabilitation Act of 1973, and with the ADA Amendments Act of 2008, as applicable. The Borough recognizes that some individuals with disabilities may require accommodations at work. If you are currently disabled or become disabled during your employment, you should contact your department manager to discuss reasonable accommodations that may enable you to perform the essential functions of your job. We are not required to provide an accommodation that could cause the Borough an undue hardship as defined by law.

The Americans with Disabilities Act defines "disability" as: (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. "Major life activities" include caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

In accordance with the Americans with Disabilities Act, employees with AIDS will be treated like any other ill employee. If the individual is fit to work, he or she will be provided with work in accordance with normal procedures. Usually, no special precautions in the workplace are indicated. However, employees with AIDS may request reasonable accommodation by contacting the human resources/clerk's office. We are committed to safeguarding the health of all employees and maintaining productivity.

## Equal Employment Opportunity Policy

Petersburg Borough provides equal opportunity in all of our employment practices to all qualified employees and applicants without regard to race, color, religion, gender, national origin, age, disability, marital status, military status, genetic information or any other category protected by federal, state and local laws. This policy applies to all aspects of the employment relationship, including recruitment, hiring, compensation, promotion, transfer, disciplinary action, layoff, return from layoff, training and social, and recreational programs. All such employment decisions will be made without unlawfully discriminating on any prohibited basis.

*Petersburg Borough Employee Policy Manual*                                    page 2

Exhibit D
Page 2 of 8

Exhibit H
Page 58 of 89

EXHIBIT A
Page 142 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 142 of 176

# Languages Spoken at Work

Every employee is expected to treat others with respect in all aspects of their working relationships. Employees are prohibited from making offensive remarks or gestures toward fellow employees or visitors to the Borough who are not fluent in English. In turn, we urge employees not to use their fluency in another language in any way to humiliate or offend your fellow employees or visitors to our community.

# Policy Prohibiting Harassment and Discrimination

Petersburg Borough strives to maintain an environment free from discrimination and harassment, where employees treat each other with respect, dignity and courtesy.

This policy applies to all phases of employment, including but not limited to recruiting, testing, hiring, promoting, demoting, transferring, laying off, terminating, paying, granting benefits, training and volunteering.

## <u>Prohibited Behavior</u>

Petersburg Borough does not and will not tolerate any type of discrimination or harassment of our employees, applicants for employment, or our residents and business owners of our community. Discriminatory conduct or conduct characterized as harassment as defined below is prohibited.

The term harassment includes, but is not limited to, slurs, jokes, and other verbal or physical conduct relating to a person's gender, race, color, religion, national origin, age, disability, military status, genetic information, marital status, changes in marital status, parenthood (including pregnancy), or any other protected category under federal, state or local law, that unreasonably interferes with a person's work performance or creates an intimidating, hostile work environment.

**"Genetic information" includes:**

- Information about an individual's genetic tests;

- Information about the genetic tests of a family member;

- Family medical history;

- Requests for, and receipt of, genetic services by an individual or a family member; and

Petersburg Borough Employee Policy Manual                                    page 3

Exhibit D
Page 3 of 8

Exhibit H                                                                          EXHIBIT A
Page 59 of 89                                                                 Page 143 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 143 of 176

- Genetic information about a fetus carried by an individual or family member, or about an embryo legally held by the individual or family member using assisted reproductive technology.

Sexually harassing behavior in particular includes unwelcome conduct such as: sexual advances, requests for sexual favors, offensive touching, or other verbal or physical conduct of a sexual nature. Such conduct may constitute sexual harassment when it:

- is made an explicit or implicit condition of employment;

- is used as the basis for employment decisions;

- unreasonably interferes with an individual's work performance; or

- creates an intimidating, hostile or offensive working environment.

The types of conduct covered by this policy include: demands or subtle pressure for sexual favors accompanied by a promise of favorable job treatment or a threat concerning employment.

Specifically, it includes sexual behavior such as:

- repeated sexual flirtations, advances or propositions;

- continued and repeated verbal abuse of a sexual nature, sexually related

- comments and joking, graphic or degrading comments about an employee's appearance or displaying sexually suggestive objects or pictures including cartoons and vulgar e-mail messages; and

- any uninvited physical contact or touching, such as patting, pinching or repeated brushing against another's body.

Such conduct may constitute sexual harassment, regardless of gender and regardless of whether the conduct is between members of the assembly or management, between management and staff employees, between staff employees, or between employees and non-employees are in the scope of their employment.

## **Harassment by Nonemployees**

The Borough will also endeavor to protect employees, to the extent possible, from reported harassment by nonemployees in the workplace, including customers and suppliers.

Petersburg Borough Employee Policy Manual                                    page 4

Exhibit D
Page 4 of 8

Exhibit H                                                                        EXHIBIT A
Page 60 of 89                                                               Page 144 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 144 of 176

## Complaint Procedure and Investigation

Any employee who wishes to report a possible incident of sexual harassment or other unlawful harassment or discrimination should promptly report the matter to their immediate supervisor. If that person is not available, or you believe it would be inappropriate to contact that person, contact the Human Resources/Clerk's office.

The Borough will conduct a prompt investigation as confidentially as possible under the circumstances.

Employees who raise concerns and make reports in good faith can do so without fear of reprisal; at the same time, employees have an obligation to cooperate with the Borough in enforcing this policy and investigating and remedying complaints.

Anyone found to have engaged in such wrongful behavior will be subject to appropriate discipline, which may include termination.

## Retaliation

Any employee who files a complaint of harassment or other discrimination in good faith will not be adversely affected in terms and conditions of employment and will not be retaliated against or discharged because of the complaint.

In addition, the Borough will not tolerate retaliation against any employee who, in good faith, cooperates in the investigation of a complaint. Anyone who engages in such retaliatory behavior will be subject to appropriate discipline, up to and including termination.

# Communicable Diseases

Borough decisions involving persons who have communicable diseases will be based on current and well-informed medical judgments concerning the disease, the risks of transmitting the illness to others, the symptoms and special circumstances of each individual who has a communicable disease, and a careful weighing of the identified risks and the available alternatives for responding to an employee with a communicable disease.

Communicable diseases include, but are not limited to, measles, influenza, viral hepatitis-A (infectious hepatitis), viral hepatitis-B (serum hepatitis), human immunodeficiency virus (HIV infection), AIDS, AIDS-Related Complex (ARC), leprosy, Severe Acute Respiratory Syndrome (SARS) and tuberculosis. The Borough may choose to broaden what it considers to be a communicable disease

Petersburg Borough Employee Policy Manual                                page 5

Exhibit D
Page 5 of 8

Exhibit H                                                              EXHIBIT A
Page 61 of 89                                                      Page 145 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 145 of 176

circumstances may also be taken against supervisors or others who fail to report a violation or withhold relevant information concerning a violation of this policy.

## Political/Campaign Activities

Employees are encouraged to participate in the electoral process and support the political candidates of their choice.

Employees are free to engage in political activity associated with the borough, state and federal campaigns, but must do so on their own time, with their own resources and without giving the impression that their activity is being endorsed by the Borough. This is because it's important that Borough operations and deliberations are impartial and that the Borough makes efforts to eliminate improper influence.

Except as authorized by law, while on work time an employee may not publicly support any candidate for office, circulate any petitions for such office, distribute campaign literature or display campaign buttons, placards and so on. In addition, employees are expected to refrain from efforts to convert others to a political cause during working hours.

Employees who choose to run for political office must do so on their own time and the Borough's premises cannot be used for political campaigning unless said purposes are determined to be a public forum. If an employee wishes to be a candidate for Petersburg Borough Assembly, they must submit a request for a leave of absence commencing on the date of the candidate filing and ending on the day following the election. If elected to the Borough Assembly, the employee will be deemed to have resigned from their employment position with the Borough.

## Non-Business or Social Visits to the Worksite

While personal visits are not prohibited, their frequency and duration should be limited and should not interfere with on-going work nor distract fellow employees. The employee shall be responsible for the acts of their visitors in the workplace.

## Workplace Bullying

The Borough is committed to providing our employees with a healthy and safe work environment that is free from bullying.

Bullying is repeated unreasonable behavior directed toward an employee, or group

Petersburg Borough Employee Policy Manual                                    page 15

Exhibit D
Page 6 of 8

Exhibit H                                                                    EXHIBIT A
Page 62 of 89                                                          Page 146 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 146 of 176

of employees, that creates a risk to health and safety. Examples of bullying include:

- Verbal abuse and yelling
- Humiliating someone through sarcasm, criticism or insults
- Constant criticism
- Exclusion of a person from workplace activities
- Giving someone the majority of unpleasant tasks

The Borough expects all employees to behave in a professional manner and to treat each other with dignity and respect.

We encourage all employees who experience bullying to report it.

Any reports of bullying will be treated seriously and investigated promptly, confidentially and impartially.

## Open Door

Communication is a two-way street. The Borough has an open-door policy whereby any employee can speak to any elected official, manager, or supervisor on any matter. Our leaders are dedicated to being available and attentively listening to employees. The bottom line is, we can't implement change(s) if we are unaware of the need for change(s). This provision for an open-door policy does not nullify the Borough Charter prohibitions as expressed in Section 2.10 (B). That portion of the Charter prohibits assembly members from recommending or directing the appointment or removal of any officer or employee. The Charter section also prohibits employees from reporting to, or receiving direction from, assembly members.

## Grievances

The Borough recognizes that a peaceful working environment facilitates productivity, and will continue to take the necessary steps to create a harmonious working environment. In the event that a misunderstanding or conflict arises, every effort should be made to resolve the situation in a timely manner. Should the situation persist, you are encouraged to bring the complaint to the attention of management by following the procedures outlined below:

1. Discuss the situation with your immediate supervisor. If this is not sufficient or appropriate, then proceed to step 2.

Petersburg Borough Employee Policy Manual                                    page 16

Exhibit D
Page 7 of 8

Exhibit H                                                                    EXHIBIT A
Page 63 of 89                                                        Page 147 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 147 of 176

2.      Meet with a senior department manager or the Borough Clerk or Deputy Clerk who may proceed to conduct an investigation into the situation and find possible remedies. You should receive a response within a reasonable period of time. The Borough will attempt to respond and/or resolve the situation within 14 days, or sooner as the circumstances warrant. If this does not suffice then you are encouraged to meet with the Borough Manager.

3.      Should the Manager be the subject of the grievance then the Borough Attorney may be notified by the Borough Clerk or Deputy Clerk.

*Note #1: Complaints alleging violations of the Borough's discrimination/harassment policy should be handled in accordance with the policy entitled "Policy Prohibiting Harassment and Discrimination."*

*Note #2: Employees that are represented by a Union should use the grievance procedure outlined in the written collective bargaining agreement.*

## Progressive Discipline

Petersburg Borough retains the discretion to discipline its employees. Oral and written warnings and progressive discipline up to and including discharge may be administered as appropriate under the circumstances.

Please note that the Borough reserves the right to terminate any employee whose conduct merits immediate dismissal without resorting to any aspect of the progressive discipline process, subject to any employee rights to a pre-termination hearing, as addressed in the General Employment section of this manual.

## Use of Borough Cell Phones While Driving

This policy applies to: (1) the operation of borough-provided vehicles at any time; and (2) the operation of private vehicles while an employee is on work time or conducting business for the Borough.

The use of a cell phone while driving may present a hazard to the driver, other employees and the general public. Employees should not use hand held cell phones for business purposes while driving. Should an employee need to make a business call while driving, he/she should locate a lawfully designated area to park and make the call.

Violation of this policy may subject an employee to disciplinary action up to and including immediate termination.

Petersburg Borough Employee Policy Manual                                    page 17

Exhibit D
Page 8 of 8

Exhibit H                                                                    EXHIBIT A
Page 64 of 89                                                          Page 148 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 148 of 176

# Becky Regula

| | |
|---|---|
| **From:** | Stephen Giesbrecht |
| **Sent:** | Monday, June 27, 2022 10:07 AM |
| **To:** | joe viehnicki |
| **Cc:** | Becky Regula |
| **Subject:** | Public Information Request |
| **Attachments:** | SH1-5_Redacted.pdf |

Joe, in response to your information request, the following statement and attachment are provided.

The Borough's HR Department received a complaint, in the form of a timeline, from Chief Jim Kerr, alleging that he was the subject of harassment from Assembly Members Jeff Meucci and Dave Kensinger. Pursuant to your Public Records Act request, the timeline is attached. While this timeline mentions another Assembly Member, and a few members of another elected Borough Board, Chief Kerr stated his complaint was only being lodged against Assembly Members Meucci and Kensinger. As you will note, some language has been redacted from this document, specifically references to those who are not borough employees involved in this matter or elected borough officials.

Chief Kerr claimed the primary impetus behind the alleged harassment was a statement he made to the Assembly on November 17, 2021 regarding the Borough's public health and safety measure requiring face covering in public settings, a statement which he believed was protected by the First Amendment of the U.S. Constitution. The Borough commenced an investigation, conducted by an outside attorney working with the Borough Attorney. This attorney found harassment had not occurred. In brief, (1) the Chief's November 17, 2021 statement was not protected by either the First Amendment of the U.S. Constitution or by the State Constitution, and (2) the conduct which Chief Kerr objected to did not meet any legal definition of harassment. Assembly Members have the authority and right, under PMC 3.08.040C, to ask questions and request documents, both during and outside of Assembly meetings, regarding issues impacting the Borough, and the inquiries made here involved important police department matters, including hiring processes and domestic violence calls. In short, there was no unlawful harassment or bullying.

The Borough took the allegations seriously, as it is required to do, conducted a thorough investigation, and considers the investigation concluded. The parties involved are working together to restore trust and confidence, to better serve the community of Petersburg.

Exhbiit E
Page 1 of 1

Exhibit H
Page 65 of 89

EXHIBIT A
Page 149 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 149 of 176

Michael Gatti
Kendra E. Bowman
JERMAIN DUNNAGAN & OWENS, P.C.
3000 A Street, Suite 300
Anchorage, AK 99503
Telephone: (907) 563-8844
Email: mgatti@jdolaw.com
      kbowman@jdolaw.com

*Attorneys for Defendants*

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

FIRST JUDICIAL DISTRICT AT PETERSBURG

| | |
|---|---|
| DON KOENIGS,<br><br>        Plaintiff,<br><br>v.<br><br>PETERSBURG BOROUGH and DEBRA THOMPSON, BOROUGH CLERK, in her official capacity,<br><br>        Defendants. | Case No. 1PE-22-00046 CI |

**DEFENDANT PETERSBURG BOROUGH'S RESPONSES TO PLAINTIFF'S FIRST SET OF DISCOVERY REQUESTS**

    Petersburg Borough ("Petersburg"), by and through its attorney, respond to Plaintiff's First Set of Discovery Requests as follows:

**PRELIMINARY STATEMENT**

    1.    The responses and objections supplied herein are for use in this action and for no other purpose and are applied subject to that limitation.

    2.    Petersburg's responses and objections shall not be deemed to constitute an admission: (1) that any particular document or thing exists, is relevant, non-privileged, or

{01337621}

Exhibit F
Page 1 of 9

Exhibit H
Page 66 of 89

EXHIBIT A
Page 150 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 150 of 176

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

admissible in evidence, or (2) that any statement or characterization in the Interrogatories and Requests is accurate or complete.

3.      Petersburg objects to each instruction, definition, document request, and interrogatory to the extent that it seeks documents protected from disclosure by the Alaska Public Records Act exclusions, attorney-client privilege, deliberative process privilege, common interest privilege, executive privilege, attorney work product doctrine, seeks information protected by a right to privacy under municipal, state, or federal law, or any other applicable privilege.   Should any such disclosure by Petersburg occur, it is inadvertent and shall not constitute a waiver of any privilege.

4.      Petersburg objects to the interrogatories and discovery requests to the extent they are not relevant to any party's claim or defense nor proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the interrogatories and requests in resolving the issues.

5.      Petersburg's responses are based upon reasonable review and diligent investigation to date.   Petersburg reserves the right at any time to revise, supplement, correct, or clarify any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

6.      Petersburg's responses and objections are submitted without prejudice to Petersburg's right to produce evidence of any subsequently discovered fact. Petersburg

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

{01337621}
**DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF DISCOVERY REQUESTS**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI                    Page 2 of 9

Exhibit F
Page 2 of 9

Exhibit H
Page 67 of 89

EXHIBIT A
Page 151 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 151 of 176

accordingly reserves its right to provide further responses and objections as additional facts are ascertained.

       7.     Publicly available documents or documents equally accessible to Plaintiff including, but not limited to, newspaper clippings, court papers, and documents available on the Internet, will not be produced.

       8.     Petersburg is not responding to Plaintiff's prematurely served Requests in accordance with Alaska R. Civ. P. 26(d)(1).

**<u>INTERROGATORIES</u>**

<u>INTERROGATORY NO. 1:</u>  Please state with specificity each individual who was provided a copy of the investigative report.

<u>RESPONSE:</u>  Petersburg objects to the characterization of the legal opinion of Clayton & Diemer as an "investigative report."  Petersburg further objects that the request is overbroad as it goes beyond the scope of Plaintiff's Alaska Public Records Act ("APRA") request, is not relevant nor likely to lead to the discovery of admissible evidence, the request is vague and ambiguous as to "provided a copy," seeks information subject to the attorney client privilege, common interest privilege, and protected by state and federal privacy laws.  Without waiving the foregoing, Steve Giesbrecht, Borough Manager and Debra Thompson, Human Resource Director and Borough Clerk.

<u>INTERROGATORY NO. 2:</u>  Please identify any person who was permitted to view the report, even if they were not provided a copy.

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

{01337621}
**DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF DISCOVERY REQUESTS**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI           Page 3 of 9

Exhibit F
Page 3 of 9

Exhibit H
Page 68 of 89

EXHIBIT A
Page 152 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 152 of 176

RESPONSE: Petersburg objects to the characterization of the legal opinion of Clayton & Diemer as a "report." Petersburg further objects that the request is overbroad as it goes beyond the scope of Plaintiff's APRA request, is not relevant nor likely to lead to the discovery of admissible evidence, is vague and ambiguous as to "permitted to view," subject to the attorney client privilege and common interest privilege, and protected by state and federal privacy laws. Without waiving the foregoing, Steve Giesbrecht, Borough Manager; Debra Thompson, Human Resource Director and Borough Clerk; David Kensinger, Assembly Member and complainee of harassment complaint by Jim Kerr; Jeff Meucci, Assembly Member and complainee of harassment complaint by Jim Kerr; Jim Kerr, Borough Police Chief and complainant of harassment by Assembly Members Kensinger and Muecci; Caitlin Shortell, Attorney at Law.

INTERROGATORY NO. 3: For each person identified in response to Interrogatory No. 1 or 2, please provide their title and/or capacity in which they were acting when they were provided with a copy of the report or viewed the report.

RESPONSE: Petersburg objects to the characterization of the legal opinion of Clayton & Diemer as a "report." Petersburg further objects that the request is overbroad as it goes beyond the scope of Plaintiff's APRA request, is not relevant nor likely to lead to the discovery of admissible evidence, is vague and ambiguous as to "permitted to view" and "and/or capacity," seeks information subject to the attorney client privilege and common interest privilege, and protected by state and federal privacy laws. Without waiving the foregoing, see Response to Interrogatory No. 2.

{01337621}
**DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF DISCOVERY REQUESTS**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI          Page 4 of 9

Exhibit F
Page 4 of 9

Exhibit H
Page 69 of 89

EXHIBIT A
Page 153 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 153 of 176

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

INTERROGATORY NO. 4:  Please identify each individual who attended a meeting with the Borough Attorney, or outside counsel, to discuss the findings and recommendations of the investigative report, whether in person or telephonically.

RESPONSE:  Petersburg objects to the characterization of the legal opinion of Clayton & Diemer as an "investigative report."  Petersburg further objects that the request is overbroad as it goes beyond the scope of Plaintiff's APRA request, is not relevant nor likely to lead to the discovery of admissible evidence, the term "to discuss the findings and recommendations of the investigative report" is vague and ambiguous, and it is overbroad because there is no date or time limit.  The request also seeks information that is covered by the attorney client privilege and common interest privilege and is therefore not subject to disclosure.

INTERROGATORY NO. 5:  For each person identified in response to Interrogatory No. 4, please provide their title and/or the capacity in which they were acting when they discussed the findings of the report.

RESPONSE: *See* Response to Interrogatory No. 4.

INTERROGATORY NO. 6:  If the investigative report was transmitted by e-mail, please state the name of the recipient.

RESPONSE:  *See* Response to Interrogatory No. 1.

INTERROGATORY NO. 7:  Please identify the specific privilege or rationale for each redaction in the document title "Timeline/Overview of Events" provided to Mr. Koenigs in response to his July 22, 2022 public records request.

{01337621}
**DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF DISCOVERY REQUESTS**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI                    Page 5 of 9

Exhibit F
Page 5 of 9

Exhibit H
Page 70 of 89

EXHIBIT A
Page 154 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 154 of 176

RESPONSE:  Petersburg objects that this request is overbroad as it goes beyond the scope of Plaintiff's APRA request, seeks information that is not relevant nor likely to lead to the discovery of admissible evidence, and seeks information covered by the right to privacy under state and federal law, the attorney client privilege, and the common interest privilege.  Without waiving the foregoing, a privilege log will be provided with Petersburg's initial disclosures.

INTERROGATORY NO. 8:  Please state the total amount of attorney's fees spent on evaluation and investigation of the Complaint made by Chief Kerr, whether paid to the Borough Attorney or outside counsel.  Please provide the total for each law office.

RESPONSE:   Petersburg objects that this request is overbroad as it goes beyond the scope of Plaintiff's APRA request, seeks information that is not relevant nor likely to lead to the discovery of admissible evidence, and is overbroad because the information sought is not limited by date or timeframe.

INTERROGATORY NO. 9:  Please identify each document that is responsive to Mr. Koenig's July 22, 2022 public records request.  If any document contains attachments or exhibits, please describe each attachment or exhibit individually.

RESPONSE: Petersburg objects that the July 22, 2022 public records request failed to identify the specific records sought with reasonable clarity, making this request vague, ambiguous, overbroad, and unduly burdensome.  Petersburg further objects that this request is premature as initial disclosures have not been exchanged.  Without waiving the

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

{01337621}
**DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF DISCOVERY REQUESTS**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI                    Page 6 of 9

Exhibit F
Page 6 of 9

Exhibit H
Page 71 of 89

EXHIBIT A
Page 155 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 155 of 176

foregoing, Petersburg will produce its initial disclosures and privilege log in accordance with the Pretrial Scheduling Order.

INTERROGATORY NO. 10:  Please describe specifically what role, if any, the Borough Human Resources Director played in the investigation of Chief Kerr's Complaint.

RESPONSE:  Petersburg objects that the request is overbroad as it goes beyond the scope of Plaintiff's APRA request, seeks information that is not relevant nor likely to lead to the discovery of admissible evidence, and is vague and ambiguous as to what is meant by the term "role."  Without waiving the foregoing, as the Human Resource Director Ms. Thompson received the harassment complaint lodged by Police Chief Jim Kerr, processed the harassment complaint as a workplace investigation, and properly followed standard human resource duties.

Dated this 9th day of January, 2023 at Anchorage, Alaska.

JERMAIN DUNNAGAN & OWENS, P.C.
Attorneys for Defendants


By:  s/*Michael Gatti*/
Michael Gatti
ABA #8306033
Kendra E. Bowman
ABA #0511109

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

(01337621)
**DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF DISCOVERY REQUESTS**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI                    Page 7 of 9

Exhibit F
Page 7 of 9

Exhibit H
Page 72 of 89

EXHIBIT A
Page 156 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 156 of 176

**CERTIFICATE OF SERVICE**

This is to certify that a true and
correct copy of the foregoing was
served by (x)email ( )mail ( )hand
( ) fax this 9 January 2023, to:

Samuel C. Severin
Chandler, Falconer, Munson & Cacciola, LLP
911 W. 8th Ave., Suite 302
Anchorage, AK 99501
sseverin@bcfaklaw.com


s/*Sherry Sims*
Sherry Sims

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

{01337621}
**DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF DISCOVERY REQUESTS**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI          Page 8 of 9

# VERIFICATION

STATE OF ALASKA                )
                               ) ss.
FIRST JUDICIAL DISTRICT        )

I, Debra K. Thompson, being first duly sworn, upon oath, deposes and states I am the Borough Clerk/Human Resources Director for the Petersburg Borough. I have read the foregoing interrogatories and responses thereto and know the contents thereof. I hereby verify the responses contained therein are complete, true, and correct.

DATED this _9th_ day of January, 2023.

By: _Debra K Thomps_
Its: _Borough Clerk / HR Director_

SUBSCRIBED AND SWORN TO before me this ___ day of January, 2023.

STATE OF ALASKA
OFFICIAL SEAL
Shannon McCullough
NOTARY PUBLIC
My Commission Expires 01/18/2026

Notary Public in and for Alaska
My Commission Expires: _1/18/26_

LAW OFFICES OF
JERMAIN DUNNAGAN & OWENS
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

(01337621)
**DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF DISCOVERY REQUESTS**
*Koenigs v. Petersburg Borough, et al.*, Case No. 1PE-22-00046CI                Page 9 of 9

Exhibit F
Page 9 of 9

Exhibit H
Page 74 of 89

EXHIBIT A
Page 158 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 158 of 176



# PETERSBURG
### A L A S K A

## PUBLIC RECORDS REQUEST FORM

Requestor Name: _____Joe Viechnicki, news director, KFSK-FM_____

Phone: _____907-772-3808_____ Fax: _____ Email: _____joe@kfsk.org_____

Mailing Address: _____Box 1204, Petersburg, Alaska 99833_____

Title of Record(s):_____PPD police chief James Kerr complaint against Jeff Meucci or any other assembly member_____

Date of Record(s):_____01/01/22-present_____

Description of Record(s): Please provide any additional information that will assist us in locating the record(s) for you as quickly as possible.

_____

_____Any complaint filed by the chief of police against any member of the Petersburg borough assembly filed this year_____

_____

_____

### Certificate of Non-Litigation Affiliation

I hereby certify that:

(1)     I am not involved in litigation, in a judicial or administrative forum, with the Petersburg Borough or another public agency to which the requested record is relevant; and
(2)     I am not acting on behalf of or otherwise representing any person who is involved in litigation with the Petersburg Borough or another public agency to which the requested record is relevant.

**Borough Administration**
PO Box 329, Petersburg, AK 99833 – Phone (907) 772-4425 Fax (907)772-3759
**www.ci.petersburg.ak.us**

Exhibit G
Page 1 of 3
Exhibit H
Page 75 of 89

Petersburg 001832

EXHIBIT A
Page 159 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 159 of 176

Requestor's   Signature: ___

___6/20/22_____                      Date:

 

 

**Please Note: This form must be completed and returned to the Petersburg Borough Clerk's Office for processing.**

 

 

**FOR OFFICE USE ONLY**

- Photocopies                  $  .25 per page + tax                          $_____
- Assembly Packets         $10.00 each packet + tax                   $_____
- Audio Copy                    $10.00 each + tax                            $_____
- Video Copy                    $25.00 each + tax                            $_____
- Mylar Copies of Plats     $20.00 per Mylar copy + tax             $_____
- Certified Copies             $  1.25 first page, .25 each additional page   $_____
- Copy of Budget              $25.00 each + tax                            $_____
- Other _____   Price to be determined                     $_____
- The salary of employee(s)   $_____ labor x _____ hours + tax   $_____
  (hourly rate plus benefits) filling a request, when retrieval and duplication of the documents requested generate labor in excess of one hour.

                                         Tax            $_____

                             Total Charges $_____

Date Request Received: _____

Completed by or referred to (check a box below):_____

       Request for Record(s) Copy(ies) total $_____ was received on _____ and provided or mailed/emailed on _____.

       Record(s) or Information is exempt from disclosure and public access is denied and the requestor was notified on _____.

       Record(s) or Information cannot be located and the requestor was notified on _____.

       Record(s) or Information available online at www.petersburgak.gov.

**Borough Administration**
PO Box 329, Petersburg, AK  99833 – Phone (907) 772-4425 Fax (907)772-3759
**www.ci.petersburg.ak.us**

Exhibit G
Page 2 of 3
Exhibit H
Page 76 of 89

Petersburg 001833

EXHIBIT A
Page 160 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 160 of 176

The departments that have a check mark have been copied to assist in filling this records request:

Administration
Finance
Community Development
Electric
Fire
Library
Harbor
Mountain View Manor
Parks & Recreation
Police
Public Works
Attorney

**Borough Administration**
PO Box 329, Petersburg, AK 99833 – Phone (907) 772-4425 Fax (907)772-3759
**www.ci.petersburg.ak.us**

Exhibit G
Page 3 of 3
Exhibit H
Page 77 of 89

Petersburg 001834

EXHIBIT A
Page 161 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 161 of 176



RECEIVED
JUL 2 1 2022
PETERSBURG BOROUGH

## PUBLIC RECORDS REQUEST FORM

Requestor Name: _Don Koenig's_

Phone: _907-518-1993_  Fax: _N.A._  Email: _donknigs@gci.net_

Mailing Address: _P.O. Box 674_

Title of Record(s): _As listed in the attached request for information letter._

Date of Record(s): _1.1.2021 to present._

Description of Record(s): Please provide any additional information that will assist us in locating the record(s) for you as quickly as possible.

_Refer to attached letter for specifics._

### Certificate of Non-Litigation Affiliation

I hereby certify that:

(1)    I am not involved in litigation, in a judicial or administrative forum, with the Petersburg Borough or another public agency to which the requested record is relevant; and

(2)    I am not acting on behalf of or otherwise representing any person who is involved in litigation with the Petersburg Borough or another public agency to which the requested record is relevant.

Requestor's Signature: _Don Koenig_  Date: _7/21/22_

_Note: Check # 6076 for $500 submitted with request._

**Please Note: This form must be completed and returned to the Petersburg Borough Clerk's Office for processing.**

**Borough Administration**
PO Box 329, Petersburg, AK 99833 – Phone (907) 772-4425 Fax (907)772-3759
www.ci.petersburg.ak.us
Exhibit H
Page 1 of 4

Exhibit H
Page 78 of 89

EXHIBIT A
Page 162 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 162 of 176

RECEIVED
JUL 2 2 2022
PETERSBURG BOROUGH

Mr. Don Koenigs
P.O. Box 674
Petersburg, AK 99833

July 22, 2022

Ms. Deborah Thompson
Petersburg Borough Clerk
Petersburg Borough Assembly & Administration
P.O. Box 329
Petersburg, AK 99833

Dear Ms. Thompson:

Under the Alaska Open Records Law, A.S. Code Sec. 40.25.110 et seq., I am requesting copies of public records that meet the following description:

- *A copy of the complaint filed this year by Chief James Kerr against the Borough of Petersburg or any members of its governing leadership and any statements (as that noted in the June 30, 2022, issue of the Peterburg Pilot) issued by the Borough regarding the complaint filed.*
- *Any public records to include any texts, emails, or written or recorded records or correspondence that mention the recent complaint filed by Chief James Kerr, including any texts, emails, or written or recorded records or correspondence from the borough attorney which include any employee or person not protected under* **Borough Code of Ordinances, Section 2.12 – Borough Attorney. There shall be a borough attorney appointed by the assembly who shall serve at the pleasure of the assembly. The <u>borough attorney</u> shall advise <u>the borough assembly, manager or clerk</u> concerning legal issues affecting the borough. The assembly may suspend or remove the borough attorney at any time by vote of the assembly."** *(Underline added.) And according to the instruction of Alaskan case law that any additional persons on the communication (or a part of the communication) breaks the privilege of that communication (or the part).*
- *Any documents or public records which were either discussed, presented, reviewed, or used as evidence during any recent investigation, review, determination, or judgment of the complaint.*
- *Correspondence to include all communications whether on borough databases, in borough files, borough devices or media platforms, including all personal devices used by members of the Assembly or Administration to conduct borough business.*
- *I am requesting that you direct this request to your IT Staff, consult any IT Backup Records and coordinate any records. We find that asking involved parties to individually fulfill a request served on the Petersburg Borough Assembly and Administration, as a whole, is insufficient.*

1
Exhibit H
Page 2 of 4

Exhibit H
Page 79 of 89

EXHIBIT A
Page 163 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 163 of 176

In the event that I cannot obtain copies, as an alternative, I request the opportunity to inspect copies of these public records. I ask that you call me at (907)518-1993 to arrange an appointment for such an inspection.

Please note that as this matter is resolved within the Borough, as evidenced by the Borough's written statement provided to media outlets, no public records may be retained by the Borough under any privilege of deliberative process without a showing that it touches on other matters concerning the Borough in the future. Purely factual material is not protected, and all post-decisional communications are not protected. (Griswold v. Homer City Council, 2018)

I have noted the fees upon your Public Records Request Form and ask that you inform me should the cost exceed $500.00. However, I would also like to request a waiver of all fees in that the disclosure of the requested information is in the public interest and will contribute significantly to the public's understanding of recent Assembly actions. This information is not being sought for commercial purposes.

Please respond to this FOIA Request in a reasonable time period, not to exceed 10 working days. If access to the records I am requesting will take longer, please contact me with information about when I might expect copies or the ability to inspect the requested records.

If you deny any or all of this request, please cite each specific exemption or privilege you feel justifies the refusal to release the information and notify me of the appeal procedures available to me under the law.

Thank you for the fulfillment of my request.

Sincerely,

Don Koenigs

Don Koenigs

mjwp, jd

2
Exhibit H
Page 3 of 4

Exhibit H
Page 80 of 89

EXHIBIT A
Page 164 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 164 of 176

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

**Don Koenigs**
Gloria Ohmer Koenigs
P. O. Box 674
Petersburg AK 99833

Wells Fargo Bank, N.A.
www.wellsfargo.com
89-5/1252
89-5/1252

006076

PAY TO THE
ORDER OF  *Petersburg Borough*

$ *500. no/100*

*Five hundred and no/100*                                    DOLLARS

MEMO  *FOIA INFORMATION – Public Documents*          *Don Koenigs*          MP
AUTHORIZED SIGNATURE

⑈006076⑈ ⑆125200057⑆ ⑈101122951⑈

Exhibit H
Page 4 of 4

Exhibit H
Page 81 of 89

EXHIBIT A
Page 165 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 165 of 176



**PETERSBURG**

A L A S K A

August 11, 2022

Don Koenigs                                    via email to: donknigs@gci.net
PO Box 674
Petersburg, AK  99833

Dear Mr. Koenigs:

The Borough has received and considered your July 22, 2022 public records request, which seeks documents relating to a complaint lodged by Police Chief Kerr earlier this summer, and an investigation into his allegations of workplace harassment.

Please find attached a redacted copy of the complaint filed by Chief Kerr, in the form of a timeline, and a copy of the statement released by the Borough to KFSK regarding this matter. The names of persons who are not borough employees involved in this matter or elected borough officials have been redacted from the complaint.

The Borough does not intend to release further documents regarding this personnel investigation. Personnel investigations are generally deemed confidential, and release of documents could breach one or more party's reasonable expectation of privacy. Borough employees and officials may be less likely to file such complaints, or willingly participate in such workplace investigations, if their statements and documents submitted are to be publicly disclosed. Some documents are additionally protected by the attorney-client privilege and other privileges.

Furthermore, the fact of the complaint and investigation, the allegations prompting the investigation, and the summary results of the investigation, have all been disclosed. Additional disclosure would not add significantly pertinent information but could however further damage important working relationships within the Borough.

Respectfully,

Debra K. Thompson

Debra K. Thompson
Borough Clerk/Human Resources Director

**Borough Administration**
PO Box 329, Petersburg, AK  99833 – Phone (907) 772-4425  Fax (907)772-3759
www.ci.petersburg.ak.us

Exhibit I
Page 1 of 1
Exhibit H                                                              EXHIBIT A
Page 82 of 89                                                    Page 166 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 166 of 176

## CHANDLER, FALCONER, MUNSON & CACCIOLA, LLP

A T T O R N E Y S   A T   L A W

S U I T E   3 0 2

9 1 1   W E S T   E I G H T H   A V E N U E

A N C H O R A G E ,   A L A S K A   9 9 5 0 1

TELEPHONE: (907) 272-8401

FACSIMILE: (907) 274-3698

bcf@bcfaklaw.com

September 8, 2022

**<u>VIA EMAIL ONLY</u>**

Sara Heideman
Heideman Law Offices LLC
500 L St Ste 200
Anchorage, AK 99501
sheideman@law-alaska.com

      Re:    Don Koenigs Public Records Request to City & Borough of Petersburg

Dear Ms. Heideman:

      Thank you for taking the time on September 2, 2022 to discuss Mr. Koenigs' record request. I understand the Borough intends to produce a privilege log to identify certain documents which were not produced in response to Mr. Koenig's July 22 public records request. We look forward to reviewing it.

      I write to address the investigation report made in response to Chief Kerr's complaint. Our understanding is that Chief Kerr's complaint related to conduct of individual assembly members. The Borough's August 11, 2022 letter response to Mr. Koenigs speaks broadly about privacy of personnel investigations and related privacy rights. The Borough construes these laws too broadly. The right to privacy is not absolute:

      The cornerstone of a democracy is the ability of its people to question, investigate and monitor the government. Free access to public records is a central building block of our constitutional framework enabling citizen participation in monitoring the machinations of the republic. Conversely, the hallmark of totalitarianism is secrecy and the foundation of tyranny is ignorance.[1]

      First, assembly members are not personnel. They are elected officials. The Borough Code at §3.08.050 makes the distinction clear. The Alaska Supreme Court determined over thirty years ago that public officials have less of a protected privacy interest in the public records context.[2]

---

[1] *Jones v. Jennings*, 788 P. 2d 732, 735/ (Alaska 1990)

[2] *Municipality of Anchorage v. Daily News*, 794 P.2d 584, 591 (Alaska 1990)

Exhibit J
Page 1 of 3

Exhibit H
Page 83 of 89

EXHIBIT A
Page 167 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 167 of 176

Their reasonable expectation of privacy is diminished by being in office such that it yields to the public's increased interest in being informed of what is occurring at the highest levels of municipal government.[3] Second, when speaking of actual personnel, the exception is construed narrowly to include only information which reveals the details of an individual's personal life.[4]

It is unclear from your letter which documents are being withheld under an assertion of attorney-client privilege. An investigative report, though conducted by outside counsel, is not necessarily privileged. The analysis starts with recognizing "as with all exceptions to the Public Records Act, the attorney-client and work-product privileges should be 'construed narrowly to further the legislature's goal of broad public access." [5]

While legal conclusions and recommendations may be privileged, the factual investigation could be performed by human resources personnel or other investigators. That an attorney conducted the investigation does not shield the entirety of the report from public scrutiny. This type of investigation, which could be performed by any number of non-attorney professionals, is not "the attorneys' mental impressions, conclusions, opinions, or legal theories" to the degree that the entirety of the report is a privileged communication, particularly in light of the Court's directive that attorney-client privilege should be construed narrowly to further the legislature's goal of broad public access. Certainly, factual statements made by third parties are statements of witnesses. Their statements were not shared with the attorney in order to facilitate the rendering of legal advice to such persons. Thus, such statements would not meet the basic requirements of attorney-client privilege. Some redaction may be appropriate. A blanket statement, including such rationale as the disclosure "may damage working relationships" is not sufficient. There is no such exception under state or local law – transparency in government processes may make some people feel bad.

The Alaska Supreme Court's preferred approach to these disputes is *in camera* review. We would prefer to avoid litigation to compel more exacting scrutiny. A court is unlikely to assume that an entire investigative report, including all factual statements regarding a public official, is privileged simply because the investigation was conducted by an attorney or because its contents could cause blowback. The latter tends to confirm the importance of transparency.

Moreover, attorney-client privilege is destroyed if the communication is voluntarily shared with anyone other than the client. Was the content of the report disclosed to either Chief Kerr or any assembly members whose actions were a subject of the investigation? While Chief

---

[3] *City of Kenai v. Kenai Peninsula Newspapers*, 642 P. 2d 1316, 1324 (Alaska 1982) ("Public officials must recognize their official capacities often expose their private lives to public scrutiny.")

[4] *See Local 1264 v. Municipality of Anchorage*, 973 P.2d 1132, 1135 (Alaska 1999).

[5] *Griswold v. Homer City Council*, 428 P. 3d 180 (Alaska 2018) (citations omitted).

Exhibit J
Page 2 of 3

Exhibit H
Page 84 of 89

EXHIBIT A
Page 168 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 168 of 176

Kerr and the assembly as a body are within the control group in many instances, Chief Kerr and individual members are not so in their capacity as complainant or subjects of the report. If the report or its content was communicated to these persons, it is no longer privileged. A public client cannot chose to disclose otherwise privileged communications to some and then deny the public access to those communications.

The response to Mr. Koenigs states that "other privileges" apply. To the extent that other privileges apply to the investigative report or other withheld records, please articulate what those privileges are. Work-product is not among them, because the investigative report was not prepared in anticipation of litigation.

Given the Alaska Supreme Court's narrow construction of the attorney-client privilege and personnel privacy protections in the context of Alaska's Public Records Act, the Borough has not properly "balance[d] the interest of the citizen in knowing what the servants of government are doing and the citizen's proprietary interest in public property, against the interest of the public in having the business of government carried on efficiently and without undue interference."[6] The complaint pertains to officials at the highest levels of local municipal government. It began as a dispute regarding public health. Per the statement to KFSK, the report also deals with "important" police department matters, including hiring processes and domestic violence calls. Those issues are relevant to the "free access to the workings of government" and "preservation of democratic ideals," policy considerations that our courts have deemed "compelling."[7]

We request release of the report in full, or redacted as lawfully permitted. In any written response, please identity all people to whom content of the investigative report was disclosed and a specific description of any other privileges that apply other than attorney-client.

We look forward to your response and a log of all withheld records.

Very truly yours,

CHANDLER, FALCONER, MUNSON & CACCIOLA, LLP

Charles A. Cacciola

---

[6] *City of Kenai*, 642 P. 2d at 1323.

[7] *Jones,* 788 P.2d 732.

Exhibit J
Page 3 of 3

Exhibit H
Page 85 of 89

EXHIBIT A
Page 169 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 169 of 176

# HEIDEMAN LAW OFFICES

500 L Street, Suite 200, Anchorage, Alaska 99501
Telephone: (907) 279-5528
sheideman@law-alaska.com

---

October 5, 2022

<u>Sent via email</u>

Charles Cacciola
Chandler, Falconer, Munson & Cacciola
911 W. 8th Ave., Suite 302
Anchorage, Alaska 99501

Re: Public Records Request/Petersburg Borough

Dear Charles:

This follows up on our previous telephone call regarding the public records request filed by Don Koenigs. Thank you for your patience while the Borough reviewed this matter and the analysis contained in your September 8, 2022 letter.

The documents requested by Mr. Koenigs, including Mr. Diemer's legal opinion, are not subject to disclosure under the attorney-client privilege, the deliberative privilege, or constitutional privacy rights. The Borough reserves its rights to assert additional privileges or defenses in the event that litigation is brought to compel production. We obviously view this differently than the views expressed in your letter. I hope that you, and your client, can understand and appreciate the Borough's views and concerns in this regard.

Further, the Borough has elected not to produce a privilege log. A privilege log is not required, would not be particularly beneficial here where a file, versus an individual document, is exempt from disclosure, and providing the requested detail could inappropriately disclose privileged details and information.

Please be advised that Chief Kerr, through an attorney, has asserted constitutional privacy rights in regard to the personnel investigation. If your client elects to institute litigation against the Borough, we will advise Chief Kerr so that he can join and defend against Mr. Koenigs' claims as he deems appropriate.

Sincerely,

*Sara E. Heideman*

Sara E. Heideman

cc: Debbie Thompson, Borough Clerk

3683.2/364

---

Exhibit K
Page 1 of 1
Exhibit H
Page 86 of 89

EXHIBIT A
Page 170 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 170 of 176

**JAMES J. DAVIS, JR.** • Admitted in Alaska
jdavis@njp-law.com

**GORIUNE DUDUKGIAN** • Admitted in Alaska & California
gdudukgian@njp-law.com

**NICK FERONTI** • Admitted in Alaska & Texas
nferonti@njp-law.com

**SAVANNAH VENETIS FLETCHER** • Admitted in Alaska
sfletcher@njp-law.com



a private civil rights law firm

**ANCHORAGE OFFICE**
406 G STREET, SUITE 207
ANCHORAGE, AK 99501

**FAIRBANKS OFFICE**
516 2ND AVENUE, SUITE 211
FAIRBANKS, AK 99701

**p** 907.308.3395
**f** 866.813.8645
www.njp-law.com

September 21, 2022

**VIA USPS and EMAIL**

Stephen Giesbrecht
Borough Manager
Borough of Petersburg
Box 329
Petersburg, AK 99833

Re: *Chief Jim Kerr*

Dear Mr. Giesbrecht

We represent Chief Kerr. The Borough recently defamed Chief Kerr and
portrayed him in a false light. It also breached his rights of privacy. By this
letter, the Borough is asked to remedy these wrongs and to do so within the
next 30 days.

On March 8, 2022, Chief Kerr made a complaint that one or more Assembly
Members were violating the law and attempting to undermine the Chief and
his job and his authority. This complaint was a private personnel matter
concerning the Chief and his job.

In March and April, Chief Kerr met with the Borough's lawyer/investigator:
Pete Diemer. Because Mr. Diemer seemed to fundamentally misunderstand
that nature of Chief Kerr's complaint, Chief Kerr sent various emails to Pete
Diemer explicitly stating that the Chief was not making a harassment
complaint.

On June 27, 2022, after holding on to the Diemer report for about a month
because you had "questions" about it, you issued a press release to the local
media informing them that Chief Kerr had filed a personnel complaint

Exhibit L
Page 1 of 3

Exhibit H
Page 87 of 89

EXHIBIT A
Page 171 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 171 of 176

alleging that he had been "harassed" and that the Borough had investigated these claims of "harassment" and found them to be meritless.

Your press release was picked up by the local media and stories ran both in the newspaper as well an on the air about how Chief Kerr had filed a "harassment" complaint and how his claims of "harassment" had been found to be meritless.

Your press release was false and has made Chief Kerr look like a laughingstock. The fact is, Chief Kerr never filed a "harassment" complaint. Your statements to the press to the contrary were simply false. Now, this is one of the first things you will learn about Chief Kerr when you Google him, i.e., he claimed he was being harassed and his claims of harassment were found to be meritless.

Your false statements have defamed Chief Kerr. Briggs v. Newton, 984 P.2d 1113, 1120-21 (Alaska 1999) ("A communication is defamatory if it tends to harm the reputation of another so as to lower him [or her] in the estimation of the community or to deter third persons from associating or dealing with him [or her].")

Your false statements also portrayed Chief Kerr in a false light. State v. Carpenter, 171 P.3d 41, 53 (Alaska 2007) ("A false light invasion of privacy claim arises when the defendant publicizes a matter that places the plaintiff before the public in a false light.")

Of course, we understand why you issued this embarrassing press release to the media: you wanted to embarrass and neutralize Chief Kerr -- so as to deter him from, again, addressing the Assembly on matters as a public citizen.

Not only was your press release false and defamatory, but you also had no right to tell the public that the Chief had filed a personnel complaint. Personnel complaints, whether they are about sexual harassment or other job related issues, are not for public consumption. If an employee thought that any job-related complaints he or she made, would be turned over to the media, employees would be deterred from complaining. The fact is, when an employee makes a complaint about his or her work, he or she has an expectation that the complaint is private and not for the local paper. This means you should not have disclosed Chief Kerr's complaint, using the excuse of the Public Records Act. See Ramsey v. City of Sand Point, 936 P.2d 126,

Exhibit L
Page 2 of 3

Exhibit H
Page 88 of 89

EXHIBIT A
Page 172 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 172 of 176

135 (Alaska 1997) ("The citizens of Sand Point have a reasonable expectation that their contacts with the police department will not be publicly disclosed simply because they signed a petition.")

You now need to make things right. Chief Kerr wants an appropriate release issued to the media, telling it the truth, and apologizing to him for the Borough's defamation. He also demands sizeable compensation since you have caused permanent damage to his employability everywhere in the United States. If you have a lawyer, please have her call me to discuss.

Very Truly Yours,

James J. Davis, Jr.

cc: Chief James Kerr

Exhibit L
Page 3 of 3

Exhibit H
Page 89 of 89

EXHIBIT A
Page 173 of 351



# PETERSBURG

### A L A S K A

## PUBLIC RECORDS REQUEST FORM

Requestor Name: _____Joe Viechnicki, news director, KFSK-FM_____

Phone: _____907-772-3808_____  Fax: _____  Email: _____joe@kfsk.org_____

Mailing Address: _____Box 1204, Petersburg, Alaska 99833_____

Title of Record(s):_____PPD police chief James Kerr complaint against Jeff Meucci or any other assembly member_____

Date of Record(s):_____01/01/22-present_____

Description of Record(s): Please provide any additional information that will assist us in locating the record(s) for you as quickly as possible.

_____

_____Any complaint filed by the chief of police against any member of the Petersburg borough assembly filed this year_____

_____

_____

### Certificate of Non-Litigation Affiliation

I hereby certify that:

(1)    I am not involved in litigation, in a judicial or administrative forum, with the Petersburg Borough or another public agency to which the requested record is relevant; and
(2)    I am not acting on behalf of or otherwise representing any person who is involved in litigation with the Petersburg Borough or another public agency to which the requested record is relevant.

**Borough Administration**
PO Box 329, Petersburg, AK  99833 – Phone (907) 772-4425 Fax (907)772-3759
**www.ci.petersburg.ak.us**

Exhibit I
Page 1 of 3

EXHIBIT A
Page 174 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 174 of 176

Requestor's Signature: _____ Date:
___6/20/22_____

**Please Note: This form must be completed and returned to the Petersburg Borough Clerk's Office for processing.**

## FOR OFFICE USE ONLY

- Photocopies        $  .25 per page + tax        $_____
- Assembly Packets    $10.00 each packet + tax      $_____
- Audio Copy        $10.00 each + tax        $_____
- Video Copy        $25.00 each + tax        $_____
- Mylar Copies of Plats   $20.00 per Mylar copy + tax   $_____
- Certified Copies       $  1.25 first page, .25 each additional page   $_____
- Copy of Budget      $25.00 each + tax        $_____
- Other _____    Price to be determined      $_____
- The salary of employee(s)   $_____ labor x _____ hours + tax   $_____
  (hourly rate plus benefits) filling a request, when retrieval and duplication of the documents requested generate labor in excess of one hour.

                        Tax        $_____
                        Total Charges $_____

Date Request Received: _____

Completed by or referred to (check a box below):_____

       Request for Record(s) Copy(ies) total $_____ was received on
       _____ and provided or mailed/emailed on _____.
       Record(s) or Information is exempt from disclosure and public access is denied and the requestor was notified on _____.
       Record(s) or Information cannot be located and the requestor was notified on
       _____.
       Record(s) or Information available online at www.petersburgak.gov.

**Borough Administration**
PO Box 329, Petersburg, AK  99833 – Phone (907) 772-4425 Fax (907)772-3759
**www.ci.petersburg.ak.us**

The departments that have a check mark have been copied to assist in filling this records request:

Administration
Finance
Community Development
Electric
Fire
Library
Harbor
Mountain View Manor
Parks & Recreation
Police
Public Works
Attorney

**Borough Administration**
PO Box 329, Petersburg, AK 99833 – Phone (907) 772-4425 Fax (907)772-3759
**www.ci.petersburg.ak.us**

Exhibit I
Page 3 of 3

EXHIBIT A
Page 176 of 351

Case 1:23-cv-00008-SLG   Document 1-1   Filed 08/25/23   Page 176 of 176